1   WILLIAM F. "CHIP" MERLIN, JR., ESQ. [SBN 275936]
    VICTOR JACOBELLIS, ESQ. [SBN 278988]
2   DANIEL J. VEROFF, ESQ. [SBN 291492]
    **MERLIN LAW GROUP**
3   1160 Battery Street East, Suite 100
    San Francisco, CA 94111
4   Telephone: (415) 851-2300
    Facsimile: (415) 960-3882
5   cmerlin@merlinlawgroup.com
    vjacobellis@merlinlawgroup.com
6   dveroff@merlinlawgroup.com

7   **THE MOSKOWITZ FIRM, PLLC**
    Adam M. Moskowitz (*Pro Hac Vice forthcoming*)
8   Joseph M. Kaye (*Pro Hac Vice forthcoming*)
    2 Alahambra Plaza, Suite 601
9   Coral Gables, FL 33134
    Telephone: (305) 740-1423
10  Facsimile: (786) 298-5737
    adam@moskowitz-law.com
11  joseph@moskowitz-law.com

12  *Attorneys for Plaintiffs:*
    Jason Cook
13  Elfe Kuesters

14                  **UNITED STATES DISTRICT COURT**

15                **NORTHERN DISTRICT OF CALIFORNIA**

16

17  JASON COOK and ELFE KUESTERS,          Case No.
    individuals and behalf of those similarly
18  situated,                              **COMPLAINT FOR:**

19                  Plaintiffs,            **(1)    DECLARATORY RELIEF;**
                                           **(2)    BREACH OF CONTRACT**
20          v.                             **       (INSURANCE);**
                                           **(3)    BREACH OF THE COVENANT**
21                                         **       OF GOOD FAITH AND FAIR**
    STATE FARM GENERAL INSURANCE           **       DEALING (INSURANCE BAD**
22  COMPANY, an Illinois Corporation;      **       FAITH);**
                                           **(4)    VIOLATION OF BUSINESS &**
23          Defendants.                    **       PROFESSIONS CODE § 17200.**

24                                              **JURY TRIAL DEMANDED**

25

26

27

28
                                    1

**NATURE OF THE ACTION**

1.    This proposed class action lawsuit arises out of State Farm's systemic practice, committed similarly against Plaintiffs and all proposed Class Members, to **wrongfully deny** California property insurance claims (made under policies containing identical provisions) for damage to personal property proximately caused by unplanned, wildfire-related power outages.

2.    "Damage from snowstorms, wildfires and windstorms are a leading cause of power outages in the U.S."[1] In 2020, "California [was] in the midst of its worst wildfire season on record, with about 4.2 million acres burned, more than double the acreage in the previous record-breaking year. At least 10,488 structures have been destroyed and 31 people killed. Five of the top six largest fires on record in the state have occurred this season."[2] Wildfires burning in August 2020 alone caused unplanned power interruptions to at least 39,642 PG&E customers.[3] The Glass Fire, which occurred in September 2020, resulted in a power loss to approximately 28,000 customers in Napa and Sonoma counties, approximately 15,000 of which remained without power for at least 48 hours.[4] At the end of September 2020, "PG&E power outages [were] dotting nearly every northern California county" as at least "37,000 households in Sonoma and Napa Counties [were] currently without power" not due to planned power outages.[5][6] Wildfires and power interruptions are inextricably connected because "wind gusts could snap off tree branches or damage a piece of equipment, creating a spark that could ignite dry brush and lead to the next wildfire disaster." The Camp fire, "which devastated the town of Paradise in 2018, killing 85 people and destroying nearly

---

[1] https://theconversation.com/storms-and-wildfires-can-cut-electricity-but-microgrids-help-communities-take-control-144183

[2] https://www.washingtonpost.com/weather/2020/11/25/california-santa-ana-wildfire-thanksgiving/

[3] https://www.pgecurrents.com/2020/08/27/as-recovery-begins-from-widespread-wildfires-pg-updates-power-restoration-progress/

[4] https://www.pgecurrents.com/2020/09/29/pge-crews-in-napa-and-sonoma-positioned-to-inspect-wildfire-damage-make-repairs-and-restore-electric-and-gas-service-to-those-who-can-receive-it/

[5] https://sfist.com/2020/09/28/pg-e-power-outages-hitting-norcal-hard-nearly-100-000-homes-may-be-without-power/

[6] Planned power outages are implemented as a precautionary measure to avoid wildfire damage. Losses due to planned power outages are not included in this class action because they are not caused by a fire or windstorm, the covered causes of loss at issue.

14,000 homes," was a result of damage to power lines.[7] "PG&E filed for Chapter 11 in January 2019 with an estimated $30 billion in liabilities tied to fires in 2017 and 2018. The company has agreed to settle claims for $25.5 billion with individual victims, insurers and public agencies. It also settled with a group of bondholders who tried unsuccessfully last year to take control of the company."[8]

3.      Wildfires "disrupt the power grid and cause an outage. Even though it happens in a flash, people wonder if a power outage can affect the appliances and electronics in your home."[9] Even State Farm advises on its website, "[w]hen severe weather looms, make sure your home is prepared for a power failure."[10] "Power outages can happen at any time and are unavoidable, but the costs and inconvenience associated with them can be lessened by installing a home backup generator at a home or business."[11]

4.      Power interruptions unequivocally damage personal property, especially appliances. For example, the average household has a refrigerator with food, and individuals do not have time to clear out their fridges in the wake of oncoming wildfires and evacuation orders. The loss of power to a refrigerator causes food to rot, leaving an odor that results in the total loss of the refrigerator. "It doesn't take long for food to spoil when you lose power. The USDA estimates it takes only four hours for meat, poultry, fish, eggs and leftovers to go bad when you lose power."[12]

5.      Further, "[a] power outage can cause power issues with refrigerators."[13] Power interruptions are known to permanently damage refrigerator components itself, including the compressor. "A strong electrical event can damage the windings that provide the start and run functions of the compressor, causing premature compressor failure. Because of the high cost of replacing the compressor, the refrigerator often requires replacement if the compressor is

---

[7] https://www.latimes.com/california/story/2020-10-24/1-million-californians-could-lose-power-fire-weather

[8] https://www.bloomberg.com/news/articles/2020-05-18/pg-e-surges-after-saying-most-fire-victims-are-backing-its-plan

[9] https://www.bpmelectric.com/can-power-outage-damage-electrical-appliances/

[10] https://www.statefarm.com/simple-insights/residence/power-outage-tips

[11] *Id.*

[12] https://www.insurance.com/home-and-renters-insurance/coverage/power-out.html

[13] https://removeandreplace.com/2019/06/20/refrigerator-not-working-after-power-outage-what-to-check-first/

damaged."[14] "A voltage surge can also damage the refrigerator's ice maker. When the inrush of current causes additional heat within the component, it can lead to a short in the ice maker's electrical connections."[15] Simple "preliminary tests help verify that the failure of the appliance is due to the power outage rather than a circumstantial failure easily corrected by the homeowner."[16]

6.    It is well understood that damage due to unplanned power outages are covered under standard insurance policies if the outage is due to a covered cause of loss. "Power outages can cause a major disruption in your home — especially if they last for days! It may even result in damage or loss of frozen and refrigerated foods. The good news is your homeowners insurance may be able to help you recoup the losses."[17] "A power outage — whether triggered by lightning, a storm rolling or some other cause — can suddenly make homeowners realize how vital electricity is. The outage can not only leave homeowners in the dark, but can damage computer equipment, TVs and other electronic equipment."[18] "Most homeowner's insurance policies cover losses from power interruptions caused by lightning, windstorms and other such weather, according to the Insurance Information Institute."[19] According to Insurance.com, the "outage's cause must be covered under your policy. For example, your policy may cover you if a windstorm caused the outage, but not cover you if a flood caused the power loss."[20] In other words, "the outage would likely have to be caused by a covered peril."[21]

7.    Regarding the standard policies at issue in this case, State Farm promises to pay for damage to personal property caused by any number of perils enumerated in the policies, most

---

[14] https://strikecheck.com/webinars/leading-causes-of-refrigerator-damage/#:~:text=When%20there%20is%20an%20increase,multiple%20parts%20of%20the%20refrigerator.&text=A%20voltage%20surge%20can%20also%20damage%20the%20refrigerator's%20ice%20maker.

[15] *Id.*

[16] https://www.hunker.com/12002620/refrigerator-wont-work-after-power-outage

[17] https://www.amfam.com/resources/articles/at-home/power-outage-food-spoilage

[18] https://www.insurancequotes.com/home/home-insurance-power-outage

[19] *Id.*

[20] https://www.insurance.com/home-and-renters-insurance/coverage/power-out.html

[21] https://www.allstate.com/tr/home-insurance/spoiled-food-coverage.aspx

significantly, wind and fire. Here, the subject power losses are unequivocally due to wind and wildfire. Evidence that a wildfire or related windstorm caused a particular power outage in a particular fire is very easy to come by. For example, as explained below, PG&E provided Plaintiff Kuesters with a formal report concluding the wildfire caused her power outage.

8.      To save costs, State Farm decided to systematically deny these submitted claims. State Farm denies these claims without ever mentioning the fire or windstorm in the denial letters. Instead, State Farm has been citing a policy provision that provides "additional coverage" for "power interruption." Under this "additional coverage," damage due to power interruption is covered *if* the power loss is due to damage on the insured property. State Farm correctly points out in its denial letters that unplanned, wildfire-and-wind-caused power outages originate off the insured property. Such damage is not covered under this ***additional coverage***. Luckily for Plaintiffs and Class Members, however, this is just an ***additional coverage*** and is ***not*** a limitation or exclusion on the policies' coverage for fire and windstorm. So long as fire or wind are the efficient proximate cause of the loss – i.e., the most important cause – the losses are covered. *Julian v. Hartford Underwriters Ins. Co.,* 35 Cal. 4th 747, 753 (2005). Obviously, wildfire and related wind are the most important cause. Nonetheless, State Farm is denying these claims for Plaintiffs and for all similarly situated insureds.

9.      This class action should be certified. As explained below, the named Plaintiffs have amassed enough evidence already to demonstrate this is a universal, systematic practice at State Farm. Moreover, these are identical and standard form State Farm policies. State Farm admits that it "has evolved into the primary writer of homeowners and property liability insurance in the state of California."[22] This has been confirmed by the Insurance Information Institute and the National Association of Insurance Commissioners.[23] Hundreds of thousands if not millions of insureds in California have lost power due to wildfires and related windstorms throughout the relevant statutory

[22] https://www.statefarm.com/about-us/company-overview/company-profile/state-farm-companies.
[23] https://www.iii.org/publications/a-firm-foundation-how-insurance-supports-the-economy/state-fact-sheets/california-firm-foundation

period. Moreover, every insured who has a refrigerator with food in it experiences a covered loss when power goes out for just one to two days, as explained above. Because these damages are typically far too low to justify an individual lawsuit, a class action is the ideal vehicle.

10.    State Farm's conduct constitutes an unreasonable (or "bad faith") breach of the insurance contract. State Farm knows the law, knows its policies, and is intentionally skirting both. Indeed, State Farm does not even mention fire or wind in these denial letters. State Farm's denials are also done brazenly. For example, for Plaintiff Cook, State Farm stood by its position including in non-sensical letters to the California Department of Insurance ("CDI") in response to Plaintiff Cook's consumer complaint. State Farm actually argued that the wildfire was merely a "remote cause" of spoiled food when Plaintiff Cook's refrigerator lost power during a massive outage caused by a wildfire. State Farm is surely wrongfully retaining millions of dollars by shorting each insured in this way. The court should certify this straightforward class action.

## PARTIES

11.    Plaintiff Jason Cook is over the age of eighteen, is sui juris, and is a citizen and resident of the State of California.

12.    Plaintiff Elfe Kuesters is over the age of eighteen, is sui juris, and is a citizen and resident of the State of California.

13.    State Farm General Insurance Company ("State Farm") is a corporation organized under the laws of Illinois with its principal place of business located at 1 State Farm Plz, Bloomington, 61701, IL. State Farm is licensed to do business in California. State Farm is a citizen of the State of Illinois.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction over the Plaintiffs in this action, who have voluntarily filed in this forum.

15.    Jurisdiction over State Farm is proper because State Farm has registered with the California Secretary of State, purposely availed itself of the privilege of conducting business in California, and because it currently maintains systematic and continuous business contacts with this State. State Farm regularly transacts business in California, and thousands of the putative Class

Members are California residents. In addition, the Court has specific jurisdiction over State Farm because State Farm purposefully directed its activities at California and purposefully availed itself of the privilege of doing business in the state, and the injuries alleged herein arise out of certain activities of State Farm within California. The subject insurance agreements of Plaintiffs and Class Members were entered into in California, insured property located in California, were to be performed in California, and were breached in California.

16.     This Court has subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332. Plaintiffs and State Farm are diverse citizens. Plaintiffs furthermore allege claims on behalf of a class of Policyholders who are minimally diverse from State Farm, and the aggregate of these claims exceed $5,000,000. This Court accordingly has subject matter jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

17.     Venue is proper in this District under 28 U.S.C. § 1391 because State Farm maintains substantial operations in this District; thousands of Class Members either reside or did business with State Farm in this District; State Farm engaged in business in this District; a substantial part of the events or omissions giving rise to the claims at issue occurred in this District; and because State Farm entered into transactions and received substantial profits from Policyholders who reside in this District.

## FACTUAL ALLEGATIONS

18.     Plaintiffs and Class Members are homeowners who insured their homes under State Farm insurance policies. Copies of their insurance policies are attached as **Exhibits 1 and 2** (the "Policies"). The Policies are State Farm's most popular product, titled "FP-7955 CA." Based on the California Department of Insurance's records, State Farm has been using this policy form for numerous decades, and at least as far back as 1992, they all contained the identical material terms. According to State Farm, "This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars." Because prospective Policy purchasers are not permitted to negotiate different terms, the Policies are contracts of adhesion.

19.     The Policies have standardized, uniform language with respect to the policy provisions at issue in this action. The uniform provisions of the Policies state, in pertinent part:

**COVERAGE B - PERSONAL PROPERTY**

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in
**SECTION I - LOSSES NOT INSURED:**
**1. Fire or lightning.**

**2. Windstorm or hail.** This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening. This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

("Fire and Windstorm Coverage Provisions").

20.     Additionally, State Farm's policies also uniformly include the following "ADDITIONAL COVERAGES" for damage to personal property:

**SECTION I – ADDITIONAL COVERAGES**

The following Additional Coverages are subject to all the terms, provisions, exclusions and conditions of this policy.
…

**7. Power Interruption**. We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the residence premises. The power interruption must be caused by a Loss Insured occurring on the residence premises. The power lines off the residence premises must remain energized. This coverage does not increase the limit applying to the damaged property.

**8. Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the residence premises for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

a. removal of a plug from an electrical outlet; or

b. turning off an electrical switch unless caused by a Loss Insured.

(collectively "Power Outage or Refrigerated Products Additional Coverage Provisions").

21.     In the later summer of 2020, an extreme weather event resulted in hundreds of thousands of lightning strikes across Northern California. These lightning strikes started several

fires. The fires were ultimately categorized as "lightning complexes" and named based on the regional California Fire unit. Unusually high-winds caused these fires to spread and caused extensive damage.

22.    For Plaintiffs, the fire that caused their losses was named the CZU Lightning Complex (the "CZU Fire").

23.    The CZU Fire resulted in 6,257 PG&E customers without power. As of August 27, approximately 11 days into the CZU Fire, 5,792 households remained without power.[24]

24.    Plaintiffs promptly provided notice of loss and proof of claim to State Farm upon being evacuated from their homes due to the Fire. Plaintiffs also provided notice that their power was out as a result of these wildfires. For example, for Plaintiff Kuesters, PG&E provided records and a statement confirming that an unplanned power outage lasting 30 days, 9 hours, and 47 minutes "was a result of the CZU Fire." PG&E's notice is attached as **Exhibit 3**.

25.    Once the evacuation orders were lifted, Plaintiffs returned home to find smoke particulate at their properties as well as failed refrigerators. Plaintiffs requested coverage for the lost refrigerators by State Farm, both of which were denied.

26.    On October 1, 2020, Balaza Lucza, a State Farm adjuster, denied Plaintiff Cook's claim citing the ***additional coverage*** provision for power loss, stating, "[S]ince power loss was not caused by fire to your power lines on the residence premises, the policy does not provide coverage for the damaged refrigerator." State Farm's response is attached as **Exhibit 4.** State Farm similarly denied Plaintiff Kuester's claim, the denial letter for which is a attached as **Exhibit 5.**

27.    After Plaintiff Cook submitted a Request for Assistance complaint to the California Department of Insurance ("CDI"), a State Farm "Claim Team Manager" responded to him and the CDI stating the same. This letter was transmitted by Charlotte M Potts of State Farm, Public Affairs, Exec. Customer Service Rep. State Farm's response is attached as **Exhibit 6.**

28.    On October 10 and 15, 2020, Plaintiff Cook asked State Farm about the efficient proximate cause doctrine, noting that fire is covered and was the efficient proximate cause of the

---

[24] https://www.pgecurrents.com/2020/08/27/as-recovery-begins-from-widespread-wildfires-pg-updates-power-restoration-progress/

unplanned power outage. Plaintiff Cook copied the CDI. Plaintiff Cook also provided a copy of the CDI's bulletin on claims involving mudslides resulting from the 2018 Thomas Fire, which the CDI determined was covered under the efficient proximate cause doctrine. Notably, that is also the holding of *Howell v. State Farm Fire & Cas. Co.* 218 (1990) Cal. App. 3d 1446.[25] Plaintiff Cook's letter along with the CDI bulletin are attached as **Exhibit 7**.

29.     On November 10, 2020, State Farm adjuster Tanisha Pabon responded in writing, "We denied the claim for your refrigerator because food spoilage, which caused the unit to retain the odor from the spoiled food, does not fall within the following additional coverage for power interruption in the Homeowners Policy . . . Although the food spoilage directly damaged the refrigerator, the power interruption was not caused by a Loss Insured that occurred on the residence premises, as expressly required by the above policy provision. Instead, the fire, which led to the power interruption, occurred away from and did not reach the residence premises. In addition, the power lines off the residence premises did not remain energized (as required in the above provision) – the power lines were de-energized by the wildfire. Therefore, the additional coverage for power interruption does not apply to this claim and your refrigerator is not covered for damage caused by the spoiled food." State Farm's response is attached as **Exhibit 8.**

30.     After Plaintiff Cook requested clarification, Ms. Pabon responded, "We maintain our claim decision regarding the refrigerator, as explained in our November 10, 2020 letter. Under California law, the predominant cause rule applies to this property loss. Under that rule, coverage does not exist if the covered risk was simply a remote cause of the loss, or if an excluded risk was the efficient proximate (meaning predominant) cause of the loss. On the other hand, the fact that an excluded risk contributed to the loss would not preclude coverage if such a risk was a remote cause of the loss. The efficient proximate cause of a loss is the predominant, or most important cause of a loss. The predominant cause should not be misinterpreted as meaning the triggering cause. On this claim, the CZU Lightning Complex fires may have been the first in a chain of events leading to damage to the refrigerator, but we do not agree that fire was the predominant cause. Rather, the

---

[25] See also *Garvey v. State Farm Fire & Cas. Co.* (1989) 48 Cal. 3d 395.

change of temperature resulting from the power interruption was the predominant (most important) cause which directly led to the food products spoiling and damaging the refrigerator over time after the power outage. In this sequence, the wildfire was a remote, triggering cause, not the most important cause. Because a covered, specified peril was not the predominant cause of the damage to the refrigerator, we stand by our November 10, 2020 denial of the refrigerator damage under Coverage B – Personal Property." State Farm's response is attached as **Exhibit 9.**

31.    Plaintiff Cook again contested this decision, and on December 16, 2020, Ms. Pabon wrote, "Our position on California's predominant cause rule and how it applies to this loss are as stated in our December 2, 2020 letter. Again, the efficient proximate cause of a loss is the predominant or most important cause. Here, the predominant cause of the loss to the refrigerator was the power interruption which directly led to the food products spoiling and damaging the refrigerator over time after the power outage. This predominant cause of loss to the refrigerator is not a specified peril in the policy's Coverage B – Personal Property. Therefore, we stand by our November 10, 2020 denial of coverage for the refrigerator damage." State Farm's response is attached as **Exhibit 10.**

32.    Despite contesting this several more times, State Farm stood by its position, including after new adjusters were assigned to the loss. State Farm's further responses are attached as **Exhibit 11.**

33.    As a result of State Farm's wrongful denials, Plaintiffs have not been fully indemnified for all covered damage on account of the Fire loss and have been deprived contractual benefits under their policies.

34.    Plaintiffs are informed and upon that basis believe that State Farm's wrongful denials are part of a systematic and universal policy to deprive Plaintiffs and Class members of the contractual benefits to which they are entitled under the uniform Policies.

35.    State Farm's conduct constitutes a breach of the implied covenant of good faith and fair dealing, given the clear misapplication of the insurance policies and misconstruing of well-established California law. As a direct and proximate cause, Plaintiffs have suffered emotional distress, have incurred attorneys' fees, and have suffered other consequential damages.

36.   The conduct of State Farm was unreasonable, malicious, fraudulent and oppressive. As a result, Plaintiffs are entitled to punitive damages pursuant to Cal. Civ. Code § 3294.

## CLASS ACTION ALLEGATIONS

37.   This action is brought by Plaintiffs individually and on behalf of the California Class and the Subclasses described below (collectively, the "Classes") pursuant to Rule 23, subdivisions (a), (b)(2), (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure.

38.   ***Definition of Classes:*** Plaintiffs seek certification of the following classes:

- **California Class:**

    Within the applicable limitations period, all owners of property located within the state of California who: (1) own or owned a uniform State Farm homeowners insurance Policy, (2) sustained loss or damage to covered property resulting from an unplanned power outage caused by a wildfire or related windstorm, and (3) submitted a claim and were denied coverage for their loss as not falling within the coverage grants of the ***Power Outage or Refrigerated Products Additional Coverage Provisions in the Policy***.

- **California Subclass:**

    Within the applicable limitations period, all owners of property located within the state of California who (1) own or owned a uniform State Farm homeowners insurance Policy, (2) sustained a loss to a refrigerator or refrigerated products resulting from an unplanned power outage caused by the CZU Fire or related windstorm, and (3) submitted a claim and were denied coverage for their refrigerator or refrigerated products loss as not falling within the coverage grants of the ***Power Outage or Refrigerated Products Additional Coverage Provisions in the Policy.***

39.   Excluded from the Classes are Defendant, its employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their respective court staff, and the parties' counsel in the litigation.

40.   Plaintiffs reserve the right to modify, amend and/or expand the definition of the proposed Classes before the Court determines whether certification is appropriate.

41.   ***Size of Classes:*** There are thousands of members of each of the Classes described in the foregoing paragraph. Accordingly, the Class consists of thousands of State Farm Policyholders and is thus so numerous that joinder of all members is impracticable. The identities and addresses

1   of the members of these Classes can be readily ascertained from business records maintained by

2   State Farm.

3        42.    ***Adequacy of Representation***: Plaintiffs are willing and prepared to serve the Court

4   and the proposed Classes in a representative capacity. Plaintiffs will fairly and adequately protect

5   the interests of the Classes and have no interests that are adverse to, or which materially and

6   irreconcilably conflict with, the interests of the other members of the Classes.

7        43.    The self-interests of Plaintiffs are co-extensive with and not antagonistic to those of

8   absent Class members. Plaintiffs will undertake to represent and protect the interests of absent Class

9   members.

10       44.    Plaintiffs have engaged the services of counsel indicated below who are experienced

11   in complex class litigation and life insurance matters, will adequately prosecute this action, and will

12   assert and protect the rights of and otherwise represent Plaintiffs and the putative Class members.

13       45.    ***The Commonality of Questions of the Law and Fact***: All Class members entered

14   into standard form property insurance contracts with State Farm. The Policies all insure property

15   located within the state of California and all are governed by California law. The claims of Plaintiffs

16   and putative Class Members involve common questions of law and fact, including:

a.  Whether personal property loss resulting from an unplanned power outage caused by a wildfire or related windstorm is covered by the Fire and Windstorm Coverage Provisions of the Policies, i.e., whether the wildfire or related windstorm is the efficient proximate cause of the refrigerator loss;

b.  Whether State Farm has a systematic practice of denying property loss claims resulting from an unplanned power outage caused by a wildfire or related windstorm as not falling within the coverage grants of the Power Outage or Refrigerated Products Additional Coverage Provisions of the Policies when they are in fact covered under the Fire and Windstorm Coverage Provisions of the Policies;

c.  Whether State Farm breached its contractual obligations owed to Plaintiffs and Class Members;

    d.   Whether State Farm breached its implied duty of good faith and fair dealing owed to Plaintiffs and Class Members;

    e.   Whether State Farm has engaged in unfair business practices in its dealings with Plaintiffs and Class Members;

    f.   Whether Plaintiffs and Class Members have been damaged, and if so, are eligible for and entitled to compensatory and punitive damages;

    g.   Whether Plaintiffs and Class Members are entitled to declaratory relief; and

    h.   Whether Plaintiffs and Class Members are entitled to preliminary and permanent injunctive relief, or other equitable relief, against State Farm.

46.    ***Typicality of the Claims or Defenses of the Class Representatives***: Plaintiffs' claims and defenses are typical of the claims and defenses of the putative Class Members.

47.    ***Rule 23(b)(2)***: This action is appropriate as a class action pursuant to Rule 23 (b)(2). Plaintiffs seek injunctive relief and corresponding declaratory relief for each of the Classes. State Farm has acted in a manner generally applicable to each member of the Classes by denying claims for property damage on all Policies owned by Class Members.

48.    ***Rule 23(b)(3)***: This action is also appropriate as a class action pursuant to Federal Rule of Civil Procedure 23 (b)(3).

49.    The common questions of law and fact listed above predominate over any individualized questions.

50.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, for the following reasons:

    a.   Given the complexity of the issues involved in this action and the expense of litigating the claims, few, if any, Class Members could afford to seek legal redress individually for the wrongs that State Farm has committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

    b.   Once State Farm's liability has been adjudicated respecting these property loss claims, claims of all Class Members can be determined by the Court;

c.   This action will ensure an orderly and expeditious administration of the Class's claims and foster economies of time, effort, and expense, and ensure uniformity of decisions and compliance by State Farm with the Policies;

d.   Without a class action, many Class Members would continue to suffer injury, and State Farm's violations of law will continue without redress while it continues to reap and retain the substantial proceeds and reductions in its future liabilities derived from its wrongful conduct; and

e.   This action does not present any undue difficulties that would impede its management by the Court as a class action.

51.    A class action is superior to other available means for the fair and efficient adjudication of this controversy. The injuries suffered by individual Class Members are, though important to them, relatively small compared to the burden and expense of individual prosecution needed to address State Farm's conduct. Individualized litigation presents a potential for inconsistent or contradictory judgments. In contrast, a class action presents far fewer management difficulties; allows the hearing of claims that might otherwise go unaddressed; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

52.    ***Rule 23(c)(4)***: As it is clear that the predominant issue regarding State Farm's liability is whether property loss claims resulting from unplanned power outages caused by a wildfire or related windstorm are excluded from the Power Outage or Refrigerated Products Additional Coverage Provisions of the Policies or whether they are in fact covered under the Fire and Windstorm Coverage Provisions of the Policies, utilizing Rule 23(c)(4) to certify either or both of the Florida Classes for a class wide adjudication on this issue would materially advance the disposition of the litigation as a whole.

53.    ***Nature of Notice to the Proposed Classes.*** The names and addresses of all Class Members are contained in the business records maintained by Defendant and are readily available to Defendant. The Class Members are readily and objectively identifiable. Plaintiffs contemplate that notice will be provided to Class Members by e-mail, mail, and published notice.

**FIRST CAUSE OF ACTION**

*(For Declaratory Relief – Against State Farm on behalf of Plaintiffs and the Classes)*

54.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 53 as though fully set forth herein.

55.    An actual controversy has arisen and now exists between Plaintiffs and the Class Members, on the one hand, and State Farm, on the other hand, concerning the respective rights and duties of the parties under the Policies.

56.    State Farm contends that it lawfully and appropriately denied property loss claims resulting from an unplanned power outage caused by a wildfire or related windstorm as not falling within the coverage grants of the Power Outage or Refrigerated Products Additional Coverage Provisions of the Policies on the basis that the unplanned power outage was not caused by a loss insured occurring on the property. On the other hand, Plaintiffs and Class Members maintain that State Farm, through denying these claims, has inappropriately and unlawfully, in material breach of the express and implied terms of the Policies, withheld payment on claims for losses covered by the Fire and Windstorm Coverage Provisions of the Policies.

57.    Plaintiffs, on behalf of themselves and the Classes, seek a declaration as to the parties' respective rights under the Policies and request the Court to declare that property loss claims resulting from an unplanned power outage caused by a wildfire or related windstorm are in fact covered under the Fire and Windstorm Coverage Provisions of the Policies, and State Farm's systemic practice of denying property loss claims as not falling within the coverage grants of the Power Outage or Refrigerated Products Additional Coverage Provisions of the Policies is unlawful and in material breach of the Policies' terms so that future controversies may be avoided.

**SECOND CAUSE OF ACTION**

*(For Breach of Contract – Against State Farm on behalf of Plaintiffs and the Classes )*

58.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 53 as though fully set forth herein.

59.    Valid contracts, the insurance Policies, existed between Plaintiffs and the Class Members, on the one hand, and State Farm, on the other hand.

60.     At all material times, Plaintiffs and Class Members complied with all duties and conditions of the Policies, except those which are illegal, excused, waived, or inapplicable for any other legally valid reason.

61.     State Farm breached the policies by failing to fully, fairly and promptly indemnify Plaintiffs and Class Members for their claims for damages due to power interruptions caused by wildfires and related windstorms.

62.     As a result of State Farm's breaches, Plaintiffs and Class Members have been damaged in the full amount of the covered damage, plus consequential damages flowing from the breach, including incurring attorneys' fees.

## THIRD CAUSE OF ACTION

*(Breach of the Covenant of Good Faith and Fair Dealing - Against State Farm on behalf of Plaintiffs and the Classes)*

63.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 53 as though fully set forth herein.

64.     Valid contracts, the insurance Policies, existed between Plaintiffs and the Class Members, on the one hand, and State Farm, on the other hand.

65.     Arising out of the contracts, State Farm owed Plaintiffs and Class Members a duty of good faith and fair dealing.

66.     State Farm breached that duty by, *inter alia,* consciously and unreasonably employing a pre-determined scheme to deny claims for damage due to power interruptions resulting from wildfires and related windstorms. This pre-determined scheme ignored the clear and unequivocal coverages present in the policies as well as California's well-established efficient proximate cause doctrine.

67.     Said conduct included unfair and deceptive acts or practices and unfair methods of competition as part of a pattern and practice of improper claims administration.

68.     State Farm's alleged acts and omissions were and are unreasonable and without proper cause. If left unabated, State Farm's conduct will frustrate and deprive Plaintiffs and the other members of the Classes of the reasonably expected benefits of the Policies.

69.    State Farm has, in particular, improperly withheld benefits due Plaintiffs and the other members of the Classes under the Policies.

70.    State Farm's tortious breach of the covenant of good faith and fair dealing has proximately caused damages to Plaintiffs and the other members of the Classes in an amount to be determined at the time of trial.

71.    State Farm's conduct was intentional, deliberate, and constitutes oppression and malice. Plaintiffs and the other members of the Classes are entitled to recover punitive and exemplary damages in an amount to be determined by the trier of fact. Plaintiffs and the other members of the Classes also seek an order requiring State Farm to disgorge all profits that it received in connection with the above referenced wrongful acts and omissions.

## FOURTH CAUSE OF ACTION

*(Injunctive and Restitutionary Relief Pursuant to UCL - Against State Farm on behalf of Plaintiffs and the Classes)*

72.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 53 as though fully set forth herein.

73.    A claim under the UCL's "unfair" prong is predicated on a "business practice" that "violates established public policy" or is "immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *Eisen v. Porsche Cars N. Am., Inc.*, No. CV 11-9405 CAS (FEMx), 2012 WL 841019, at *5 (C.D. Cal. Feb. 22, 2012) (citing *McKell v. Washington Mut., Inc.*, 49 Cal. Rptr. 3d 227, 240 (Ct. App. 2006). State Farm violated the "unfair" prong by unreasonably employing a pre-determined scheme to deny claims for property losses due to power interruptions resulting from wildfires and related windstorms. This pre-determined scheme ignored the clear and unequivocal coverages present in the policies as well as California's well-established efficient proximate cause doctrine.

74.    Plaintiffs are informed and believe and, on that basis, allege that the "unfair" practices alleged above are continuing in nature and are widespread practices engaged in by State Farm.

75.     On behalf of the general public and the Classes, Plaintiffs respectfully request that the Court issue an injunction against State Farm preliminarily and permanently enjoining it from continuing to engage in unfair conduct and preventing State Farm from denying property loss claims resulting from an unplanned power outage caused by a wildfire or related windstorm as not falling within the coverage grants of the Power Outage or Refrigerated Products Additional Coverage Provisions of the Policies, which is in violation of the Policies because they are in fact covered under the Fire and Windstorm Coverage Provisions of the Policies.

76.     On behalf of the general public and the Classes, Plaintiffs furthermore respectfully request that this Court order restitution to be paid by State Farm to them and other members of the Classes for premiums and other amounts wrongfully required, obtained and collected as the result of these wrongful denials in violation of the Policies.

77.     Plaintiffs respectfully request an award of attorneys' fees as the prevailing party in their request for injunctive or restitutionary relief against State Farm on behalf of themselves and the other members of Classes.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, individually and on behalf of the Classes, pray for relief as follows as applicable for the particular cause of action:

A.  An Order certifying this action to proceed on behalf of the Classes, and appointing Plaintiffs and the counsel listed below to represent the respective Classes;

B.  An Order awarding Plaintiffs and Class Members entitled to such relief restitution and/or disgorgement and such other equitable relief as the Court deems proper;

C.  An Order enjoining State Farm, its representatives, and all others acting with it or on its behalf from denying property loss claims resulting from an unplanned power outage caused by a wildfire or related windstorm as not falling within the coverage grants of the Power Outage or Refrigerated Products Additional Coverage Provisions of the Policies because they are in fact covered under the Fire and Windstorm Coverage Provisions of the Policies, and other appropriate injunctive relief;

D.  An Order providing a declaration that property loss claims resulting from an unplanned power outage caused by a wildfire or related windstorm are in fact covered under the Fire and Windstorm Coverage Provisions of the Policies, and State Farm's systemic practice of denying property loss claims caused by a wildfire or related windstorm as not falling within the coverage grants of the Power Outage or Refrigerated Products Additional Coverage Provisions of the Policies is unlawful and in material breach of the Policies' terms;

E.  An Order awarding Plaintiffs and the other members of the Classes who might be entitled to such relief actual, compensatory, statutory, punitive, and/or exemplary damages;

F.  An Order awarding Plaintiffs' attorneys' fees, expert witness fees and other costs pursuant to the state statutory causes of action set forth above that permit such an award; and

G.  An Order awarding such other and further relief as may be just and proper, including pre-judgment and post-judgment interest on the above amounts.

## DEMAND FOR JURY TRIAL

Plaintiffs herein demand trial by jury of all claims and causes of action in this lawsuit.

Dated: April 6, 2021                                      **MERLIN LAW GROUP**

By: _____

DANIEL J. VEROFF
Attorney for Plaintiffs

William F. "Chip" Merlin, Jr., Esq.
CA Bar No. 275936
Victor Jacobellis, Esq., CA Bar No. 278988
Daniel J. Veroff, Esq., CA Bar No. 291492
**MERLIN LAW GROUP**
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Telephone: (415) 851-2300
Facsimile: (415) 960-3882
cmerlin@merlinlawgroup.com
vjacobellis@merlinlawgroup.com
dveroff@merlinlawgroup.com

**THE MOSKOWITZ FIRM, PLLC**
Adam Moskowitz (*Pro Hac Vice forthcoming*)
Joseph Kaye (*Pro Hac Vice forthcoming*)
2 Alahambra Plaza
Suite 601
Coral Gables, FL 33134
Tel: 305-740-1423
Fax: 786-298-5737
adam@moskowitz-law.com
joseph@moskowitz-law.com

EXHIBIT 1



This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars.  However, we want to point out that every policy contains limitations and exclusions.  Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

State Farm®
**Homeowners**
**Policy**

FP-7955 CA

# TABLE OF CONTENTS

## DECLARATIONS

Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

**Begins on Page**

**DECLARATIONS CONTINUED** . . . . . . . . . . . . . . . . . . . . .    1

**DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

**SECTION I - YOUR PROPERTY**
  COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3
    Coverage A - Dwelling . . . . . . . . . . . . . . . . . . . . . .    3
    Coverage B - Personal Property . . . . . . . . . . . . . . . . . .    3
    Coverage C - Loss of Use . . . . . . . . . . . . . . . . . . . . .    4
    Additional Coverages . . . . . . . . . . . . . . . . . . . . . . .    5
    Inflation Coverage . . . . . . . . . . . . . . . . . . . . . . . .    7
  LOSSES INSURED . . . . . . . . . . . . . . . . . . . . . . . . .    7
  LOSSES NOT INSURED . . . . . . . . . . . . . . . . . . . . . . .    9
  LOSS SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . .    12
  CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

**SECTION II - YOUR LIABILITY**
  COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . .    16
    Coverage L - Personal Liability . . . . . . . . . . . . . . . . .    16
    Coverage M - Medical Payments to Others . . . . . . . . . . . . .    16
    Additional Coverages . . . . . . . . . . . . . . . . . . . . . . .    16
  EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . .    17
  CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

**SECTION I AND SECTION II - CONDITIONS** . . . . . . . . . . . . . . .    20

**WORKERS' COMPENSATION** . . . . . . . . . . . . . . . . . . . .    22

**OPTIONAL POLICY PROVISIONS** . . . . . . . . . . . . . . . . . . .    24

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983, 1992.
And also,
Includes copyrighted material of Insurance Services Office with its permission.
Copyright, Insurance Services Office, 1975, 1977.

FP-7955 CA
(6/96)

Printed in U.S.A.

# HOMEOWNERS POLICY

## DECLARATIONS CONTINUED

We agree to provide the insurance described in this policy:

1. based on your payment of premium for the coverages you chose;

2. based on your compliance with all applicable provisions of this policy; and

3. in reliance on your statements in these **Declarations**.

You agree, by acceptance of this policy, that:

1. you will pay premiums when due and comply with the provisions of the policy;

2. the statements in these **Declarations** are your statements and are true;

3. we insure you on the basis your statements are true; and

4. this policy contains all of the agreements between you and us and any of our agents.

Unless otherwise indicated in the application, you state that during the three years preceding the time of your application for this insurance your Loss History and Insurance History are as follows:

1. Loss History: you have not had any losses, insured or not; and

2. Insurance History: you have not had any insurer or agency cancel or refuse to issue or renew similar insurance to you or any household member.

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations**.

Certain words and phrases are defined as follows:

1. "**bodily injury**" means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.

   **Bodily injury** does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;

   b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

2. "**business**" means a trade, profession or occupation. This includes farming.

3. "**Declarations**" means the policy **Declarations**, any amended **Declarations**, the most recent renewal notice or certificate, an Evidence of Insurance form or any endorsement changing any of these.

4. "**insured**" means you and, if residents of your household:

   a. your relatives; and

   b. any other person under the age of 21 who is in the care of a person described above.

   Under Section II, "**insured**" also means:

   c. with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them. However, the animal or watercraft must be owned by you or a person included in 4.a. or 4.b. A person or organization using or having custody of these animals or watercraft in the course of a **business**, or without permission of the owner, is not an **insured**; and

1

FP-7955 CA

d.  with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of a person included in 4.a. or 4.b.

5.  "**insured location**" means:

a.  the **residence premises**;

b.  the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire while this policy is in effect for your use as a residence;

c.  any premises used by you in connection with the premises included in 5.a. or 5.b.;

d.  any part of a premises not owned by an **insured** but where an **insured** is temporarily residing;

e.  land owned by or rented to an **insured** on which a one or two family dwelling is being constructed as a residence for an **insured**;

f.  individual or family cemetery plots or burial vaults owned by an **insured**;

g.  any part of a premises occasionally rented to an **insured** for other than **business** purposes;

h.  vacant land owned by or rented to an **insured**. This does not include farm land; and

i.  farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

6.  "**motor vehicle**", when used in Section II of this policy, means:

a.  a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an **insured location** is not a **motor vehicle**;

b.  a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by

or carried on a vehicle included in 6.a. is not a **motor vehicle**;

c.  a motorized golf cart, snowmobile, motorized bicycle, motorized tricycle, all-terrain vehicle or any other similar type equipment owned by an **insured** and designed or used for recreational or utility purposes off public roads, while off an **insured location**. A motorized golf cart while used for golfing purposes is not a **motor vehicle**; and

d.  any vehicle while being towed by or carried on a vehicle included in 6.a., 6.b. or 6.c.

7.  "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a.  **bodily injury**; or

b.  **property damage**;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

8.  "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage**.

9.  "**residence employee**" means an employee of an **insured** who performs duties, including household or domestic services, in connection with the maintenance or use of the **residence premises**. This includes employees who perform similar duties elsewhere for you. This does not include employees while performing duties in connection with the **business** of an **insured**.

10.  "**residence premises**" means:

a.  the one, two, three or four-family dwelling, other structures and grounds; or

b.  that part of any other building;

where you reside and which is shown in the **Declarations**.

FP-7955 CA

# SECTION I - COVERAGES

## COVERAGE A - DWELLING

1. **Dwelling**. We cover the dwelling used principally as a private residence on the **residence premises** shown in the **Declarations**.

   Dwelling includes:

   a. structures attached to the dwelling;

   b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises**;

   c. foundation, floor slab and footings supporting the dwelling; and

   d. wall-to-wall carpeting attached to the dwelling.

2. **Dwelling Extension**. We cover other structures on the **residence premises**, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

   We do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used in whole or in part for **business** purposes; or

   c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

3. **Property Not Covered**. We do not cover:

   a. land, including the land necessary to support any Coverage A property;

   b. any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

   c. the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A.

## COVERAGE B - PERSONAL PROPERTY

1. **Property Covered**. We cover personal property owned or used by an **insured** while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied exclusively by an **insured**. At your request, we will also cover personal property owned by a guest or a **residence employee**, while the property is in any other residence occupied by an **insured**.

   We cover personal property usually situated at an **insured's** residence, other than the **residence premises**, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after you start moving the property there. If the **residence premises** is a newly acquired principal residence, personal property in your immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy.

   **Special Limits of Liability**. These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

   a. $200 on money, coins and medals, including any of these that are a part of a collection, and bank notes;

   b. $1,000 on property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises**. This coverage is limited to $250 on such property away from the **residence premises**.

   Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage;

FP-7955 CA

c. $1,000 on securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

d. $1,000 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

e. $1,000 on trailers not used with watercraft;

f. $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

g. $2,500 for loss by theft of firearms;

h. $2,500 for loss by theft of silverware and goldware;

i. $5,000 on electronic data processing system equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the purpose of repair, servicing or temporary use. An **insured** student's equipment and media are covered while at a residence away from home; and

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

2. **Property Not Covered**. We do not cover:

a. articles separately described and specifically insured in this or any other insurance;

b. animals, birds or fish;

c. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are:

   (1) used solely to service the **insured location**; or

   (2) designed for assisting the handicapped;

d. devices or instruments for the recording or reproduction of sound permanently attached to an engine or motor propelled vehicle. We do not cover tapes, wires, records or other mediums that may be used with these devices or instruments while in the vehicle;

e. aircraft and parts;

f. property of roomers, boarders, tenants and other residents not related to an **insured**. We do cover property of roomers, boarders and other residents related to an **insured**;

g. property regularly rented or held for rental to others by an **insured**. This exclusion does not apply to property of an **insured** in a sleeping room rented to others by an **insured**;

h. property rented or held for rental to others away from the **residence premises**;

i. any citizens band radios, radio telephones, radio transceivers, radio transmitters, radar or laser detectors, antennas and other similar equipment permanently attached to an engine or motor propelled vehicle;

j. books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to any recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records; or

k. recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.

## COVERAGE C - LOSS OF USE

1. **Additional Living Expense**. When a Loss Insured causes the **residence premises** to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

FP-7955 CA

2. **Fair Rental Value**. When a Loss Insured causes that part of the **residence premises** rented to others or held for rental by you to become uninhabitable, we will cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the **residence premises** rented or held for rental is uninhabitable.

3. **Prohibited Use**. When a civil authority prohibits your use of the **residence premises** because of direct damage to a neighboring premises by a Loss Insured, we will cover any resulting Additional Living Expense and Fair Rental Value. Coverage is for a period not exceeding two weeks while use is prohibited.

We do not cover loss or expense due to cancellation of a lease or agreement.

## SECTION I - ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions and conditions of this policy.

1. **Debris Removal**. We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property.

When the amount payable for the property damage plus the debris removal exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to Additional Coverage, item 3. Trees, Shrubs and Other Plants.

We will also pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the **residence premises** when the tree has caused a Loss Insured to Coverage A property.

2. **Temporary Repairs**. If damage is caused by a Loss Insured, we will pay the reasonable and necessary cost you incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs and Other Plants**. We cover outdoor trees, shrubs, plants or lawns, on the **residence premises**, for direct loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles (not owned or operated by a resident of the **residence premises**), Vandalism or malicious mischief or Theft.

The limit for this coverage, including the removal of debris, shall not exceed 5% of the amount shown in the **Declarations** for COVERAGE A - DWELLING. We will not pay more than $500 for any one outdoor tree, shrub or plant, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for **business** purposes.

4. **Fire Department Service Charge**. We will pay up to $500 for your liability assumed by contract or agreement for fire department charges. This means charges incurred when the fire department is called to save or protect covered property from a Loss Insured. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed**. Covered property, while being removed from a premises endangered by a Loss Insured, is covered for any accidental direct physical loss. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money**.

   a. We will pay up to $1,000 for:

   (1) the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an **insured's** name. If an **insured** has not complied with all terms and conditions under which the cards are issued, we do not cover use by an **insured** or anyone else;

FP-7955 CA

(2) loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

(3) loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

No deductible applies to this coverage.

We will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

b. We do not cover loss arising out of **business** pursuits or dishonesty of an **insured**.

c. Defense:

(1) We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend claims or suits ends when the amount we pay for the loss equals our limit of liability.

(2) If claim is made or a suit is brought against an **insured** for liability under the Credit Card or Bank Fund Transfer Card coverage, we will provide a defense. This defense is at our expense by counsel of our choice.

(3) We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption**. We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a Loss Insured occurring on the **residence premises**. The power lines off the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products**. Coverage B is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure

is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

a. removal of a plug from an electrical outlet; or

b. turning off an electrical switch unless caused by a Loss Insured.

This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward**. We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

10. **Volcanic Action**. We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

a. volcanic blast or airborne shock waves;

b. ash, dust or particulate matter; or

c. lava flow.

We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

One or more volcanic eruptions that occur within a 360-hour period shall be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

11. **Collapse**. We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

FP-7955 CA

The collapse must be directly and immediately caused only by one or more of the following:

a. perils described in **SECTION I - LOSSES INSURED, COVERAGE B - PERSONAL PROPERTY**. These perils apply to covered building and personal property for loss insured by this Additional Coverage;

b. hidden decay of a supporting or weight-bearing structural member of the building;

c. hidden insect or vermin damage to a structural member of the building;

d. weight of contents, equipment, animals or people;

e. weight of ice, snow, sleet or rain which collects on a roof; or

f. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the loss is the direct and immediate cause of the collapse of the building.

This coverage does not increase the limit applying to the damaged property.

12. **Locks**. We will pay the reasonable expenses you incur to re-key locks on exterior doors of the dwelling located on the **residence premises**, when the keys to those locks are a part of a covered theft loss.

No deductible applies to this coverage.

## INFLATION COVERAGE

The limits of liability shown in the **Declarations** for Coverage A, Coverage B and, when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the **Declarations**.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A, Coverage B and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the **Declarations**.

If during the term of this policy the Coverage A limit of liability is changed at your request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

# SECTION I - LOSSES INSURED

## COVERAGE A - DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED**.

## COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I - LOSSES NOT INSURED**:

1. Fire or lightning.

2. **Windstorm or hail**. This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. **Explosion**.

FP-7955 CA

4. **Riot or civil commotion**.

5. **Aircraft**, including self-propelled missiles and space-craft.

6. **Vehicles**, meaning impact by a vehicle.

7. **Smoke**, meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief**, meaning only willful and malicious damage to or destruction of property.

9. **Theft**, including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

   This peril does not include:

   a. loss of a precious or semi-precious stone from its setting;

   b. loss caused by theft:

      (1) committed by an **insured** or by any other person regularly residing on the **insured location**. Property of a student who is an **insured** is covered while located at a residence away from home, if the theft is committed by a person who is not an **insured**;

      (2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

      (3) from the part of a **residence premises** rented to others:

         (a) caused by a tenant, members of the tenant's household, or the tenant's employees;

         (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

         (c) of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes

other than bank notes, manuscripts, passports, tickets and stamps; or

         (d) of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones;

   c. loss caused by theft that occurs away from the **residence premises** of:

      (1) property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there. Property of a student who is an **insured** is covered while at a residence away from home;

      (2) watercraft of all types, including their furnishings, equipment and outboard motors; or

      (3) trailers and campers designed to be pulled by or carried on a vehicle.

      If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence shall not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects**. This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Sudden and accidental discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

    This peril does not include loss:

    a. to the system or appliance from which the water or steam escaped;

    b. caused by or resulting from freezing;

    c. caused by or resulting from water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which

FP-7955 CA

enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the **residence premises** while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

a. maintain heat in the building; or

b. shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass which is a part of a building on the **residence premises**. There is no coverage for loss or damage to the glass.

## SECTION I - LOSSES NOT INSURED

1. We do not insure under any coverage for any loss consisting of the items in paragraphs 2., 3., 4. or 5. below. This exclusion does not apply if the loss is caused by a peril which is not otherwise excluded.

2. We do not insure for any loss to the property described in Coverage A which is caused by one or more of the items below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. collapse, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Collapse**;

b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion only applies while the dwelling is vacant, unoccupied or being constructed.

This exclusion does not apply if you have used reasonable care to:

(1) maintain heat in the building; or

(2) shut off the water supply and drain the system and appliances of water;

c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, pavement, patio, foundation, retaining wall, bulkhead, pier, wharf or dock;

d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

e. vandalism or malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

FP-7955 CA

f.  continuous or repeated seepage or leakage of water or steam from a:

(1) heating, air conditioning or automatic fire protective sprinkler system;

(2) household appliance; or

(3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

which occurs over a period of time. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

g.  wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

h.  corrosion, electrolysis or rust;

i.  mold, fungus or wet or dry rot;

j.  contamination;

k.  smog, smoke from agricultural smudging or industrial operations;

l.  settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

m.  birds, vermin, rodents, insects, or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects or domestic animals; or

n.  pressure from or presence of tree, shrub or plant roots.

However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

3. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a.  **Earthquake**.

However, we do insure for any direct loss by fire resulting from earthquake, provided the resulting fire loss is itself a Loss Insured.

b.  **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion or smoke.

However, we do insure for any direct loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a Loss Insured.

4. We do not insure under any coverage for any loss which is caused by one or more of the items below, regardless of whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a.  **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

b.  **Earth Movement**, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES**, **Volcanic Action**.

FP-7955 CA

However, we do insure for any direct loss by fire resulting from earth movement, provided the resulting fire loss is itself a Loss Insured.

c. **Water Damage**, meaning:

(1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

(2) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured.

d. **Neglect**, meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any conse-

quence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

5. We do not insure for loss described in paragraphs 2., 3. and 4. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

b. defect, weakness, inadequacy, fault or unsoundness in:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**; or

c. weather conditions.

However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

FP-7955 CA

# SECTION I - LOSS SETTLEMENT

Only the Loss Settlement provisions shown in the **Declarations** apply. We will settle covered property losses according to the following.

## COVERAGE A - DWELLING

1. **A1 - Replacement Cost Loss Settlement - Similar Construction**.

   a.  We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES**, **COVERAGE A - DWELLING**, except for wood fences, subject to the following:

      (1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

      (2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

      (3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

      (4) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage**.

   b.  Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A - DWELLING EXTENSION.

2. **A2 - Replacement Cost Loss Settlement - Common Construction**.

   a.  We will pay the cost to repair or replace with common construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES**, **COVERAGE A - DWELLING**, except for wood fences, subject to the following:

      (1) we will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. We will not pay the cost to repair or replace obsolete, antique or custom construction with like kind and quality;

      (2) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property as described in a.(1) above;

      (3) when the repair or replacement is actually completed as described in a.(1) above, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

      (4) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

      (5) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating

FP-7955 CA

the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage**.

b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A - DWELLING EXTENSION.

## COVERAGE B - PERSONAL PROPERTY

1. **B1 - Limited Replacement Cost Loss Settlement**.

    a. We will pay the cost to repair or replace property covered under **SECTION I - COVERAGES**, **COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below, subject to the following:

       (1) until repair or replacement is completed, we will pay only the cost to repair or replace less depreciation;

       (2) after repair or replacement is completed, we will pay the difference between the cost to repair or replace less depreciation and the cost you have actually and necessarily spent to repair or replace the property; and

       (3) if property is not repaired or replaced within two years after the date of loss, we will pay only the cost to repair or replace less depreciation.

    b. We will pay market value at the time of loss for:

       (1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

       (2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

(3) property not useful for its intended purpose.

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

   (1) our cost to replace at the time of loss;

   (2) the full cost of repair;

   (3) any special limit of liability described in the policy; or

   (4) any applicable Coverage B limit of liability.

2. **B2 - Depreciated Loss Settlement**.

    a. We will pay the cost to repair or replace less depreciation at the time of loss for property covered under **SECTION I - COVERAGES**, **COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below.

    b. We will pay market value at the time of loss for:

       (1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

       (2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

       (3) property not useful for its intended purpose.

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

   (1) our cost to replace at the time of loss;

   (2) the full cost of repair;

   (3) any special limit of liability described in the policy; or

   (4) any applicable Coverage B limit of liability.

FP-7955 CA

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability**. Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a. to the **insured** for an amount greater than the **insured's** interest; or

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss**. After a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

   b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

   c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

   d. as often as we reasonably require:

      (1) exhibit the damaged property;

      (2) provide us with records and documents we request and permit us to make copies;

      (3) submit to and subscribe, while not in the presence of any other **insured**:

         (a) statements; and

         (b) examinations under oath; and

      (4) produce employees, members of the **insured's** household or others for examination under oath to the extent it is within the **insured's** power to do so; and

   e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) the time and cause of loss;

      (2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

      (3) other insurance which may cover the loss;

      (4) changes in title or occupancy of the property during the term of this policy;

      (5) specifications of any damaged building and detailed estimates for repair of the damage;

      (6) an inventory of damaged or stolen personal property described in 2.c.;

      (7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

      (8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss to a Pair or Set**. In case of loss to a pair or set, we may elect to:

   a. repair or replace any part to restore the pair or set to its value before the loss; or

   b. pay the difference between the depreciated value of the property before and after the loss.

4. **Appraisal**. If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence prem-**

FP-7955 CA

**ises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

5. **Other Insurance**. If a loss covered by this policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6. **Suit Against Us**. No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

7. **Our Option**. We may repair or replace any part of the property damaged or stolen with similar property. Any property we pay for or replace becomes our property.

8. **Loss Payment**. We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 30 days after we receive your proof of loss and:

   a.  reach agreement with you;

   b.  there is an entry of a final judgment; or

   c.  there is a filing of an appraisal award with us.

9. **Abandonment of Property**. We need not accept any property abandoned by an **insured**.

10. **Mortgage Clause**. The word "mortgagee" includes trustee.

    a.  If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

b.  If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

   (1)  notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   (2)  pays on demand any premium due under this policy, if you have not paid the premium; and

   (3)  submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

c.  If this policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect. Proof of mailing shall be proof of notice.

d.  If we pay the mortgagee for any loss and deny payment to you:

   (1)  we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   (2)  at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

e.  Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee**. We will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing or transporting property for a fee. This applies regardless of any other provision of this policy.

12. **Intentional Acts**. If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other **insured** for this loss.

FP-7955 CA

# SECTION II - LIABILITY COVERAGES

## COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

## COVERAGE M - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**;

2. to a person off the **insured location**, if the **bodily injury**:

   a. arises out of a condition on the **insured location** or the ways immediately adjoining;

   b. is caused by the activities of an **insured**;

   c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

   d. is caused by an animal owned by or in the care of an **insured**; or

3. to a **residence employee** if the **occurrence** causing **bodily injury** occurs off the **insured location** and arises out of or in the course of the **residence employee's** employment by an **insured**.

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses**. We pay:

   a. expenses we incur and costs taxed against an **insured** in suits we defend;

   b. premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage L limit. We are not obligated to apply for or furnish any bond;

   c. reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for aiding us in the investigation or defense of claims or suits;

   d. prejudgment interest awarded against the **insured** on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses**. We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

3. **Damage to Property of Others**.

   a. We will pay for **property damage** to property of others caused by an **insured**.

   b. We will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

      (3) $500 in any one **occurrence**.

FP-7955 CA

c. We will not pay for **property damage**:

 (1) if insurance is otherwise provided in this policy;

 (2) caused intentionally by an **insured** who is 13 years of age or older;

 (3) to property, other than a rented golf cart, owned by or rented to an **insured**, a tenant of an **insured**, or a resident in your household; or

 (4) arising out of:

 (a) **business** pursuits;

 (b) any act or omission in connection with a premises an **insured** owns, rents or controls, other than the **insured location**; or

 (c) the ownership, maintenance, or use of a **motor vehicle**, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board or similar type watercraft.

# SECTION II - EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

 a. **bodily injury** or **property damage**:

 (1) which is either expected or intended by the **insured**; or

 (2) which is the result of willful and malicious acts of the **insured**;

 b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured**. This exclusion does not apply:

 (1) to activities which are ordinarily incident to non-**business** pursuits;

 (2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

 (3) to the rental or holding for rental of a residence of yours:

 (a) on an occasional basis for the exclusive use as a residence;

 (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

 (c) in part, as an office, school, studio or private garage;

 (4) when the dwelling on the **residence premises** is a two, three or four-family dwelling and you occupy one part and rent or hold for rental the other part; or

 (5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations;

 c. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

 d. **bodily injury** or **property damage** arising out of any premises currently owned or rented to any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

 e. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

 (1) an aircraft;

 (2) a **motor vehicle** owned or operated by or rented or loaned to any **insured**; or

 (3) a watercraft:

 (a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

FP-7955 CA

(b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any **insured**;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any **insured** which is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**. Exclusion e.(3) does not apply while the watercraft is on the **residence premises**;

f.  **bodily injury** or **property damage** arising out of:

(1) the entrustment by any **insured** to any person;

(2) the supervision by any **insured** of any person;

(3) any liability statutorily imposed on any **insured**; or

(4) any liability assumed through an unwritten or written agreement by any **insured**;

with regard to the ownership, maintenance or use of any aircraft, watercraft, or **motor vehicle** which is not covered under Section II of this policy;

g.  **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, or any warlike act including destruction or seizure or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

h.  **bodily injury** to you or any **insured** within the meaning of part a. or b. of the definition of **insured**.

This exclusion also applies to any claim made or suit brought against you or any **insured** to share damages with or repay someone else who may be obli-

gated to pay damages because of the **bodily injury** sustained by you or any **insured** within the meaning of part a. or b. of the definition of **insured**;

i.  any claim made or suit brought against any **insured** by:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age; or

j.  **bodily injury** or **property damage** arising out of an **insured's** participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

2. Coverage L does not apply to:

a.  liability:

(1) for your share of any loss assessment charged against all members of an association of property owners; or

FP-7955 CA

(2) assumed under any unwritten contract or agreement, or by contract or agreement in connection with a **business** of the **insured**;

b. **property damage** to property currently owned by any **insured**;

c. **property damage** to property rented to, occupied or used by or in the care of any **insured**. This exclusion does not apply to **property damage** caused by fire, smoke or explosion;

d. **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by an **insured** under a workers' compensation, non-occupational disability, or occupational disease law;

e. **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

3. Coverage M does not apply to **bodily injury**:

a. to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law;

c. from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

d. to a person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

## SECTION II - CONDITIONS

1. **Limit of Liability**. The Coverage L limit is shown in the **Declarations**. This is our limit for all damages from each **occurrence** regardless of the number of **insureds**, claims made or persons injured.

   The Coverage M limit is shown in the **Declarations**. This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

2. **Severability of Insurance**. This insurance applies separately to each **insured**. This condition shall not increase our limit of liability for any one **occurrence**.

3. **Duties After Loss**. In case of an accident or **occurrence**, the **insured** shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

   a. give written notice to us or our agent as soon as practicable, which sets forth:

      (1) the identity of this policy and **insured**;

      (2) reasonably available information on the time, place and circumstances of the accident or **occurrence**; and

      (3) names and addresses of any claimants and available witnesses;

   b. immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

   c. at our request, assist in:

      (1) making settlement;

      (2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an **insured**;

      (3) the conduct of suits and attend hearings and trials; and

FP-7955 CA

(4) securing and giving evidence and obtaining the attendance of witnesses;

d. under the coverage - **Damage to Property of Others**, exhibit the damaged property if within the **insured's** control; and

e. the **insured** shall not, except at the **insured's** own cost, voluntarily make payments, assume obligations or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury**.

4. **Duties of an Injured Person - Coverage M**. The injured person, or, when appropriate, someone acting on behalf of that person, shall:

a. give us written proof of claim, under oath if required, as soon as practicable;

b. execute authorization to allow us to obtain copies of medical reports and records; and

c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M**. Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us**. No action shall be brought against us unless there has been compliance with the policy provisions.

No one shall have the right to join us as a party to an action against an **insured**. Further, no action with respect to Coverage L shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured**. Bankruptcy or insolvency of an **insured** shall not relieve us of our obligation under this policy.

8. **Other Insurance - Coverage L**. This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II - CONDITIONS

1. **Policy Period**. This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud**. This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause**. If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions**. A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancellation**.

a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. Proof of mailing shall be sufficient proof of notice. Upon receipt of written request from you, we shall furnish the facts on which the cancellation is based:

(1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is

FP-7955 CA

payable to us or our agent or under any finance or credit plan.

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason. We may cancel by notifying you at least 10 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more or at any time if it is a renewal with us, we may cancel if there has been:

   (a) conviction of a crime having as one of its necessary elements an act increasing the hazard insured against;

   (b) discovery of fraud or material misrepresentation;

   (c) discovery of grossly negligent acts or omissions substantially increasing any of the hazards insured against; or

   (d) physical changes in the property insured which result in the property becoming uninsurable.

   We may cancel this policy by notifying you at least 45 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 45 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

d. If, when we cancel this policy, the return premium is not refunded with the notice of cancellation, we will refund it within 25 days after the date cancellation takes effect. If, when you cancel this policy, the return premium is not refunded when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal**. We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. The notice will be mailed or delivered at least 45 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

   If this policy is written for a period of less than one year, we agree not to refuse to renew except at the end of an annual period commencing with the original or renewal effective date.

7. **Assignment**. Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation**. An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, an **insured** shall:

   a. sign and deliver all related papers;

   b. cooperate with us in a reasonable manner; and

   c. do nothing after a loss to prejudice such rights.

   Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death**. If any person shown in the **Declarations** or the spouse, if a resident of the same household, dies:

   a. we insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

   b. **insured** includes:

      (1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises**; and

FP-7955 CA

(2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

# WORKERS' COMPENSATION
## (Residence Employees)

## COVERAGES

We will pay, with respect to **residence employees**:

1. under Coverage I, when due, all benefits required of an **insured** by the California Workers' Compensation Law; and

2. under Coverage II, on behalf of an **insured**, all damages for which the **insured** is legally liable because of **bodily injury** sustained by a **residence employee**. The **bodily injury** must be caused by accident or disease and arise out of and in the course of employment by the **insured** while:

   a. in the United States of America, its territories or possessions, or Canada; or

   b. temporarily elsewhere if the **residence employee** is a citizen or resident of the United States or Canada.

   Coverage II does not apply to any suit brought in or judgment rendered by any court outside the United States of America, its territories and possessions, or Canada, or to any action on such judgment.

These coverages apply only to **bodily injury** which occurs during the policy period. If the **bodily injury** is a disease, it must be caused or aggravated by the conditions of the **residence employee's** employment by the **insured**.

## SPECIAL DEFINITION

**Residence employee**, as used in this coverage, means an employee of any **insured** whose duties are incidental to the ownership, maintenance or use of the **residence premises**, including the performance of household domestic services, or whose duties are personal and not in the course of the trade, **business**, profession or occupation of any **insured**.

**Residence employee** does not include any person of whom the **insured** is the parent, spouse or child. Also, **residence employee** does not include any person who, during the 90 calendar days immediately preceding injury:

1. was employed by the **insured** for less than 52 hours; or

2. earned less than $100 in wages from an **insured**.

## EXCLUSIONS

This coverage does not apply:

1. to liability for additional compensation imposed on an **insured** under Sections 4553 and 4557, Division IV, Labor Code of the State of California, because of:

   a. the serious and willful misconduct of an **insured**; or

   b. **bodily injury** to an employee under 16 years of age and illegally employed at the time of injury;

2. to liability for **bodily injury** arising out of **business** pursuits of an **insured**;

3. to liability arising out of the discharge, harassment or coercion of, or the discrimination against any employee in violation of any law;

4. under Coverage II:

   a. to liability assumed by the **insured** under any contract or agreement;

   b. to **bodily injury** by disease unless a written claim is made or suit brought against the **insured** within 36 months after the end of the policy period;

   c. to any obligation under a workers' compensation, unemployment or disability benefits law or any similar law;

FP-7955 CA

d. to punitive or exemplary damages where insurance of liability therefor is prohibited by law or contrary to public policy;

e. to **bodily injury** intentionally caused or aggravated by you.

## LIMIT OF LIABILITY COVERAGE II

Our total limit of liability will not exceed $100,000 for all damages because of **bodily injury**:

1. sustained by one or more **residence employees** in any one accident; or

2. caused by disease and sustained by a **residence employee**.

Our total limit of liability will not exceed $500,000 for all damages arising out of **bodily injury** by disease regardless of the number of **residence employees** who sustain **bodily injury** by disease.

## APPLICABLE POLICY PROVISIONS

The following policy provisions apply to this coverage:

1. the definitions of "you", "your", "we", "us", "our", "**bodily injury**", "**business**", "**insured**" and "**residence premises**";

2. our agreement to defend the **insured** as provided under Coverage L - Personal Liability;

3. **Section II - Additional Coverages**, items:

   1. Claim Expenses; and

   2. First Aid Expenses;

4. **Section II - Conditions**, items:

   3. Duties After Loss; and

   6. Suit Against Us;

5. **Section I and Section II - Conditions**, items:

   4. Waiver or Change of Policy Provisions;

   5. Cancellation;

   7. Assignment; and

   8. Subrogation.

## ADDITIONAL POLICY PROVISIONS

The following additional provisions apply:

1. under Coverage I:

   a. we will be directly and primarily liable to any **residence employee** of an **insured** entitled to the benefits of the California Workers' Compensation Law;

   b. as between the **residence employee** and us, notice to or knowledge of the occurrence of the injury on the part of an **insured** will be deemed notice or knowledge on our part;

   c. the jurisdiction of an **insured** will, for the purpose of the law imposing liability for compensation, be our jurisdiction;

   d. we will be subject to the orders, findings, decisions or awards rendered against an **insured**, under the provisions of the law imposing liability for compensation, subject to the provisions, conditions and limitations of this policy. This policy shall govern as between an **insured** and us as to payments by either in discharge of an **insured's** liability for compensation;

   e. the **residence employee** has a first lien upon any amount which we owe you on account of this insurance. In case of your legal incapacity or inability to receive the money and pay it to the **residence employee**, we will pay it directly to the **residence employee**. Your obligation to the **residence employee** will be discharged to the extent of such payment; and

   f. the law mandates that you reimburse us for penalties we are required to pay the injured employee. We are required to pay a 10% penalty of the late payment if the late payment which gives rise to an increased payment is due less than 7 days after we receive the completed claim form from the employer.

   We will notify you in writing, within 30 days of the payment and will bill and collect the amount of the penalty. You are not obligated to repay us unless the aggregate total paid in a policy year exceeds $100.

FP-7955 CA

You will have 60 days, following notice of the obligation to reimburse, to appeal the decision to the Department of Insurance.

2. under Coverage I and Coverage II:

a. **Other Insurance**. This coverage does not apply to any loss to which other valid and collectible Workers' Compensation or Employers' Liability Insurance applies.

b. **Conformity to Statute**. Terms of this coverage which are in conflict with the California Workers' Compensation Law are amended to conform to that law.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the **Declarations** and is subject to all the terms, provisions, exclusions and conditions of this policy.

**Option AI - Additional Insured**. The definition of **insured** is extended to include the person or organization shown in the **Declarations** as an Additional Insured or whose name is on file with us. Coverage is with respect to:

1. Section I - Coverage A; or

2. Section II - Coverages L and M but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations**.

**Option BP - Business Property**. The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability**, item b., for property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,000 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU - Business Pursuits**. **SECTION II - EXCLUSIONS**, item 1.b. is modified as follows:

1. Section II coverage applies to the **business** pursuits of an **insured** who is a:

a. clerical office employee, salesperson, collector, messenger; or

b. teacher (except college, university and professional athletic coaches), school principal or school administrator;

while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

a. for **bodily injury** or **property damage** arising out of a **business** owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

(1) computer programming, architectural, engineering or industrial design services;

(2) medical, surgical, dental or other services or treatment conducive to the health of persons or animals; and

(3) beauty or barber services or treatment;

c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

FP-7955 CA

d. when the **insured** is a member of the faculty or teaching staff of a school or college:

(1) for **bodily injury** or **property damage** arising out of the maintenance, use, loading or unloading of:

(a) draft or saddle animals, including vehicles for use with them; or

(b) aircraft, **motor vehicles**, recreational motor vehicles or watercraft, airboats, air cushions or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

owned or operated, or hired by or for the **insured** or employer of the **insured** or used by the **insured** for the purpose of instruction in the use thereof; or

(2) under Coverage M for **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**.

**Option FA - Firearms**. Firearms are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

a. mechanical breakdown, wear and tear, gradual deterioration;

b. insects or vermin;

c. any process of refinishing, renovating, or repairing;

d. dampness of atmosphere or extremes of temperatures;

e. inherent defect or faulty manufacture;

f. rust, fouling or explosion of firearms;

g. breakage, marring, scratching, tearing or denting unless caused by fire, thieves or accidents to conveyances; or

h. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations**.

**Option HC - Home Computer**. The **COVERAGE B - PERSONAL PROPERTY**, **Special Limits of Liability**, item i., for electronic data processing system equipment and the recording or storage media used with that equipment is increased to be the amount shown in the **Declarations** for this option.

**Option ID - Increased Dwelling Limit**. We will settle losses to damaged building structures covered under **COVERAGE A - DWELLING** according to the **SECTION I - LOSS SETTLEMENT** provision shown in the **Declarations**.

If the amount you actually and necessarily spend to repair or replace damaged building structures exceeds the applicable limit of liability shown in the **Declarations**, we will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the **Declarations** to repair or replace the Dwelling; or

2. 10% of the Option ID limit of liability to repair or replace building structures covered under **COVERAGE A - DWELLING**, **Dwelling Extension**.

**Report Increased Values**. You must notify us within 90 days of the start of any new building structure costing $5,000 or more; or any additions to or remodeling of building structures which increase their values by $5,000 or more. You must pay any additional premium due for the increased value. We will not pay more than the applicable limit of liability shown in the **Declarations**, if you fail to notify us of the increased value within 90 days.

FP-7955 CA

**Option IO - Incidental Business**. The coverage provided by this option applies only to that incidental **business** occupancy on file with us.

1. **COVERAGE A - DWELLING**, **Dwelling Extension**, item 2.b. is deleted.

2. **COVERAGE B - PERSONAL PROPERTY** is extended to include equipment, supplies and furnishings usual and incidental to this **business** occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

   The Option IO limits are shown in the **Declarations**. The first limit applies to property on the **residence premises**. The second limit applies to property while off the **residence premises**. These limits are in addition to the **COVERAGE B - PERSONAL PROPERTY**, **Special Limits of Liability** on property used or intended for use in a **business**.

3. Under Section II, the **residence premises** is not considered **business** property because an **insured** occupies a part of it as an incidental **business**.

4. **SECTION II - EXCLUSIONS**, item 1.b. of Coverage L and Coverage M is replaced with the following:

   b. **bodily injury** or **property damage** arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply:

   (1) to activities which are ordinarily incident to non-**business** pursuits or to **business** pursuits of an **insured** which are necessary or incidental to the use of the **residence premises** as an incidental **business**;

   (2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

   (3) to the rental or holding for rental of a residence of yours:

   (a) on an occasional basis for exclusive use as a residence;

   (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

   (c) in part, as an incidental **business** or private garage;

   (4) when the dwelling on the **residence premises** is a two family dwelling and you occupy one part and rent or hold for rental the other part; or

   (5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

5. This insurance does not apply to:

   a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured**;

   b. **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**;

   c. liability arising out of any acts, errors or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections or engineering services in the conduct of an **insured's** incidental **business** involving data processing, computer consulting or computer programming; or

   d. any claim made or suit brought against any **insured** by:

   (1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

   (a) any **insured**;

   (b) any employee of any **insured**; or

   (c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

    (a) any **insured**;

    (b) any employee of any **insured**; or

    (c) any other person actually or apparently acting on behalf of any **insured**.

Coverage M does not apply to any person indicated in (1) and (2) above.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age.

**Option JF - Jewelry and Furs**. Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware and platinum are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

    a. mechanical breakdown, wear and tear, gradual deterioration;

    b. insects or vermin;

    c. inherent vice; or

    d. seizure or destruction under quarantine or customs regulations;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations** for this option.

**Option OL - Building Ordinance or Law**.

1. **Coverage Provided**.

The total limit of insurance provided by this Building Ordinance or Law provision will not exceed an amount equal to the Option OL percentage shown in the **Declarations** of the Coverage A limit shown in the **Declarations** at the time of the loss, as adjusted by the inflation coverage provisions of the policy. This is an additional amount of insurance and applies only to the dwelling.

2. **Damaged Portions of Dwelling**.

When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will pay for the increased cost to repair or rebuild the physically damaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

3. **Undamaged Portions of Damaged Dwelling**.

When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will also pay for:

    a. the cost to demolish and clear the site of the undamaged portions of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs; and

    b. loss to the undamaged portion of the dwelling caused by enforcement of any ordinance or law if:

        (1) the enforcement is directly caused by the same Loss Insured;

        (2) the enforcement requires the demolition of portions of the same dwelling not damaged by the same Loss Insured;

FP-7955 CA

(3) the ordinance or law regulates the construction or repair of the dwelling, or establishes zoning or land use requirements at the described premises; and

(4) the ordinance or law is in force at the time of the occurrence of the same Loss Insured; or

c. the legally required changes to the undamaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

4. **Building Ordinance or Law Coverage Limitations**.

a. We will not pay for any increased cost of construction under this coverage:

(1) until the dwelling is actually repaired or replaced at the same or another premises in the same general vicinity; and

(2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.

b. We will not pay more for loss to the undamaged portion of the dwelling caused by the enforcement of any ordinance or law than:

(1) the depreciated value of the undamaged portion of the dwelling, if the dwelling is not repaired or replaced;

(2) the amount you actually spend to replace the undamaged portion of the dwelling if the dwelling is repaired or replaced.

c. We will not pay more under this coverage than the amount you actually spend:

(1) for the increased cost to repair or rebuild the dwelling at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

(2) to demolish and clear the site of the undamaged portions of the dwelling caused by enforcement of building, zoning or land use ordinance or law.

We will never pay for more than a dwelling of the same height, floor area and style on the same or similar premises as the dwelling, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

**Option SG - Silverware and Goldware Theft**. The **COVERAGE B - PERSONAL PROPERTY**, **Special Limits of Liability**, item h., for theft of silverware and goldware is increased to be the amount shown in the **Declarations** for this option.

IN WITNESS WHEREOF, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of this Company at the agency hereinbefore mentioned.

_Lynne M. Yousell_     Secretary                    _Thomas Conley_     President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment are proper.

FP-7955 CA

**StateFarm**

**State Farm General Insurance Company**
A Stock Company With Home Offices in Bloomington, Illinois

Po Box 853907
Richardson, TX 75085-3907

**Named Insured**

AT3          H-02-0245-FBFF    H  F
000933 0046
COOK, JASON & GOSK, JENNIFER
240 REYNOLDS DR
BOULDER CREEK CA 95006-9024

**DECLARATIONS PAGE**

COVERAGE SUMMARY
SEP 15 2020

| Policy Number | 05-C4-P998-3 |
|---|---|

| Policy Period | Effective Date | Expiration Date |
|---|---|---|
| 12 Months | MAY 2 2020 | MAY 2 2021 |

The policy period begins and ends at 12:01 am standard time at the residence premises.

**Loan # 826-1012847**
**Mortgagee**

GUILD MORTGAGE COMPANY
ISAOA/ATIMA
PO BOX 818009
CLEVELAND OH 44181-8009

ST-3
0108-4000

## HOMEOWNERS POLICY

**Automatic Renewal** - If the **policy period** is shown as **12 months**, this policy will be renewed automatically subject to the premiums, rules and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

Location of Residence Premises
Same as Insured's Address

This policy does not provide coverage for loss by earthquake
This policy includes Building Code Upgrade Coverage of $ 200,100

| Coverages & Property | Limits of Liability |
|---|---|
| **SECTION I** | |
| A Dwelling | $ 400,200 |
|    Dwelling Extension  up to | $ 40,020 |
| B Personal Property | $ 300,150 |
| C Loss of Use | Actual Loss Sustained |
| **SECTION II** | |
| L Personal Liability | $ 300,000 |
|    (Each Occurrence) | |
|    Damage to Property | |
|    of Others | $ 500 |
| M Medical Payments to | |
|    Others (Each Person) | $ 10,000 |

Inflation Coverage Index: 328.9
**Deductibles - Section I**

| All Losses | $ 3,000 |
|---|---|

In case of loss under this policy, the deductibles will be applied per occurrence and will be deducted from the amount of the loss. Other deductibles may apply - refer to policy.

**Loss Settlement Provision (See Policy)**
  A1 Replacement Cost - Similar Construction
  B1 Limited Replacement Cost - Coverage B

Forms, Options, & Endorsements
| | |
|---|---|
| Homeowners Policy | FP-7955.CA |
| Homeowners Policy Endorsement | FE-3422 |
| Amendatory Endorsement | FE-3247 |
| Form 438bfu NS Lndr Loss Pay | FE-1313 |
| Back-Up Dwell/Listed Property | FE-3560 |
| State of Emergency Amendatory | FE-1386 |
| Jewelry and Furs $1,500 Each | Option JF |
|   Article/$2,500 Aggregate | |
| Increase Dwlg Up to $ 80,040 | Option ID |

**Policy Premium**    $  1,245.00
Discounts Applied:
  Home Alert
  Home/Auto
  Claim Record

──────── Other limits and exclusions may apply - refer to your policy ────────

Your policy consists of this page, any endorsements
and the policy form. Please keep these together.

FP-7018C

Continued on Reverse

KEVIN BAILEY
408-612-4262

3385  251 I
N         Pre      P 15 2020

555-7020 CA

**Forms, Options, & Endorsements**

Ordinance/Law  50%/$ 200,100          Option OL

The limit of liability for this structure (Coverage A) is based on an estimate of the cost to rebuild your home, including an approximate cost for labor and materials in your area, and specific information that you have provided about your home.

### IMPORTANT NOTICE:

California law requires us to provide you with information for filing complaints with the State Insurance Department regarding the coverage and service provided under this policy.

Your agent's name and contact information are provided on the front of this document. Another option is to reach out by mail or phone directly to:

State Farm® Executive Customer Service
PO Box 2320
Bloomington IL 61702
Phone # 1-800-STATEFARM (1-800-782-8332)

Department of Insurance complaints should be filed only after you and State Farm or your agent or other company representative have failed to reach a satisfactory agreement on a problem.

California Department of Insurance
Consumer Services Division
300 South Spring Street
Los Angeles, CA 90013
Phone # 1-800-927-HELP (4357) or visit www.insurance.ca.gov/01-consumers

o1f0396g
Rev. 09-2005

EXHIBIT 2



This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars. However, we want to point out that every policy contains limitations and exclusions. Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

State Farm®
**Homeowners
Policy**

FP-7955 CA

FP 7955 CA

# TABLE OF CONTENTS

## DECLARATIONS

Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

Begins on Page

**DECLARATIONS CONTINUED** . . . . . . . . . . . . . . . . . . . . . 1

**DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**SECTION I - YOUR PROPERTY**
  COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . 3
    Coverage A - Dwelling . . . . . . . . . . . . . . . . . . . 3
    Coverage B - Personal Property . . . . . . . . . . . . . . 3
    Coverage C - Loss of Use . . . . . . . . . . . . . . . . . 4
    Additional Coverages . . . . . . . . . . . . . . . . . . . 5
    Inflation Coverage . . . . . . . . . . . . . . . . . . . . 7
  LOSSES INSURED . . . . . . . . . . . . . . . . . . . . . . . 7
  LOSSES NOT INSURED . . . . . . . . . . . . . . . . . . . . . 9
  LOSS SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . 12
  CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . 14

**SECTION II - YOUR LIABILITY**
  COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . 16
    Coverage L - Personal Liability . . . . . . . . . . . . . 16
    Coverage M - Medical Payments to Others . . . . . . . . . 16
    Additional Coverages . . . . . . . . . . . . . . . . . . . 16
  EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . 17
  CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . 19

**SECTION I AND SECTION II - CONDITIONS** . . . . . . . . . . . . . 20

**WORKERS' COMPENSATION** . . . . . . . . . . . . . . . . . . . . . 22

**OPTIONAL POLICY PROVISIONS** . . . . . . . . . . . . . . . . . . . 24

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983, 1992.

## HOMEOWNERS POLICY

## DECLARATIONS CONTINUED

We agree to provide the insurance described in this policy:

1. based on your payment of premium for the coverages you chose;

2. based on your compliance with all applicable provisions of this policy; and

3. in reliance on your statements in these **Declarations**.

You agree, by acceptance of this policy, that:

1. you will pay premiums when due and comply with the provisions of the policy;

2. the statements in these **Declarations** are your statements and are true;

3. we insure you on the basis your statements are true; and

4. this policy contains all of the agreements between you and us and any of our agents.

Unless otherwise indicated in the application, you state that during the three years preceding the time of your application for this insurance your Loss History and Insurance History are as follows:

1. Loss History: you have not had any losses, insured or not; and

2. Insurance History: you have not had any insurer or agency cancel or refuse to issue or renew similar insurance to you or any household member.

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations**.

Certain words and phrases are defined as follows:

1. **"bodily injury"** means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.

   **Bodily injury** does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;

   b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

2. **"business"** means a trade, profession or occupation. This includes farming.

3. **"Declarations"** means the policy **Declarations**, any amended **Declarations**, the most recent renewal notice or certificate, an Evidence of Insurance form or any endorsement changing any of these.

4. **"insured"** means you and, if residents of your household:

   a. your relatives; and

   b. any other person under the age of 21 who is in the care of a person described above.

   Under Section II, **"insured"** also means:

   c. with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them. However, the animal or watercraft must be owned by you or a person included in 4.a. or 4.b. A person or organization using or having custody of these animals or watercraft in the course of a **business**, or without permission of the owner, is not an **insured**; and

1

d. with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of a person included in 4.a. or 4.b.

5. "**insured location**" means:

a. the **residence premises**;

b. the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire while this policy is in effect for your use as a residence;

c. any premises used by you in connection with the premises included in 5.a. or 5.b.;

d. any part of a premises not owned by an **insured** but where an **insured** is temporarily residing;

e. land owned by or rented to an **insured** on which a one or two family dwelling is being constructed as a residence for an **insured**;

f. individual or family cemetery plots or burial vaults owned by an **insured**;

g. any part of a premises occasionally rented to an **insured** for other than **business** purposes;

h. vacant land owned by or rented to an **insured**. This does not include farm land; and

i. farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

6. "**motor vehicle**", when used in Section II of this policy, means:

a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an **insured location** is not a **motor vehicle**;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by

or carried on a vehicle included in 6.a. is not a **motor vehicle**;

c. a motorized golf cart, snowmobile, motorized bicycle, motorized tricycle, all-terrain vehicle or any other similar type equipment owned by an **insured** and designed or used for recreational or utility purposes off public roads, while off an **insured location**. A motorized golf cart while used for golfing purposes is not a **motor vehicle**; and

d. any vehicle while being towed by or carried on a vehicle included in 6.a., 6.b. or 6.c.

7. "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a. **bodily injury**; or

b. **property damage**;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

8. "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage**.

9. "**residence employee**" means an employee of an **insured** who performs duties, including household or domestic services, in connection with the maintenance or use of the **residence premises**. This includes employees who perform similar duties elsewhere for you. This does not include employees while performing duties in connection with the **business** of an **insured**.

10. "**residence premises**" means:

a. the one, two, three or four-family dwelling, other structures and grounds; or

b. that part of any other building;

where you reside and which is shown in the **Declarations**.

FP-7955 CA

## SECTION I - COVERAGES

### COVERAGE A - DWELLING

1. **Dwelling**. We cover the dwelling used principally as a private residence on the **residence premises** shown in the **Declarations**.

   Dwelling includes:

   a. structures attached to the dwelling;

   b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises**;

   c. foundation, floor slab and footings supporting the dwelling; and

   d. wall-to-wall carpeting attached to the dwelling.

2. **Dwelling Extension**. We cover other structures on the **residence premises**, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

   We do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used in whole or in part for **business** purposes; or

   c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

3. **Property Not Covered**. We do not cover:

   a. land, including the land necessary to support any Coverage A property;

   b. any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

   c. the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A.

### COVERAGE B - PERSONAL PROPERTY

1. **Property Covered**. We cover personal property owned or used by an **insured** while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied exclusively by an **insured**. At your request, we will also cover personal property owned by a guest or a **residence employee**, while the property is in any other residence occupied by an **insured**.

   We cover personal property usually situated at an **insured's** residence, other than the **residence premises**, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after you start moving the property there. If the **residence premises** is a newly acquired principal residence, personal property in your immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy.

   **Special Limits of Liability**. These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

   a. $200 on money, coins and medals, including any of these that are a part of a collection, and bank notes;

   b. $1,000 on property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises**. This coverage is limited to $250 on such property away from the **residence premises**.

   Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage;

FP-7955 CA

c. $1,000 on securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

d. $1,000 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

e. $1,000 on trailers not used with watercraft;

f. $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

g. $2,500 for loss by theft of firearms;

h. $2,500 for loss by theft of silverware and goldware;

i. $5,000 on electronic data processing system equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the purpose of repair, servicing or temporary use. An **insured** student's equipment and media are covered while at a residence away from home; and

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

2. **Property Not Covered.** We do not cover:

a. articles separately described and specifically insured in this or any other insurance;

b. animals, birds or fish;

c. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are:

(1) used solely to service the **insured location**; or

(2) designed for assisting the handicapped;

d. devices or instruments for the recording or reproduction of sound permanently attached to an engine or motor propelled vehicle. We do not cover tapes, wires, records or other mediums that may be used with these devices or instruments while in the vehicle;

e. aircraft and parts;

f. property of roomers, boarders, tenants and other residents not related to an **insured**. We do cover property of roomers, boarders and other residents related to an **insured**;

g. property regularly rented or held for rental to others by an **insured**. This exclusion does not apply to property of an **insured** in a sleeping room rented to others by an **insured**;

h. property rented or held for rental to others away from the **residence premises**;

i. any citizens band radios, radio telephones, radio transceivers, radio transmitters, radar or laser detectors, antennas and other similar equipment permanently attached to an engine or motor propelled vehicle;

j. books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to any recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records; or

k. recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.

### COVERAGE C - LOSS OF USE

1. **Additional Living Expense.** When a Loss Insured causes the **residence premises** to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

4                                        FP-7955 CA

2. **Fair Rental Value.** When a Loss Insured causes that part of the **residence premises** rented to others or held for rental by you to become uninhabitable, we will cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the **residence premises** rented or held for rental is uninhabitable.

3. **Prohibited Use.** When a civil authority prohibits your use of the **residence premises** because of direct damage to a neighboring premises by a Loss Insured, we will cover any resulting Additional Living Expense and Fair Rental Value. Coverage is for a period not exceeding two weeks while use is prohibited.

   We do not cover loss or expense due to cancellation of a lease or agreement.

## SECTION I - ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions and conditions of this policy.

1. **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property.

   When the amount payable for the property damage plus the debris removal exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to Additional Coverage, item 3. Trees, Shrubs and Other Plants.

   We will also pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the **residence premises** when the tree has caused a Loss Insured to Coverage A property.

2. **Temporary Repairs.** If damage is caused by a Loss Insured, we will pay the reasonable and necessary cost you incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover outdoor trees, shrubs, plants or lawns, on the **residence premises,** for direct loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles (not owned or operated by a resident of the **residence premises),** Vandalism or malicious mischief or Theft.

   The limit for this coverage, including the removal of debris, shall not exceed 5% of the amount shown in the **Declarations** for COVERAGE A - DWELLING. We will not pay more than $500 for any one outdoor tree, shrub or plant, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for **business** purposes.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges. This means charges incurred when the fire department is called to save or protect covered property from a Loss Insured. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed.** Covered property, while being removed from a premises endangered by a Loss Insured, is covered for any accidental direct physical loss. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money.**

   a. We will pay up to $1,000 for:

      (1) the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an **insured's** name. If an **insured** has not complied with all terms and conditions under which the cards are issued, we do not cover use by an **insured** or anyone else;

FP-7955 CA

(2) loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

(3) loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

No deductible applies to this coverage.

We will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

b. We do not cover loss arising out of **business** pursuits or dishonesty of an **insured**.

c. Defense:

(1) We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend claims or suits ends when the amount we pay for the loss equals our limit of liability.

(2) If claim is made or a suit is brought against an **insured** for liability under the Credit Card or Bank Fund Transfer Card coverage, we will provide a defense. This defense is at our expense by counsel of our choice.

(3) We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption**. We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a Loss Insured occurring on the **residence premises**. The power lines off the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products**. Coverage B is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure

is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

a. removal of a plug from an electrical outlet; or

b. turning off an electrical switch unless caused by a Loss Insured.

This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward**. We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

10. **Volcanic Action**. We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

a. volcanic blast or airborne shock waves;

b. ash, dust or particulate matter; or

c. lava flow.

We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

One or more volcanic eruptions that occur within a 360-hour period shall be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

11. **Collapse**. We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

FP-7955 CA

The collapse must be directly and immediately caused only by one or more of the following:

a. perils described in **SECTION I - LOSSES INSURED, COVERAGE B - PERSONAL PROPERTY.** These perils apply to covered building and personal property for loss insured by this Additional Coverage;

b. hidden decay of a supporting or weight-bearing structural member of the building;

c. hidden insect or vermin damage to a structural member of the building;

d. weight of contents, equipment, animals or people;

e. weight of ice, snow, sleet or rain which collects on a roof; or

f. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the loss is the direct and immediate cause of the collapse of the building.

This coverage does not increase the limit applying to the damaged property.

12. **Locks.** We will pay the reasonable expenses you incur to re-key locks on exterior doors of the dwelling located on the **residence premises,** when the keys to those locks are a part of a covered theft loss.

No deductible applies to this coverage.

**INFLATION COVERAGE**

The limits of liability shown in the **Declarations** for Coverage A, Coverage B and, when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the **Declarations.**

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A, Coverage B and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the **Declarations.**

If during the term of this policy the Coverage A limit of liability is changed at your request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

# SECTION I - LOSSES INSURED

**COVERAGE A - DWELLING**

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED.**

**COVERAGE B - PERSONAL PROPERTY**

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I - LOSSES NOT INSURED:**

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles,** meaning impact by a vehicle.

7. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief,** meaning only willful and malicious damage to or destruction of property.

9. **Theft,** including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

   This peril does not include:

   a. loss of a precious or semi-precious stone from its setting;

   b. loss caused by theft:

      (1) committed by an **insured** or by any other person regularly residing on the **insured location.** Property of a student who is an **insured** is covered while located at a residence away from home, if the theft is committed by a person who is not an **insured;**

      (2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

      (3) from the part of a **residence premises** rented to others:

         (a) caused by a tenant, members of the tenant's household, or the tenant's employees;

         (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

         (c) of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes

other than bank notes, manuscripts, passports, tickets and stamps; or

         (d) of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones;

   c. loss caused by theft that occurs away from the **residence premises** of:

      (1) property while at any other residence owned, rented to, or occupied by an **insured,** except while an **insured** is temporarily residing there. Property of a student who is an **insured** is covered while at a residence away from home;

      (2) watercraft of all types, including their furnishings, equipment and outboard motors; or

      (3) trailers and campers designed to be pulled by or carried on a vehicle.

      If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence shall not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Sudden and accidental discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

    This peril does not include loss:

    a. to the system or appliance from which the water or steam escaped;

    b. caused by or resulting from freezing;

    c. caused by or resulting from water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which

8

FP-7955 CA

enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the **residence premises** while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

a. maintain heat in the building; or

b. shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass which is a part of a building on the **residence premises**. There is no coverage for loss or damage to the glass.

## SECTION I - LOSSES NOT INSURED

1. We do not insure under any coverage for any loss consisting of the items in paragraphs 2., 3., 4. or 5. below. This exclusion does not apply if the loss is caused by a peril which is not otherwise excluded.

2. We do not insure for any loss to the property described in Coverage A which is caused by one or more of the items below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. collapse, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Collapse;**

b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion only applies while the dwelling is vacant, unoccupied or being constructed.

This exclusion does not apply if you have used reasonable care to:

(1) maintain heat in the building; or

(2) shut off the water supply and drain the system and appliances of water;

c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, pavement, patio, foundation, retaining wall, bulkhead, pier, wharf or dock;

d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

e. vandalism or malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

9

f. continuous or repeated seepage or leakage of water or steam from a:

(1) heating, air conditioning or automatic fire protective sprinkler system;

(2) household appliance; or

(3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

which occurs over a period of time. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

h. corrosion, electrolysis or rust;

i. mold, fungus or wet or dry rot;

j. contamination;

k. smog, smoke from agricultural smudging or industrial operations;

l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

m. birds, vermin, rodents, insects, or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects or domestic animals; or

n. pressure from or presence of tree, shrub or plant roots.

However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

3. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more

of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. **Earthquake.**

However, we do insure for any direct loss by fire resulting from earthquake, provided the resulting fire loss is itself a Loss Insured.

b. **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion or smoke.

However, we do insure for any direct loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a Loss Insured.

4. We do not insure under any coverage for any loss which is caused by one or more of the items below, regardless of whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

b. **Earth Movement**, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Volcanic Action.**

10

However, we do insure for any direct loss by fire resulting from earth movement, provided the resulting fire loss is itself a Loss Insured.

c. **Water Damage**, meaning:

(1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

(2) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured.

d. **Neglect**, meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

5. We do not insure for loss described in paragraphs 2., 3. and 4. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

b. defect, weakness, inadequacy, fault or unsoundness in:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**; or

c. weather conditions.

However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

# SECTION I - LOSS SETTLEMENT

Only the Loss Settlement provisions shown in the **Declarations** apply. We will settle covered property losses according to the following.

## COVERAGE A - DWELLING

### 1. A1 - Replacement Cost Loss Settlement - Similar Construction.

a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

(1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

(3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

(4) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage.**

b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Decla-**rations for COVERAGE A - DWELLING EXTENSION.

### 2. A2 - Replacement Cost Loss Settlement - Common Construction.

a. We will pay the cost to repair or replace with common construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

(1) we will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. We will not pay the cost to repair or replace obsolete, antique or custom construction with like kind and quality;

(2) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property as described in a.(1) above;

(3) when the repair or replacement is actually completed as described in a.(1) above, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

(4) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

(5) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating

12                                                     FP-7955 CA

the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage.**

b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A - DWELLING EXTENSION.

## COVERAGE B - PERSONAL PROPERTY

### 1. B1 - Limited Replacement Cost Loss Settlement.

a. We will pay the cost to repair or replace property covered under **SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY,** except for property listed in item b. below, subject to the following:

   (1) until repair or replacement is completed, we will pay only the cost to repair or replace less depreciation;

   (2) after repair or replacement is completed, we will pay the difference between the cost to repair or replace less depreciation and the cost you have actually and necessarily spent to repair or replace the property; and

   (3) if property is not repaired or replaced within two years after the date of loss, we will pay only the cost to repair or replace less depreciation.

b. We will pay market value at the time of loss for:

   (1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

   (2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

(3) property not useful for its intended purpose.

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

   (1) our cost to replace at the time of loss;

   (2) the full cost of repair;

   (3) any special limit of liability described in the policy; or

   (4) any applicable Coverage B limit of liability.

### 2. B2 - Depreciated Loss Settlement.

a. We will pay the cost to repair or replace less depreciation at the time of loss for property covered under **SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY,** except for property listed in item b. below.

b. We will pay market value at the time of loss for:

   (1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

   (2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

   (3) property not useful for its intended purpose.

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

   (1) our cost to replace at the time of loss;

   (2) the full cost of repair;

   (3) any special limit of liability described in the policy; or

   (4) any applicable Coverage B limit of liability.

FP-7955 CA

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability**. Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a. to the **insured** for an amount greater than the **insured's** interest; or

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss**. After a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

   b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

   c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

   d. as often as we reasonably require:

      (1) exhibit the damaged property;

      (2) provide us with records and documents we request and permit us to make copies;

      (3) submit to and subscribe, while not in the presence of any other **insured**:

         (a) statements; and

         (b) examinations under oath; and

      (4) produce employees, members of the **insured's** household or others for examination under oath to the extent it is within the **insured's** power to do so; and

   e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) the time and cause of loss;

      (2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

      (3) other insurance which may cover the loss;

      (4) changes in title or occupancy of the property during the term of this policy;

      (5) specifications of any damaged building and detailed estimates for repair of the damage;

      (6) an inventory of damaged or stolen personal property described in 2.c.;

      (7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

      (8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss to a Pair or Set**. In case of loss to a pair or set, we may elect to:

   a. repair or replace any part to restore the pair or set to its value before the loss; or

   b. pay the difference between the depreciated value of the property before and after the loss.

4. **Appraisal**. If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence prem-**

**ises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

5. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

7. **Our Option.** We may repair or replace any part of the property damaged or stolen with similar property. Any property we pay for or replace becomes our property.

8. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 30 days after we receive your proof of loss and:

   a. reach agreement with you;

   b. there is an entry of a final judgment; or

   c. there is a filing of an appraisal award with us.

9. **Abandonment of Property.** We need not accept any property abandoned by an **insured**.

10. **Mortgage Clause.** The word "mortgagee" includes trustee.

    a. If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

    b. If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

       (1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

       (2) pays on demand any premium due under this policy, if you have not paid the premium; and

       (3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    c. If this policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect. Proof of mailing shall be proof of notice.

    d. If we pay the mortgagee for any loss and deny payment to you:

       (1) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

       (2) at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    e. Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** We will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing or transporting property for a fee. This applies regardless of any other provision of this policy.

12. **Intentional Acts.** If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other **insured** for this loss.

FP-7955 CA

## SECTION II - LIABILITY COVERAGES

### COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

### COVERAGE M - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**;

2. to a person off the **insured location**, if the **bodily injury**:

   a. arises out of a condition on the **insured location** or the ways immediately adjoining;

   b. is caused by the activities of an **insured**;

   c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

   d. is caused by an animal owned by or in the care of an **insured**; or

3. to a **residence employee** if the **occurrence** causing **bodily injury** occurs off the **insured location** and arises out of or in the course of the **residence employee's** employment by an **insured**.

### SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses**. We pay:

   a. expenses we incur and costs taxed against an **insured** in suits we defend;

   b. premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage L limit. We are not obligated to apply for or furnish any bond;

   c. reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for aiding us in the investigation or defense of claims or suits;

   d. prejudgment interest awarded against the **insured** on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses**. We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

3. **Damage to Property of Others**.

   a. We will pay for **property damage** to property of others caused by an **insured**.

   b. We will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

      (3) $500 in any one **occurrence**.

16

FP-7955 CA

c. We will not pay for **property damage**:

(1) if insurance is otherwise provided in this policy;

(2) caused intentionally by an **insured** who is 13 years of age or older;

(3) to property, other than a rented golf cart, owned by or rented to an **insured**, a tenant of an **insured**, or a resident in your household; or

(4) arising out of:

(a) **business** pursuits;

(b) any act or omission in connection with a premises an **insured** owns, rents or controls, other than the **insured location**; or

(c) the ownership, maintenance, or use of a **motor vehicle**, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board or similar type watercraft.

# SECTION II - EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

a. **bodily injury** or **property damage**:

(1) which is either expected or intended by the **insured**; or

(2) which is the result of willful and malicious acts of the **insured**;

b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured**. This exclusion does not apply:

(1) to activities which are ordinarily incident to non-**business** pursuits;

(2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

(3) to the rental or holding for rental of a residence of yours:

(a) on an occasional basis for the exclusive use as a residence;

(b) in part, unless intended for use as a residence by more than two roomers or boarders; or

(c) in part, as an office, school, studio or private garage;

(4) when the dwelling on the **residence premises** is a two, three or four-family dwelling and you occupy one part and rent or hold for rental the other part; or

(5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations;

c. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

d. **bodily injury** or **property damage** arising out of any premises currently owned or rented to any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

e. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

(1) an aircraft;

(2) a **motor vehicle** owned or operated by or rented or loaned to any **insured**; or

(3) a watercraft:

(a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

FP-7955 CA

(b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any **insured**;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any **insured** which is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**. Exclusion e.(3) does not apply while the watercraft is on the **residence premises**;

f. **bodily injury** or **property damage** arising out of:

(1) the entrustment by any **insured** to any person;

(2) the supervision by any **insured** of any person;

(3) any liability statutorily imposed on any **insured**; or

(4) any liability assumed through an unwritten or written agreement by any **insured**;

with regard to the ownership, maintenance or use of any aircraft, watercraft, or **motor vehicle** which is not covered under Section II of this policy;

g. **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, or any warlike act including destruction or seizure or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

h. **bodily injury** to you or any **insured** within the meaning of part a. or b. of the definition of **insured**.

This exclusion also applies to any claim made or suit brought against you or any **insured** to share damages with or repay someone else who may be obli-

gated to pay damages because of the **bodily injury** sustained by you or any **insured** within the meaning of part a. or b. of the definition of **insured**;

i. any claim made or suit brought against any **insured** by:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age; or

j. **bodily injury** or **property damage** arising out of an **insured's** participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

2. Coverage L does not apply to:

a. liability:

(1) for your share of any loss assessment charged against all members of an association of property owners; or

FP-7955 CA

(2) assumed under any unwritten contract or agreement, or by contract or agreement in connection with a **business** of the **insured**;

b. **property damage** to property currently owned by any **insured**;

c. **property damage** to property rented to, occupied or used by or in the care of any **insured**. This exclusion does not apply to **property damage** caused by fire, smoke or explosion;

d. **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by an **insured** under a workers' compensation, non-occupational disability, or occupational disease law;

e. **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

3. Coverage M does not apply to **bodily injury**:

a. to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law;

c. from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

d. to a person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

# SECTION II - CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the **Declarations.** This is our limit for all damages from each **occurrence** regardless of the number of **insureds**, claims made or persons injured.

   The Coverage M limit is shown in the **Declarations.** This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each **insured.** This condition shall not increase our limit of liability for any one **occurrence.**

3. **Duties After Loss.** In case of an accident or **occurrence,** the **insured** shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

   a. give written notice to us or our agent as soon as practicable, which sets forth:

      (1) the identity of this policy and **insured**;

      (2) reasonably available information on the time, place and circumstances of the accident or **occurrence**; and

      (3) names and addresses of any claimants and available witnesses;

   b. immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

   c. at our request, assist in:

      (1) making settlement;

      (2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an **insured**;

      (3) the conduct of suits and attend hearings and trials; and

FP-7955 CA

(4) securing and giving evidence and obtaining the attendance of witnesses;

d. under the coverage - **Damage to Property of Others**, exhibit the damaged property if within the **insured's** control; and

e. the **insured** shall not, except at the **insured's** own cost, voluntarily make payments, assume obligations or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury**.

4. **Duties of an Injured Person - Coverage M.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

a. give us written proof of claim, under oath if required, as soon as practicable;

b. execute authorization to allow us to obtain copies of medical reports and records; and

c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M.** Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

No one shall have the right to join us as a party to an action against an **insured**. Further, no action with respect to Coverage L shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** shall not relieve us of our obligation under this policy.

8. **Other Insurance - Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II - CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancellation.**

a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. Proof of mailing shall be sufficient proof of notice. Upon receipt of written request from you, we shall furnish the facts on which the cancellation is based:

(1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is

payable to us or our agent or under any finance or credit plan.

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason. We may cancel by notifying you at least 10 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more or at any time if it is a renewal with us, we may cancel if there has been:

    (a) conviction of a crime having as one of its necessary elements an act increasing the hazard insured against;

    (b) discovery of fraud or material misrepresentation;

    (c) discovery of grossly negligent acts or omissions substantially increasing any of the hazards insured against; or

    (d) physical changes in the property insured which result in the property becoming uninsurable.

We may cancel this policy by notifying you at least 45 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 45 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

d. If, when we cancel this policy, the return premium is not refunded with the notice of cancellation, we will refund it within 25 days after the date cancellation takes effect. If, when you cancel this policy, the return

premium is not refunded when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the **Declarations.** The notice will be mailed or delivered at least 45 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

If this policy is written for a period of less than one year, we agree not to refuse to renew except at the end of an annual period commencing with the original or renewal effective date.

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** shall:

    a. sign and deliver all related papers;

    b. cooperate with us in a reasonable manner; and

    c. do nothing after a loss to prejudice such rights.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person shown in the **Declarations** or the spouse, if a resident of the same household, dies:

    a. we insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

    b. **insured** includes:

        (1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises;** and

21

FP-7955 CA

(2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

# WORKERS' COMPENSATION
## (Residence Employees)

## COVERAGES

We will pay, with respect to **residence employees**:

1. under Coverage I, when due, all benefits required of an **insured** by the California Workers' Compensation Law; and

2. under Coverage II, on behalf of an **insured**, all damages for which the **insured** is legally liable because of **bodily injury** sustained by a **residence employee**. The **bodily injury** must be caused by accident or disease and arise out of and in the course of employment by the **insured** while:

   a. in the United States of America, its territories or possessions, or Canada; or

   b. temporarily elsewhere if the **residence employee** is a citizen or resident of the United States or Canada.

   Coverage II does not apply to any suit brought in or judgment rendered by any court outside the United States of America, its territories and possessions, or Canada, or to any action on such judgment.

These coverages apply only to **bodily injury** which occurs during the policy period. If the **bodily injury** is a disease, it must be caused or aggravated by the conditions of the **residence employee's** employment by the **insured**.

## SPECIAL DEFINITION

**Residence employee**, as used in this coverage, means an employee of any **insured** whose duties are incidental to the ownership, maintenance or use of the **residence premises**, including the performance of household domestic services, or whose duties are personal and not in the course of the trade, **business**, profession or occupation of any **insured**.

**Residence employee** does not include any person of whom the **insured** is the parent, spouse or child. Also, **residence employee** does not include any person who, during the 90 calendar days immediately preceding injury:

1. was employed by the **insured** for less than 52 hours; or

2. earned less than $100 in wages from an **insured**.

## EXCLUSIONS

This coverage does not apply:

1. to liability for additional compensation imposed on an **insured** under Sections 4553 and 4557, Division IV, Labor Code of the State of California, because of:

   a. the serious and willful misconduct of an **insured**; or

   b. **bodily injury** to an employee under 16 years of age and illegally employed at the time of injury;

2. to liability for **bodily injury** arising out of **business** pursuits of an **insured**;

3. to liability arising out of the discharge, harassment or coercion of, or the discrimination against any employee in violation of any law;

4. under Coverage II:

   a. to liability assumed by the **insured** under any contract or agreement;

   b. to **bodily injury** by disease unless a written claim is made or suit brought against the **insured** within 36 months after the end of the policy period;

   c. to any obligation under a workers' compensation, unemployment or disability benefits law or any similar law;

FP-7955 CA

d. to punitive or exemplary damages where insurance of liability therefor is prohibited by law or contrary to public policy;

e. to **bodily injury** intentionally caused or aggravated by you.

## LIMIT OF LIABILITY COVERAGE II

Our total limit of liability will not exceed $100,000 for all damages because of **bodily injury:**

1. sustained by one or more **residence employees** in any one accident; or

2. caused by disease and sustained by a **residence employee.**

Our total limit of liability will not exceed $500,000 for all damages arising out of **bodily injury** by disease regardless of the number of **residence employees** who sustain **bodily injury** by disease.

## APPLICABLE POLICY PROVISIONS

The following policy provisions apply to this coverage:

1. the definitions of "you", "your", "we", "us", "our", "**bodily injury**", "**business**", "**insured**" and "**residence premises**";

2. our agreement to defend the **insured** as provided under Coverage L - Personal Liability;

3. **Section II - Additional Coverages**, items:

   1. Claim Expenses; and

   2. First Aid Expenses;

4. **Section II - Conditions**, items:

   3. Duties After Loss; and

   6. Suit Against Us;

5. **Section I and Section II - Conditions**, items:

   4. Waiver or Change of Policy Provisions;

   5. Cancellation;

   7. Assignment; and

   8. Subrogation.

## ADDITIONAL POLICY PROVISIONS

The following additional provisions apply:

1. under Coverage I:

   a. we will be directly and primarily liable to any **residence employee** of an **insured** entitled to the benefits of the California Workers' Compensation Law;

   b. as between the **residence employee** and us, notice to or knowledge of the occurrence of the injury on the part of an **insured** will be deemed notice or knowledge on our part;

   c. the jurisdiction of an **insured** will, for the purpose of the law imposing liability for compensation, be our jurisdiction;

   d. we will be subject to the orders, findings, decisions or awards rendered against an **insured**, under the provisions of the law imposing liability for compensation, subject to the provisions, conditions and limitations of this policy. This policy shall govern as between an **insured** and us as to payments by either in discharge of an **insured's** liability for compensation;

   e. the **residence employee** has a first lien upon any amount which we owe you on account of this insurance. In case of your legal incapacity or inability to receive the money and pay it to the **residence employee**, we will pay it directly to the **residence employee**. Your obligation to the **residence employee** will be discharged to the extent of such payment; and

   f. the law mandates that you reimburse us for penalties we are required to pay the injured employee. We are required to pay a 10% penalty of the late payment if the late payment which gives rise to an increased payment is due less than 7 days after we receive the completed claim form from the employer.

   We will notify you in writing, within 30 days of the payment and will bill and collect the amount of the penalty. You are not obligated to repay us unless the aggregate total paid in a policy year exceeds $100.

You will have 60 days, following notice of the obligation to reimburse, to appeal the decision to the Department of Insurance.

2. under Coverage I and Coverage II:

    a. **Other Insurance**. This coverage does not apply to any loss to which other valid and collectible Workers' Compensation or Employers' Liability Insurance applies.

    b. **Conformity to Statute**. Terms of this coverage which are in conflict with the California Workers' Compensation Law are amended to conform to that law.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the **Declarations** and is subject to all the terms, provisions, exclusions and conditions of this policy.

**Option AI - Additional Insured**. The definition of **insured** is extended to include the person or organization shown in the **Declarations** as an Additional Insured or whose name is on file with us. Coverage is with respect to:

1. Section I - Coverage A; or

2. Section II - Coverages L and M but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations**.

**Option BP - Business Property**. The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability**, item b., for property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

    The $1,000 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU - Business Pursuits**. **SECTION II - EXCLUSIONS**, item 1.b. is modified as follows:

    1. Section II coverage applies to the **business pursuits** of an **insured** who is a:

    a. clerical office employee, salesperson, collector, messenger; or

    b. teacher (except college, university and professional athletic coaches), school principal or school administrator;

    while acting within the scope of the above listed occupations.

    2. However, no coverage is provided:

    a. for **bodily injury** or **property damage** arising out of a **business** owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

    b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

        (1) computer programming, architectural, engineering or industrial design services;

        (2) medical, surgical, dental or other services or treatment conducive to the health of persons or animals; and

        (3) beauty or barber services or treatment;

    c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

d. when the **insured** is a member of the faculty or teaching staff of a school or college:

    (1) for **bodily injury** or **property damage** arising out of the maintenance, use, loading or unloading of:

        (a) draft or saddle animals, including vehicles for use with them; or

        (b) aircraft, **motor vehicles**, recreational motor vehicles or watercraft, airboats, air cushions or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

        owned or operated, or hired by or for the **insured** or employer of the **insured** or used by the **insured** for the purpose of instruction in the use thereof; or

    (2) under Coverage M for **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**.

**Option FA - Firearms**. Firearms are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

    a. mechanical breakdown, wear and tear, gradual deterioration;

    b. insects or vermin;

    c. any process of refinishing, renovating, or repairing;

    d. dampness of atmosphere or extremes of temperatures;

    e. inherent defect or faulty manufacture;

    f. rust, fouling or explosion of firearms;

    g. breakage, marring, scratching, tearing or denting unless caused by fire, thieves or accidents to conveyances; or

    h. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations**.

**Option HC - Home Computer**. The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability**, item i., for electronic data processing system equipment and the recording or storage media used with that equipment is increased to be the amount shown in the **Declarations** for this option.

**Option ID - Increased Dwelling Limit**. We will settle losses to damaged building structures covered under **COVERAGE A - DWELLING** according to the **SECTION I - LOSS SETTLEMENT** provision shown in the **Declarations**.

If the amount you actually and necessarily spend to repair or replace damaged building structures exceeds the applicable limit of liability shown in the **Declarations**, we will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the **Declarations** to repair or replace the Dwelling; or

2. 10% of the Option ID limit of liability to repair or replace building structures covered under **COVERAGE A - DWELLING, Dwelling Extension**.

**Report Increased Values**. You must notify us within 90 days of the start of any new building structure costing $5,000 or more; or any additions to or remodeling of building structures which increase their values by $5,000 or more. You must pay any additional premium due for the increased value. We will not pay more than the applicable limit of liability shown in the **Declarations**, if you fail to notify us of the increased value within 90 days.

FP-7955 CA

**Option IO - Incidental Business.** The coverage provided by this option applies only to that incidental **business** occupancy on file with us.

1. **COVERAGE A - DWELLING, Dwelling Extension,** item 2.b. is deleted.

2. **COVERAGE B - PERSONAL PROPERTY** is extended to include equipment, supplies and furnishings usual and incidental to this **business** occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

   The Option IO limits are shown in the **Declarations.** The first limit applies to property on the **residence premises.** The second limit applies to property while off the **residence premises.** These limits are in addition to the **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability** on property used or intended for use in a **business.**

3. Under Section II, the **residence premises** is not considered **business** property because an **insured** occupies a part of it as an incidental **business.**

4. **SECTION II - EXCLUSIONS,** item 1.b. of Coverage L and Coverage M is replaced with the following:

   b. **bodily injury** or **property damage** arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured.** This exclusion does not apply:

      (1) to activities which are ordinarily incident to non-**business** pursuits or to **business** pursuits of an **insured** which are necessary or incidental to the use of the **residence premises** as an incidental **business;**

      (2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

      (3) to the rental or holding for rental of a residence of yours:

         (a) on an occasional basis for exclusive use as a residence;

      (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

      (c) in part, as an incidental **business** or private garage;

   (4) when the dwelling on the **residence premises** is a two family dwelling and you occupy one part and rent or hold for rental the other part; or

   (5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

5. This insurance does not apply to:

   a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured;**

   b. **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured;**

   c. liability arising out of any acts, errors or omissions of an **insured,** or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections or engineering services in the conduct of an **insured's** incidental **business** involving data processing, computer consulting or computer programming; or

   d. any claim made or suit brought against any **insured** by:

      (1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

         (a) any **insured;**

         (b) any employee of any **insured;** or

         (c) any other person actually or apparently acting on behalf of any **insured;** or

FP-7955 CA

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

    (a) any **insured**;

    (b) any employee of any **insured**; or

    (c) any other person actually or apparently acting on behalf of any **insured**.

Coverage M does not apply to any person indicated in (1) and (2) above.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age.

**Option JF - Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware and platinum are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations.** The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

    a. mechanical breakdown, wear and tear, gradual deterioration;

    b. insects or vermin;

    c. inherent vice; or

    d. seizure or destruction under quarantine or customs regulations;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations** for this option.

**Option OL - Building Ordinance or Law.**

1. **Coverage Provided.**

The total limit of insurance provided by this Building Ordinance or Law provision will not exceed an amount equal to the Option OL percentage shown in the **Declarations** of the Coverage A limit shown in the **Declarations** at the time of the loss, as adjusted by the inflation coverage provisions of the policy. This is an additional amount of insurance and applies only to the dwelling.

2. **Damaged Portions of Dwelling.**

When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will pay for the increased cost to repair or rebuild the physically damaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

3. **Undamaged Portions of Damaged Dwelling.**

When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will also pay for:

    a. the cost to demolish and clear the site of the undamaged portions of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs; and

    b. loss to the undamaged portion of the dwelling caused by enforcement of any ordinance or law if:

        (1) the enforcement is directly caused by the same Loss Insured;

        (2) the enforcement requires the demolition of portions of the same dwelling not damaged by the same Loss Insured;

(3) the ordinance or law regulates the construction or repair of the dwelling, or establishes zoning or land use requirements at the described premises; and

(4) the ordinance or law is in force at the time of the occurrence of the same Loss Insured; or

c. the legally required changes to the undamaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

## 4. Building Ordinance or Law Coverage Limitations.

a. We will not pay for any increased cost of construction under this coverage:

(1) until the dwelling is actually repaired or replaced at the same or another premises in the same general vicinity; and

(2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.

b. We will not pay more for loss to the undamaged portion of the dwelling caused by the enforcement of any ordinance or law than:

(1) the depreciated value of the undamaged portion of the dwelling, if the dwelling is not repaired or replaced;

(2) the amount you actually spend to replace the undamaged portion of the dwelling if the dwelling is repaired or replaced.

c. We will not pay more under this coverage than the amount you actually spend:

(1) for the increased cost to repair or rebuild the dwelling at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

(2) to demolish and clear the site of the undamaged portions of the dwelling caused by enforcement of building, zoning or land use ordinance or law.

We will never pay for more than a dwelling of the same height, floor area and style on the same or similar premises as the dwelling, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

**Option SG - Silverware and Goldware Theft.** The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability**, item h., for theft of silverware and goldware is increased to be the amount shown in the **Declarations** for this option.

IN WITNESS WHEREOF, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of this Company at the agency hereinbefore mentioned.

*Lynne M. Yaukell*

Secretary

*Thomas Conley*

President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment are proper.

FP-7955 CA

(3) the ordinance or law regulates the construction or repair of the dwelling, or establishes zoning or land use requirements at the described premises; and

(4) the ordinance or law is in force at the time of the occurrence of the same Loss Insured; or

c. the legally [illegible] charges [illegible] tion of the [illegible] ordinance of a building, zoning or land use [illegible] if the enforcement [illegible] incurred [illegible] the time the Loss Insured occurred.

3. **Building** Ordinance or Law Coverage Limitations

a. We will not pay for any increased cost of construction under this coverage:

(1) until the dwelling is actually repaired or replaced at the same or another premises in the same general vicinity; and

(2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.

b. We will not pay more for loss to the undamaged portion of the dwelling caused by the enforcement of any ordinance or law than:

(1) the depreciated value of the undamaged portion of the dwelling, if the dwelling is not repaired or replaced;

(2) the amount you actually spend to replace the undamaged portion of the dwelling if the dwelling is repaired or replaced.

c. We will not pay more under this coverage than the amount you actually spend:

(1) for the increased cost to repair or rebuild the dwelling at the same or another premises in the same general vicinity, if relocation is required by ordinance or law; and

(2) to demolish and clear the site of the undamaged portions of the dwelling caused by enforcement of building, zoning or land use ordinance or law.

We will never pay for more than a dwelling of the same height, floor area and style on the same or similar premises as the dwelling, subject to the limit provided in paragraph 1. Coverage **Provided** of this option.

**Option SG - Silverware and Goldware Theft.** The **COVERAGE B - PERSONAL PROPERTY Special Limits of Liability**, item h., for theft of silverware and goldware is increased to be the amount shown in the **Declarations** for this option.

IN WITNESS WHEREOF, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of this Company at the agency hereinbefore mentioned.

Secretary President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment are proper.

**State Farm**
**State Farm General Insurance Company**
A Stock Company With Home Offices in Bloomington, Illinois

**DECLARATIONS PAGE**

COVERAGE SUMMARY
SEP 22 2020

Po Box 853907
Richardson, TX 75085-3907

**Named Insured**

AT2    001606 0046    H-02-6219-FC05    H  F
KUESTERS, ELFE & SMITH, JEREL
546 DRY WELL RD
BOULDER CREEK CA  95006-9034



| Policy Number | 57-EC-M455-9 |
|---|---|

| Policy Period | Effective Date | Expiration Date |
|---|---|---|
| 12 Months | AUG 10 2020 | AUG 10 2021 |

The policy period begins and ends at 12:01 am standard time at the residence premises.

## HOMEOWNERS POLICY

**Automatic Renewal** - If the **policy period** is shown as **12 months**, this policy will be renewed automatically subject to the premiums, rules and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

Location of Residence Premises
Same as Insured's Address

Requested By: Additional Insured

This policy does not provide coverage for loss by earthquake
This policy includes Building Code Upgrade Coverage of $  431,300

| Coverages & Property | Limits of Liability | Inflation Coverage Index: 345.9 |
|---|---|---|

**SECTION I**

| | | Deductibles - Section I |
|---|---|---|
| A  Dwelling | $  862,600 | All Losses     $  3,000 |
| Dwelling Extension    up to | $  86,260 | |
| B  Personal Property | $  646,950 | |
| C  Loss of Use | Actual Loss Sustained | |

**SECTION II**

| L  Personal Liability (Each Occurrence) | $  500,000 | In case of loss under this policy, the deductibles will be applied per occurrence and will be deducted from the amount of the loss. Other deductibles may apply - refer to policy. |
|---|---|---|
| Damage to Property of Others | $  500 | |
| M  Medical Payments to Others (Each Person) | $  5,000 | |

**Loss Settlement Provision (See Policy)**
A1 Replacement Cost - Similar Construction
B1 Limited Replacement Cost - Coverage B

| Policy Premium | $  3,084.00 |
|---|---|

Discount Applied:
Claim Record

Forms, Options, & Endorsements

| | |
|---|---|
| Homeowners Policy | FP-7955.CA |
| Homeowners Policy Endorsement | FE-3422 |
| Amendatory Endorsement | FE-3247 |
| State of Emergency Amendatory | FE-1386 |
| Jewelry and Furs $1,500 Each Article/$2,500 Aggregate | Option JF |
| Increase Dwlg Up to $  172,520 | Option ID |
| Ordinance/Law  50%/$  431,300 | Option OL |

━━━━ **Other limits and exclusions may apply - refer to your policy** ━━━━

Your policy consists of this page, any endorsements and the policy form. Please keep these together.

FP-7018C

4627    251  I

20    N          Prepared    SEP 22 2020

**STRETCH INS AND FIN SVC INC**
831-783-1501

555-7020 CA    555-7020-1 Rev 10 2002 (a1f0201a)



The limit of liability for this structure (Coverage A) is based on an estimate of the cost to rebuild your home, including an approximate cost for labor and materials in your area, and specific information that you have provided about your home.

**IMPORTANT NOTICE:**

California law requires us to provide you with information for filing complaints with the State Insurance Department regarding the coverage and service provided under this policy.

Your agent's name and contact information are provided on the front of this document. Another option is to reach out by mail or phone directly to:

State Farm® Executive Customer Service
PO Box 2320
Bloomington IL 61702
Phone # 1-800-STATEFARM (1-800-782-8332)

Department of Insurance complaints should be filed only after you and State Farm or your agent or other company representative have failed to reach a satisfactory agreement on a problem.

California Department of Insurance
Consumer Services Division
300 South Spring Street
Los Angeles, CA 90013
Phone # 1-800-927-HELP (4357) or visit www.insurance.ca.gov/01-consumers

o1f0396g
Rev. 09-2005

## FE-3422 HOMEOWNERS POLICY ENDORSEMENT (California)



When used in the provisions of this policy or any endorsement attached to this policy, the word "spouse" is replaced with "spouse or registered domestic partner under California law".

### DEFINITIONS

Definitions 6. and 7. are replaced by the following:

6. "**motor vehicle**", when used in Section II of this policy, means:

   a. a land motor vehicle designed for travel on public roads or subject to motor vehicle registration;

   b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

   c. a "recreational vehicle" while off an **insured location**. "Recreational vehicle" means a motorized vehicle designed for recreation principally off public roads that is owned or leased by an **insured**. This includes, but is not limited to, a motorized all terrain vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike and personal assistive mobility device. "Leased" does not include temporary rental;

   d. a "locomotive" while off an **insured location**. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an **insured**. "Leased" does not include temporary rental;

   e. a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, telehandler, logging vehicle, mining vehicle or road building vehicle that is owned or leased by an **insured** while off an **insured location**. "Leased" does not include temporary rental; and

   f. any vehicle while being towed or pushed by or carried on a vehicle included in a., b., c., d. or e.

The following are not **motor vehicles**:

   a. a boat, camp, home or utility trailer not being towed or pushed by or carried on a vehicle included in a., b., c., d. or e. above;

   b. a motorized land vehicle in dead storage on an **insured location**;

   c. a motorized golf cart while used for golfing purposes;

   d. a motorized vehicle or trailer designed to assist the handicapped that is not designed for travel on public roads or subject to motor vehicle registration; or

   e. a commercially manufactured 2, 3 or 4 wheeled personal conveyance powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour.

7. "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which first results in:

   a. **bodily injury**; or

   b. **property damage**;

   during the policy period. All **bodily injury** and **property damage** resulting from one accident, series of related accidents or from continuous and repeated exposure to the same general conditions is considered to be one **occurrence**.

Definitions 11. and 12. are added:

11. "**fungus**" means any type or form of fungi, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

12. "**State Farm Companies**" means one or more of the following:

   a. State Farm Mutual Automobile Insurance Company;

   b. State Farm Fire and Casualty Company; and

   c. subsidiaries or affiliates of either a. or b. above.

### SECTION I – COVERAGES

### COVERAGE A – DWELLING

Item 2., **Dwelling Extension**, is replaced by the following:

2. **Dwelling Extension**. We cover other structures on the **residence premises**, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

   We do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used in whole or in part for **business** purposes unless such use consists solely of use of office space for paperwork, computer work or use of a telephone, and consists solely of activities that are:

© Copyright, State Farm Mutual Automobile Insurance Company, 2010
CONTINUED

(1) duties of the **insured's** employment by another; and

(2) performed solely by the **insured**; or

c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

The following item is added to item 3. **Property Not Covered:**

d. lawns or artificial grass, except as provided in **SECTION I – ADDITIONAL COVERAGES**.

## COVERAGE B – PERSONAL PROPERTY

**Special Limits of Liability** is replaced by the following:

**Special Limits of Liability**. These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on money, coins and medals, including any of these that are a part of a collection, and bank notes;

b. $1,500 on property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises**. This coverage is limited to $750 on such property away from the **residence premises**.

Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage;

c. $1,000 on securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

d. $1,500 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

e. $1,500 on trailers not used with watercraft;

f. $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

g. $2,500 for loss by theft of firearms;

h. $2,500 for loss by theft of silverware and goldware;

i. $5,000 on electronic data processing system equipment, including but not limited to mobile personal communication equipment, global positioning systems, mobile personal electronic devices used for the reproduction of sound, and standard media or non-media equipment for use with the above devices;

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except

wall-to-wall carpet), tapestry, wall-hanging or other similar article; and

k. $500 on commercially manufactured 2, 3 or 4 wheeled personal conveyances powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour. This does not include those not licensed for use on public highways which are designed for assisting the handicapped.

Item 2., **Property Not Covered**, is replaced by the following:

2. **Property Not Covered. We do not cover:**

a. articles separately described and specifically insured in this or any other insurance;

b. animals, birds or fish;

c. any engine or motor-propelled vehicle or machine, including the parts, designed for movement on land, except as provided in **Special Limits of Liability**, item k. We do cover those not licensed for use on public highways which are:

(1) used solely to service the **insured location**; or

(2) designed for assisting the handicapped;

d. devices or instruments for the recording or reproduction of video or sound permanently attached to an engine or motor-propelled vehicle. We do not cover tapes, discs, wires, videos or other media that may be used with these devices or instruments while in the vehicle;

e. aircraft and parts;

f. property of roomers, boarders, tenants and other residents not related to an **insured**. We do cover property of roomers, boarders and other residents related to an **insured**;

g. property regularly rented or held for rental to others by an **insured**. This exclusion does not apply to property of an **insured** in a sleeping room rented to others by an **insured**;

h. property rented or held for rental to others away from the **residence premises**;

i. any radio devices or transmitters, global positioning systems, radar or laser detectors, antennas and all other similar equipment permanently attached to an engine or motor-propelled vehicle;

j. books or records of accounts receivable, abstracts or other journals, architectural or technical drawings, card index systems or other records. This exclusion does not apply to any

© Copyright, State Farm Mutual Automobile Insurance Company, 2010
CONTINUED

State Farm 57-EC-M455-9

ST-3
0306-4000

recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records;

k. recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market;

l. purchased or created data, sound or video that cannot be replaced with like kind and quality on the current retail market which is transferred or downloaded onto mobile communication equipment, global positioning systems or electronic devices used for the reproduction of video or sound;

m. contraband, or any property used in the course of illegal consumption, possession, import, export or trade; or

n. outdoor hardscape property used for aesthetic purposes except as provided in **SECTION I – ADDITIONAL COVERAGES.**

## COVERAGE C – LOSS OF USE

Item 3., **Prohibited Use**, is replaced by the following:

3. **Prohibited Use.** We cover Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits your use of the **residence premises**, provided that:

    a. direct physical damage occurs to any property, other than covered property located on the **residence premises**, arising from a cause of loss that would be a Loss Insured under this policy if the damage had occurred to property on the **residence premises**;

    b. the **residence premises** is within one mile of property damaged by a cause of loss identified in 3.a. above; and

    c. the action of the civil authority is taken in response to:

       (1) dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

       (2) dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or

       (3) the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

We do not cover loss or expense due to cancellation of a lease or agreement.

The following new section is added under **SECTION I – COVERAGES:**

### SECTION I – PROPERTY SUBJECT TO LIMITATIONS

1. We will not pay more than a total of $5,000 for all loss by **fungus** to:

    a. **COVERAGE B – PERSONAL PROPERTY** caused by or directly resulting from a peril described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY;** and

    b. **COVERAGE A – DWELLING** property caused by or directly resulting from a peril described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY** or a loss not otherwise excluded under **SECTION I – LOSSES NOT INSURED.**

    Regardless of the number of structures or other property items insured, this single $5,000 limit of insurance is the most we will pay for loss in any one occurrence for all Section I coverages and OPTIONAL POLICY PROVISIONS combined.

2. This limitation applies to loss to all insured property, including all costs or expenses for:

    a. any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the described premises or location of the rebuilding, repair or replacement of that property, by **fungus**;

    b. any remediation of **fungus**, including the cost or expense to:

       (1) remove or clean the **fungus** from covered property or to repair, restore or replace that property;

       (2) tear out and replace any part of the building or other property as needed to gain access to the **fungus**;

       (3) contain, treat, detoxify, neutralize or dispose of or in any way respond to or to assess the effects of the **fungus**; or

       (4) remove any property to protect it from the presence of or exposure to **fungus**;

    c. the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of **fungus**, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

### SECTION I – ADDITIONAL COVERAGES

Items 1., 3. and 11. are replaced by the following:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010
CONTINUED

1. **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. **This expense is included in the limit applying to the damaged property.** The following coverages and limits also apply:

   a. When the amount payable for the property damage plus the debris removal exceeds the limit for damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to Additional Coverage, item 3. **Trees, Shrubs and Landscaping.**

   b. We will also pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the **residence premises**, unless otherwise excluded. This coverage applies when:

      (1) the tree has caused a Loss Insured to Coverage A property; or

      (2) the tree debris felled by windstorm, hail, or weight of snow or ice blocks:

         (a) the driveway, on the **residence premises**, and prevents land motor vehicle access to or from the dwelling; or

         (b) a ramp designed to assist the handicapped, on the **residence premises** and prevents access to or from the dwelling.

3. **Trees, Shrubs and Landscaping.** We cover outdoor:

   a. trees, shrubs, live or artificial plants, and lawns;

   b. artificial grass; and

   c. hardscape property used for aesthetic purposes not permanently affixed to realty;

   on the **residence premises**, for direct loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles (not owned or operated by a resident of the **residence premises**), Vandalism or malicious mischief or Theft.

   The limit for this coverage, including the removal of debris, shall not exceed 5% of the amount shown in the **Declarations** for COVERAGE A – DWELLING. We will not pay more than $750 for any one outdoor tree, shrub, plant or hardscape item, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for **business** purposes.

11. **Collapse.** We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

The collapse must be directly and immediately caused only by one or more of the following:

a. perils described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY.** These perils apply to covered building and personal property for loss insured by this Additional Coverage;

b. decay, deterioration, insect damage or vermin damage, all that are hidden from view, of a:

   (1) connector; or

   (2) structural member of a building;

   unless the presence of such damage is known to an **insured** prior to collapse;

c. weight of contents, equipment, animals or people;

d. weight of ice, snow, sleet or rain which collects on a roof, porch or deck; or

e. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf, dock, trellis or antenna or its supporting structure is not included under items b., c., d. and e. unless the loss is the direct and immediate cause of the collapse of the building.

This coverage does not increase the limit applying to the damaged property.

**SECTION I – LOSSES INSURED**

**COVERAGE B – PERSONAL PROPERTY**

Item 9.b.(3)(c), is replaced by the following:

   9. b. (3) (c) of securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

Item 12.d. is deleted.

Item 15. is replaced by the following:

   15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an

© Copyright, State Farm Mutual Automobile Insurance Company, 2010
CONTINUED

increase or decrease of artificially generated electrical current. We will pay up to $1,500 under this peril for each damaged item described above.

## SECTION I – LOSSES NOT INSURED

Item 2.f. is deleted.

Item 2.i. is replaced by the following:

2.  i.    wet or dry rot;

Item 4.c. is replaced by the following:

4.  c.   **Water**, meaning:

(1)   flood, surface water, waves (including tidal wave, tsunami, and seiche), tides, tidal water, overflow of any body of water, or spray or surge from any of these, all whether driven by wind or not;

(2)   water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area;

(3)   water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

(4)   material carried or otherwise moved by any of the water, as described in paragraphs (1) through (3) above; or

(5)   continuous or repeated seepage or leakage of water or steam from a:

(a)   heating, air conditioning or automatic fire protective sprinkler system;

(b)   household appliance; or

(c)   plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.

However, we do insure for any direct loss by fire, explosion or theft resulting from water, provided the resulting loss is itself a Loss Insured.

The following is added to item 4.:

f.    **Fungus**, including:

(1)   any loss of use or delay in rebuilding, repairing or replacing covered property, including any

associated cost or expense, due to interference at the described premises or location of the rebuilding, repair or replacement of that property, by **fungus**;

(2)   any remediation of **fungus**, including the cost or expense to:

(a)   remove or clean the **fungus** from covered property or to repair, restore or replace that property;

(b)   tear out and replace any part of the building or other property as needed to gain access to the **fungus**;

(c)   contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the **fungus**; or

(d)   remove any property to protect it from presence of or exposure to **fungus**;

(3)   the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of **fungus**, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

However, we will pay for loss as specified under **SECTION I – PROPERTY SUBJECT TO LIMITATIONS**.

## SECTION I – LOSS SETTLEMENT

### COVERAGE A – DWELLING

Items 1. and 2. are replaced by the following:

1.  **A1 – Replacement Cost Loss Settlement – Similar Construction**

We will pay up to the applicable limit of liability shown in the **Declarations**, the reasonable and necessary cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I – COVERAGES, COVERAGE A – DWELLING**.

We will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL – Building Ordinance or Law Coverage**.

2.  **A2 – Replacement Cost Loss Settlement – Common Construction**

We will pay up to the applicable limit of liability shown in the **Declarations**, the reasonable and necessary cost to repair or replace with common construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I – COVERAGES, COVERAGE A – DWELLING**, subject to the following:

© Copyright, State Farm Mutual Automobile Insurance Company, 2010
CONTINUED

ST-3
0406-4000

FE-3422
Page 6 of 9

a.  we will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. We will not pay the cost to repair or replace obsolete, antique or custom construction with like kind and quality;

b.  we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL – Building Ordinance or Law Coverage**.

## SECTION I – CONDITIONS

Item 4. is replaced by the following:

4.  **Appraisal.** In case you and we shall fail to agree as to the actual cash value or the amount of loss, then, on the written request of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of the request. Where the request is accepted, the appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon the umpire, then, on your or our request, the umpire shall be selected by a judge of a court of record in the state in which the property covered is located.

Appraisal proceedings are informal unless you and we mutually agree otherwise. For purposes of this section, "informal" means that no formal discovery shall be conducted, including depositions, interrogatories, requests for admission, or other forms of formal civil discovery, no formal rules of evidence shall be applied, and no court reporter shall be used for the proceedings.

The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with us shall determine the amount of actual cash value and loss.

Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and umpire shall be paid by the parties equally.

In the event of a government-declared disaster, as defined in the Government Code, appraisal may be requested by either you or us but shall not be compelled.

## SECTION II – LIABILITY COVERAGES

## SECTION II – ADDITIONAL COVERAGES

Items 1.a., 1.c. and 1.d. are replaced by the following:

1.  **Claim Expenses.** We pay:

    a.  expenses we incur and costs taxed against an **insured** in suits we defend. Taxed costs do not include attorney fees;

    c.  reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $200 per day for aiding us in the investigation or defense of claims or suits;

    d.  interest the **insured** is legally liable to pay on damages payable under Coverage L above before a judgment, but only the interest on the lesser of:

        (1) that part of the damages we pay; or

        (2) the Coverage L limit; and

## SECTION II – EXCLUSIONS

The following is added to item 1.:

k.  any:

    (1) **bodily injury** or **property damage** arising out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any **fungus** at or from any source or location; or

    (2) loss, cost or expense arising out of any:

        (a) request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate or dispose of or in any way respond to or assess the effects of **fungus**; or

        (b) claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of **fungus**.

## SECTION II – CONDITIONS

Item 1., **Limit of Liability**, is replaced by the following:

1.  **Limit of Liability.** The Coverage L limit is shown in the **Declarations**. This is the limit for all damages from each **occurrence** for the policy period in which the **bodily injury** or **property damage** first occurs, regardless of the number of **insureds**, claims made or persons injured. No additional limits or coverage will be available for the **occurrence** under any additional policy periods while this policy remains in force.

The Coverage M limit is shown in the **Declarations**. This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010
CONTINUED

The following condition is added to item 4., **Duties of an Injured Person – Coverage M:**

   d.  the injured person, or, when appropriate, someone acting on behalf of that person, shall:

     (1)  provide us with any required authorizations; and

     (2)  submit to us all information we need to comply with state or federal law.

## SECTION I AND SECTION II – CONDITIONS

The following conditions are added:

### 11. Premium.

   a.  Unless as otherwise provided by an alternative payment plan in effect with the **State Farm Companies** with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown in the most recently issued **Declarations**.

   b.  The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles and other elements that affect the premium applicable at the time of renewal.

   c.  The premium for this policy may vary based upon:

     (1)  the purchase of other products or services from the **State Farm Companies;**

     (2)  the purchase of products or services from an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

     (3)  an agreement, concerning the insurance provided by this policy, that the **State Farm Companies** has with an organization of which you are a member, employee, subscriber, licensee, or franchisee.

   d.  Your purchase of this policy may allow:

     (1)  you to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the **State Farm Companies,** subject to their applicable eligibility rules; or

     (2)  the premium or price for other products or services purchased by you, including non-insurance products or services, to vary.

Such other products or services must be provided by the **State Farm Companies** or by an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness or quality of any product or service offered or provided by that organization.

### 12. Right to Inspect. We have the right but are not obligated to perform the following:

   a.  make inspections and surveys of the **insured location** at any time;

   b.  provide you with reports on conditions we find; or

   c.  recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.

We do not:

   a.  make safety inspections;

   b.  undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

   c.  warrant that conditions are safe or healthful; or

   d.  warrant that conditions comply with laws, regulations, codes or standards.

This condition applies not only to us but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

### 13. Joint and Individual Interests. When there are two or more named insureds, each acts for all to cancel or change the policy.

### 14. Change of Policy Address. We may change the named insured's policy address as shown in the **Declarations** and in our records to the most recent address provided to us by:

   a.  you; or

   b.  the United States Postal Service.

## OPTIONAL POLICY PROVISIONS

**Option BP – Business Property** is replaced by the following:

   **Option BP – Business Property.** The **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability,** item b., for property used or intended for use in a **business,** including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

© Copyright, State Farm Mutual Automobile Insurance Company, 2010
CONTINUED

ST-3
0506-4000

4631
30

The $1,500 limit is replaced with the amount shown in the **Declarations** for this option.

Option HC – Home Computer is replaced by the following:

**Option HC – Home Computer.** The **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability,** item i., is increased to be the amount shown in the **Declarations** for this option.

Option ID – Increased Dwelling Limit is replaced by the following:

**Option ID – Increased Dwelling Limit.** We will settle losses to damaged building structures covered under **COVERAGE A – DWELLING** according to the **SECTION I – LOSS SETTLEMENT** provision shown in the **Declarations.**

If the reasonable and necessary cost to repair or replace damaged building structures exceeds the applicable limit of liability shown in the **Declarations,** we will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the **Declarations** to repair or replace the Dwelling; or

2. 10% of the Option ID limit of liability to repair or replace building structures covered under **COVERAGE A – DWELLING, Dwelling Extension.**

**Report Increased Values.** You must notify us within 90 days of the start of any new building structure costing $5,000 or more; or any additions to or remodeling of building structures which increase their values by $5,000 or more. You must pay any additional premium due for the increased value. We will not pay more than the applicable limit of liability shown in the **Declarations,** if you fail to notify us of the increased value within 90 days.

Optional Building Ordinance Law is replaced by the following:

**Option OL – Building Ordinance or Law.**

1. **Coverage Provided.**

The total limit of insurance provided by this Building Ordinance or Law provision will not exceed an amount equal to the Option OL percentage shown in the **Declarations** of the Coverage A limit shown in the **Declarations** at the time of the loss, as adjusted by the inflation coverage provisions of the policy. This is an additional amount of insurance and applies only to the dwelling.

2. **Damaged Portions of Dwelling.**

When the dwelling covered under **COVERAGE A – DWELLING** is damaged by a Loss Insured we will pay for the increased cost to repair or rebuild the physically damaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

3. **Undamaged Portions of Damaged Dwelling.**

When the dwelling covered under **COVERAGE A – DWELLING** is damaged by a Loss Insured we will also pay for:

a. the cost to demolish and clear the site of the undamaged portions of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs; and

b. loss to the undamaged portion of the dwelling caused by enforcement of any ordinance or law if:

    (1) the enforcement is directly caused by the same Loss Insured;

    (2) the enforcement requires the demolition of portions of the same dwelling not damaged by the same Loss Insured;

    (3) the ordinance or law regulates the construction or repair of the dwelling, or establishes zoning or land use requirements at the described premises; and

    (4) the ordinance or law is in force at the time of the occurrence of the same Loss Insured; or

c. legally required changes to the undamaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law, if:

    (1) the enforcement is directly caused by the same Loss Insured;

    (2) the requirement is in effect at the time the Loss Insured occurs; and

    (3) the legally required changes are made to the undamaged portions of specific dwelling features, systems or components that have been physically damaged by the Loss Insured.

We will not pay for legally required changes to specific dwelling features, systems or components that have not been physically damaged by the Loss Insured.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010
CONTINUED

Case 3:21-cv-02456-MMC   Document 1   Filed 04/06/21   Page 98 of 148

**4. Building Ordinance or Law Coverage Limitations.**

We will not pay more under this coverage than:

a. the reasonable and necessary increased cost to repair or rebuild the dwelling at the same premises, or if relocation is required by ordinance or law, at another premises in the same general vicinity; and

b. the reasonable and necessary cost to demolish and clear the site of the undamaged portions of the dwelling caused by enforcement of building, zoning or land use ordinance or law.

We will never pay for more than a dwelling of the same height, floor area and style on the same or similar premises as the dwelling, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

All other policy provisions apply.

FE-3422

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

## FE-3247 AMENDATORY ENDORSEMENT

**DECLARATIONS CONTINUED**

The following is added:

When you request changes to this policy, or the information or factors used to calculate the premium for this policy changes during the policy period, we may adjust the premium in accordance with the change during the policy period and you must pay any additional premium due within the time we specify.

**SECTION I AND SECTION II — CONDITIONS**

Item 8. is replaced by the following:

8. **Subrogation and Reimbursement.**

   a. **Subrogation.**

      (1) Applicable to SECTION I — YOUR PROPERTY:

      If any **insured** to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That **insured** must do everything necessary to secure our rights and must do nothing after loss to impair them. But an **insured** may waive in writing before a loss all rights of recovery against any person.

      (2) Applicable to SECTION II — YOUR LIABILITY:

      If any **insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. An **insured** must do nothing after loss to impair them. At our request, an **insured** will bring suit or transfer those rights to us and help us enforce them.

   Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

   b. **Reimbursement.**

   If we make payment under this policy and any **insured** to or for whom we make payment recovers or has recovered from another person or organization, then the **insured** to or for whom we make payment must:

      (1) hold in trust for us the proceeds of any recovery; and

      (2) reimburse us to the extent of our payment.

All other policy provisions apply.

FE-3247

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012

FE-1386
Page 1 of 1

# STATE OF EMERGENCY AMENDATORY ENDORSEMENT (California)

## COVERAGE C – LOSS OF USE

The following is added to **Additional Living Expense**:

In the event a Loss Insured arising from a state of emergency, as defined in Section 8558 of the Government Code, causes the **residence premises** to become uninhabitable, we may grant an extension of up to 12 additional months, for a total of 36 months, if you, acting in good faith and with reasonable diligence, encounter a delay or delays in the reconstruction process that are the result of circumstances beyond your control. Circumstances beyond your control include, but are not limited to:

a.  unavoidable construction permit delays;

b.  lack of necessary construction materials; and

c.  lack of available contractors to perform the necessary work.

## SECTION I – LOSS SETTLEMENT

## COVERAGE B – PERSONAL PROPERTY

Under **B1 – Limited Replacement Cost Loss Settlement**, item 1.a.(3) is replaced by the following:

FE-1386

(3)  To receive any additional payments on a replacement cost basis, you must complete the repair or replacement:

(a)  within 24 months from the date that we make the first payment toward the actual cash value of the property, or

(b)  within 36 months from the date that we make the first payment toward the actual cash value of the property, if the loss relates to a state of emergency as defined in Section 8558 of the Government Code.

## SECTION I – CONDITIONS

The following is added to **Suit Against Us**:

If the loss is related to a state of emergency, as defined in subdivision (b) of Section 8558 of the Government Code, the time limit to bring suit is extended to 24 months after inception of the loss.

All other policy provisions apply.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

EXHIBIT 3

**Subject:** PG&E Power Outage History Request - 546 Dry Well Rd, Boulder Creek 95006

**Date:** Wednesday, November 25, 2020 at 1:37:33 PM Pacific Standard Time

**From:** Queen, Stephen

**To:** Elfe Kuesters

**Attachments:** image002.png

Elfe,

Here is the power outage related information requested, for the dates around 08/17/2020, affecting the address at **546 Dry Well Rd, Boulder Creek 95006**.

| Date and Time | Basic Cause | Minutes Out | Mom or Sust |
|---|---|---|---|
| 08/19/2020 1:57:00 | Environmental/External | 43787 | Sust |
| 08/16/2020 2:49:00 | Vegetation | 901 | Sust |

The cause of the 08/19/2020 "Environmental/External" outage was a result of the CZU fire. Power was out for 43,787 minutes (approx. 30 days, 9 hours, 47 minutes). The cause of the 08/16/2020 "Vegetation" outage was a circuit restoration due to a tree falling on a line (approx. 15 hours).

Have a safe day,

**Stephen Queen, P.E.**
**Pacific Gas & Electric Company**
**Distribution Planning – San Luis Obispo**

**Phone: (805) 801-0163**
**Email:** SMQ3@pge.com

EXHIBIT 4



State Farm General Insurance Company

October 1, 2020

JASON COOK & JENNIFER GOSK
240 REYNOLDS DR
BOULDER CREEK, CA 95006

State Farm Insurance Companies
Fire Claims
PO BOX 106169
Atlanta, GA 30348-6169
Fax 844 236 3646

RE:  Claim Number:       05-10Q9-62G
     Our Insured:        Jason Cook and Jennifer Gosk
     Loss Location:      240 Reynolds Dr., Boulder Creek, CA 95006
     Policy Type:        Homeowners, FP-7955 CA

Dear Jason Cook and Jennifer Gosk:

I would like to take this opportunity to provide you with an update on the above-referenced claim. Additional time and information are needed to complete our evaluation. I hope you find this information useful as we work together to bring this matter to a conclusion.

## SUMMARY OF CLAIM STATUS

An inspection was conducted on September 6, 2020 All necessary information has been collected and the estimate is pending completion.

## Coverage A - Dwelling

During our inspection we found covered damages on your property. Our estimate to remediate these damages due to smoke included cleaning of all exterior surfaces, as well as all floor, wall, and ceiling surfaces on the interior of your property. We also included an ozone and hydroxyl treatment to remediate the smoke odor inside your dwelling.

We estimated an amount of $4,976.92 to cover the cost of the above mentioned repairs. (This amount is subject to your $3,000 deductible).

## Coverage B – Personal Property

Our inspection found no ash in your home. However, our estimate includes cleaning of personal property located inside your home to remediate for the smoke odor. The estimate also includes cleaning of all contents on the exterior premises of your dwelling. We also accounted for the food loss you reported.

A payment of $2,273.26 will be made to cover the cost of the above mentioned personal property.

You have requested the replacement of the refrigerator due to damage from the spoilage of refrigerated products related to the general power outage suffered in the area. Please review the following policy language:

## SECTION I – LOSSES INSURED

## COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I - LOSSES NOT INSURED:**

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft**, including self-propelled missiles and spacecraft.

6. **Vehicles**, meaning impact by a vehicle.

7. **Smoke**, meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief**, meaning only willful and malicious damage to or destruction of property.

9. **Theft**, including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

   This peril does not include:

   a. loss of a precious or semi-precious stone from its setting;

   b. loss caused by theft:

      (1) committed by an **insured** or by any other person regularly residing on the

**insured location**. Property of a student who is an **insured** is covered while located at a residence away from home, if the theft is committed by a person who is not an **insured**;

(2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

(3) from the part of a **residence premises** rented to others:

    (a) caused by a tenant, members of the tenant's household, or the tenant's employees;

    (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

    (c) of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps; or

    (d) of jewelry, watches, fur garments and garments trimmed with fur, precious and semiprecious stones;

c. loss caused by theft that occurs away from the **residence premises** of:

    (1) property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there. Property of a student who is an **insured** is covered while at a residence away from home;

    (2) watercraft of all types, including their furnishings, equipment and outboard motors; or

    (3) trailers and campers designed to be pulled by or carried on a vehicle.

    If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence shall not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects**. This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Sudden and accidental discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

    This peril does not include loss:

a. to the system or appliance from which the water or steam escaped;

b. caused by or resulting from freezing;

c. caused by or resulting from water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

13. **Sudden and accidental tearing asunder, cracking, burning or** bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

   This peril does not include loss:

   a. caused by or resulting from freezing; or

   b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

   This peril does not include loss on the **residence premises** while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

   a. maintain heat in the building; or

   b. shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass which is a part of a building on the **residence premises**. There is no coverage for loss or damage to the glass.

Since the power loss was not caused by fire to your power lines on the residence premises, the policy does not provide coverage for the damaged refrigerator. You advised that you would like a replacement of mattresses and additional personal property items, due to contamination. Personal Property items are only covered by the above mentioned named perils.

As for your carpeting and any additional dwelling items damaged due to contamination. Please review the following policy provisions:

## SECTION I - LOSSES NOT INSURED

2.      We do not insure for any loss to the property described in Coverage A which is caused by one or more of the items below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

      j.      contamination;

However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

### Coverage C – Loss of Use

You evacuated your property on August 18, 2020. Your 14-day Prohibited Use period ended on Aug 31, 2020. Inspection of your property was conducted on September 6, 2020. At that time, no damage that would render your home uninhabitable was found or documented.

Therefore, your additional living expenses incurred was considered from the date of your evacuation order until the date of your inspection in the amount of $2,587.91.

Certain expenses you submitted we were unable to process due to ineligibility or lack of documentation i.e. receipts/bank statements. When you provide further documentation of these expenses, we will be happy to review them further for consideration.

Please refer to the following policy provisions found in your State Farm Homeowners Policy, FP7955CA, as endorsed by FE-3422 Amendatory Endorsement (California):

## SECTION I - COVERAGES

## COVERAGE C - LOSS OF USE

1.      **Additional Living Expense**. When a Loss Insured causes the **residence premises** to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

### FE-3422 Homeowners Policy Endorsement (California)

### COVERAGE C – LOSS OF USE

Item 3., **Prohibited Use**, is replaced by the following:

3. **Prohibited Use.** We cover Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits your use of the **residence premises**, provided that:

   a. direct physical damage occurs to any property, other than covered property located on the **residence premises**, arising from a cause of loss that would be a Loss Insured under this policy if the damage had occurred to property on the **residence premises**;

   b. the **residence premises** is within one mile of property damaged by a cause of loss identified in 3.a. above; and

   c. the action of the civil authority is taken in response to:

      (1) dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

      (2) dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or

      (3) the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

   We do not cover loss or expense due to cancellation of a lease or agreement.

The California Fair Claims Settlement Practices Regulations state that you must be notified of the following policy provision concerning suits against State Farm:

> 6. **Suit Against Us**. No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

The two-year period referred to begins to run as of the date of this letter.

The California Fair Claims Settlement Practices Regulations state that you must be notified of the following policy provision concerning suits against State Farm:

### SECTION I AND SECTION II - CONDITIONS

> 10. **Conformity to State Law**. When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

The two-year period referred to does not include the time we took to investigate your claim. The time from the date of loss to the date you reported your claim to your agent does count in computing the amount of time that has already expired. The suit limitation period begins running again as of the date of this letter. The California Fair Claims Settlement Practices Regulations state that you must be notified of all time limits that may apply to your claim.
No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 24 months after inception of the loss since the loss is related to a state of emergency, as defined in subdivision (b) of Section 8558 of the Government Code.

This denial involves the coverages of this policy only. If you have any additional information you would like us to consider, please forward it to us immediately.

This Company does not intend, by this letter, to waive any policy defenses in addition to those stated above, and reserves its right to assert such additional policy defenses at any time.

I look forward to assisting you with this claim. Please contact me if you have questions or if I may assist in any way.

Sincerely,


Balazs Lucza
External Claim Resource - Alacrity
(866) 787-8676 Ext. 12813
Email: Statefarmfireclaims@statefarm.com
Fax: (844) 236-3646

State Farm General Insurance Company

EXHIBIT 5

**State Farm**®

State Farm General Insurance Company

October 15, 2020

ELFE KUESTERS
JEREL SMITH
546 DRY WELL RD
BOULDER CREEK, CA  95006-9034

State Farm Insurance Companies
Fire Claims
PO BOX 106169
Atlanta, GA 30348-6169
Fax 844 236 3646

RE:     Claim Number:  05-10N4-09Z
        Policy Type:    Homeowners FP 7955CA
        Date of Loss:   August 18, 2020

Dear Elfe Kuesters and Jerel Smith:

Thank you for speaking with me regarding the status of your claim. Please allow this letter to summarize our conversation.

**Coverage A – Dwelling**

Enclosed is our estimate of $62,302.98 for the replacement cost of covered repairs to your home and outbuildings. If, before or during the period of repairs, you become aware that the actual cost to repair, rebuild, or replace your damaged property exceeds the cost estimated, please contact us immediately so that we may review any possible additional coverage for your loss.

You have the option to obtain additional estimates of repair.  We will be happy to review any estimates you obtain.  Please contact us before starting work if your contractor's estimate is higher than ours.  It will be your responsibility to hire the contractor and to make sure the work is completed satisfactorily.  State Farm does not warrant or guarantee the work of the contractor.

**Coverage B - Personal Property**

Enclosed is our estimate of $10,033.37 for your personal property loss.  Please see the attached Payment Tracker Worksheet.

Based upon the results of our discussions, site inspection, and investigation, it was determined there is no coverage under your policy for the replacement of your refrigerator due to the general power outage in your area.  The predominant cause of the odor to your refrigerator, was caused by an off property power loss.

Please refer to the following policy provisions per the State Farm Homeowner Policy, FP-7955CA, as endorsed by FE-3422 Amendatory Endorsement (California):

ELFE KUESTERS
JEREL SMITH
Page 2
October 15, 2020

## SECTION I – COVERAGES

## COVERAGE B - PERSONAL PROPERTY

## SECTION I - ADDITIONAL COVERAGES

7.    **Power Interruption**. We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a Loss Insured occurring on the **residence premises**. The power lines off the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

8.    **Refrigerated Products**. Coverage B is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

     a.    removal of a plug from an electrical outlet; or

     b.    turning off an electrical switch unless caused by a Loss Insured.

This coverage does not increase the limit applying to the damaged property.

## SECTION I - LOSSES INSURED

## COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I - LOSSES NOT INSURED**:

If you have questions regarding any part of your claim and would prefer to discuss it with a person other than me, please feel free to contact Team Manager Robert Midgett, State Farm General Insurance Company, at 844 458 4300.

**Coverage C - Additional Living Expense**

To date we have issued payments totaling $1,000.00 towards your Additional Living Expenses. We will continue to monitor this expense and contact you when necessary. Should you have any questions regarding this coverage, please contact me.

ELFE KUESTERS
JEREL SMITH
Page 3
October 15, 2020

We are required by California Insurance Regulations, Section 2695.7(b)(3), to advise you that if you believe this claim, or any part of this claim, has been wrongfully denied or rejected, you may have the matter reviewed by the California Department of Insurance, Claims Service Bureau, 300 South Spring Street, Los Angeles, California 90013, telephone 800 927 4357.

The California Fair Claims Settlement Practices Regulations state that you must be notified of all time limits that may apply to your claim. Your policy contains the following provision concerning suits against State Farm:

## SECTION I – CONDITIONS

6.      **Suit Against Us**. No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

Pursuant to California law, Insurance Code 6010, if the loss is related to a state of emergency, as defined in subdivision (b) of Section 8588 of the Government Code, the time limit to bring suit is extended to 24 months after inception of the loss.

Your policy contains the following language:

## SECTION I AND SECTION II – CONDITIONS

10.     **Conformity to State Law**. When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

The two-year period referred to does not include the time we take to investigate your claim.  The time from the date of loss (August 21, 2020) to the date you reported your claim does count in computing the amount of time that has already expired.  The suit limitation period is again running as of the date of this letter.

This Company does not intend by this letter to waive any policy defenses in addition to those stated above and reserves its right to assert such additional policy defenses at any time.

ELFE KUESTERS
JEREL SMITH
Page 4
October 15, 2020

If you have any additional information regarding your claim which has not been previously considered or if you desire any additional explanation regarding this matter, please contact me.

Sincerely,

Ramon Hill
External Claim Resource – Eberl
Phone:  1.866.787.8676 X-8406
Email:  statefarmfireclaims@statefarm.com
State Farm General Insurance Company

Enclosure(s):  State Farm Estimate
               XactContents Report
               Summary of Loss Report

EXHIBIT 6

**State Farm®**

State Farm General Insurance Company

October 5, 2020

State Farm General Insurance Companies
Fire Claims
PO BOX 106169
Atlanta, GA 30348-6169
844 236 3646

JASON COOK
240 REYNOLDS DR
BOULDER CREEK, CA 95006

RE:    California Department of Insurance
       File Number:  CSB-8274410
       Insured:  Jason Cook
       Policy Number:  05-C4-P998-3
       Claim Number:  05-10Q9-62G
       Company Name:  STATE FARM GENERAL
       NAIC:  25151
       Date of Loss:  08/18/20

Dear Mr. Cook:

I appreciate the opportunity to review your concerns regarding the above referenced claim.

On Saturday, October 3, 2020, I emailed you to confirmed receipt of your Department of Insurance Complaint and advised I would review and respond per your request in writing.   After a thorough review of your claim, your main concerns are to have restoration services approved and additional living expenses paid.  As of October 5, 2020, Claim Owner, Balazs Lucza has issued payments in the amount of $6,838.09.  Our estimate includes cleaning based on our inspection and investigation.  We will reconcile any estimate you submit with the restoration company of your choice.  The Summary of Loss is as follows:

| | |
|---|---|
| Coverage A – Dwelling | $4,976.92 |
| Coverage B - Personal Property | $2,273.26 |
| Coverage C – ALE | $2,587.91 |
| **Total Replacement Cost** | **$9,838.09** |
| Less Policy Deductible | <$ 3,000.00> |
| Total Paid to Date | $6,838.09 |

Your policy covers for Additional Living Expense incurred when your home is deemed uninhabitable due to a covered loss.  This coverage applies to cost you incur.  Please submit any documentation for the expenses you incurred for review.  Please refer to the following policy provisions under his homeowners FP-7955CA policy:

## SECTION I COVERAGS

## COVERAGE C - LOSS OF USE

1. **Additional Living Expense**. When a Loss Insured causes the **residence premises** to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

*Providing Insurance and Financial Services*                                    *Home Office, Bloomington, IL*

Jason Cook
05-10Q9-62G
Page 2 of 7

2. **Fair Rental Value**. When a Loss Insured causes that part of the **residence premises** rented to others or held for rental by you to become uninhabitable, we will cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the **residence premises** rented or held for rental is uninhabitable.

Item 3., **Prohibited Use**, is replaced by the following:

3. **Prohibited Use.** We cover Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits your use of the **residence premises**, provided that:

   a. direct physical damage occurs to any property, other than covered property located on the **residence premises**, arising from a cause of loss that would be a Loss Insured under this policy if the damage had occurred to property on the **residence premises**;
   b. the **residence premises** is within one mile of property damaged by a cause of loss identified in 3.a. above; and
   c. the action of the civil authority is taken in response to:
      (1) dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;
      (2) dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or
      (3) the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

   We do not cover loss or expense due to cancellation of a lease or agreement.

## SECTION I – LOSSES INSURED

**COVERAGE B - PERSONAL PROPERTY**

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I - LOSSES NOT INSURED:**

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

2

Jason Cook
05-10Q9-62G
Page 3 of 7

4. **Riot or civil commotion.**

5. **Aircraft**, including self-propelled missiles and spacecraft.

6. **Vehicles**, meaning impact by a vehicle.

7. **Smoke**, meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief**, meaning only willful and malicious damage to or destruction of property.

9. **Theft**, including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

   This peril does not include:

   a. loss of a precious or semi-precious stone from its setting;

   b. loss caused by theft:

      (1) committed by an **insured** or by any other person regularly residing on the **insured location**. Property of a student who is an **insured** is covered while located at a residence away from home, if the theft is committed by a person who is not an **insured**;

      (2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

      (3) from the part of a **residence premises** rented to others:

         (a) caused by a tenant, members of the tenant's household, or the tenant's employees;

         (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

         (c) of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps; or

         (d) of jewelry, watches, fur garments and garments trimmed with fur, precious and semiprecious stones;

   c. loss caused by theft that occurs away from the **residence premises** of:

      (1) property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there. Property of a

3

Jason Cook
05-10Q9-62G
Page 4 of 7

      student who is an **insured** is covered while at a residence away from home;

    (2) watercraft of all types, including their furnishings, equipment and outboard motors; or

    (3) trailers and campers designed to be pulled by or carried on a vehicle.

      If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence shall not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects**. This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Sudden and accidental discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

    This peril does not include loss:

    a. to the system or appliance from which the water or steam escaped;

    b. caused by or resulting from freezing;

    c. caused by or resulting from water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

    d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

13. **Sudden and accidental tearing asunder, cracking, burning or** bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

    This peril does not include loss:

    a. caused by or resulting from freezing; or

    b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

Jason Cook
05-10Q9-62G
Page 5 of 7

This peril does not include loss on the **residence premises** while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

a.  maintain heat in the building; or

b. shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass which is a part of a building on the **residence premises**. There is no coverage for loss or damage to the glass.

Since the power loss was not caused by fire to your power lines on the residence premises, the policy does not provide coverage for the damaged refrigerator.  Personal Property items are only covered by the above mentioned named perils.  Contamination is not one of the named perils above.  Therefore, there is no coverage for personal property damaged due to contamination.

As for any dwelling items damaged due to contamination.  Please review the following policy provisions:

## SECTION I - LOSSES NOT INSURED

2.    We do not insure for any loss to the property described in Coverage A which is caused by one or more of the items below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

j.    contamination;

However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

Below you will find an outline of the handling that has taken place as a result of this claim.

- 8/26/2020 - Your loss of August 18, 2020 was reported to State Farm.  At which time you were contacted by Claim Specialist Randy Brewer and he reviewed the current status of the property and the mandatory evacuation. Claim Specialist Brewer also reviewed your State Farm Homeowners Policy, FP-7955CA, as endorsed by FE-3422-Homeowners Policy Endorsement (California) with you and e-mailed you a copy during your conversation.
- 8/28/2020 - External Claim Resource Balazs Lucza attempted to reach you.
- 8/30/2020 – ECR Lucza was able to speak with you. You advised your residence premises did not have water or power, but was not a total loss. Additionally, you stated

Jason Cook
05-10Q9-62G
Page 6 of 7

you were in Washington, but had rented an AirBnB beginning on September 7 in California.

- 9/2/2020 - We received incurred receipts for living expenses.
- 9/5/2020 - ECR Lucza spoke to you and scheduled an inspection for September 6 at 2:30 p.m.
- 9/6/2020 - An inspection of your property was completed at which time it was determined your home was habitable.
- 9/8/2020 - An e-mail from ECR Lucza was sent advising your request for Additional Living Expense coverage for the AirBNB was denied.
- 9/9/2020 - State Farm received your Social Media Complaint.
- 9/10/2020 - You spoke with Claim Team Manager Lisa Hume regarding your concerns. From this conversation, we understood you vacated the residence premises due to a Mandatory Evacuation on August 18 and incurred cost for food and fuel costs until you returned to your home on September 5. During this time, you stayed with friends and family. It was agreed you would submit the incurred receipts, which may be in the form of a credit card statement, outlining your purchases during this time. You advised you received notification on September 3 of Boulder Creek residents being permitted to return to their homes. With this notification, you advised you drove back to California on September 4 and 5. You stated the home was not destroyed by the fire, there was nothing burnt on the premises, you had no water or power, and there was ash and smoke to the interior of the home. The results of our inspection from September 6 was reviewed, and you were advised a determination was made the home was habitable. It was further reviewed you had an appointment with a restoration company scheduled for Monday, September 14. When asked if you would like State Farm to be present for this inspection, you stated this was unnecessary, as we had already inspected the property. You inquired as to what the adjuster would do at the inspection with the restoration company and you were advised they would inspect the home with the representative from the restoration company and agree to the scope of damages. We are again offered to be present for this inspection and will need to know the time of the scheduled inspection on September 14.
- 9/11/2020 – TM Marsha Slaughter attempted to contact you.  You stated your phone service wasn't very good and advised to be emailed so you could have everything documented.
- 9/12/2020 – Social Media Response letter was emailed to you.
- 9/12/2020 – ECR Lucza emailed you to advise you that the Dropbox link you provided cannot be accessed because it wasn't a secured method and documentation to be sent to statefarmfireclaims@statefarm.com so the claim process could continue.
- 9/14/2020 – ECR Lucza attempted contact to go over estimate and there was no answer.
- 9/15/2020 – ECR Lucza emailed you requesting Additional Living Expense receipts to move claim forward.
- 9/21/2020 – ECR Lucza called you to address your concerns and you refused to discuss over the phone.
- 9/23/2020 – We received cleaning estimate from Kleenup Disaster Specialist.  ECR Lucza reviewed and reconciled estimate accordingly.
- 9/25/2020 – ECR Lucza requested clarification from you on some items submitted for ALE consideration.
- 9/26/2020 – ECR Lucza reviewed ALE receipts for 8/18 – 9/6 when the home was deemed habitable.  Receipts outside this timeframe was not accepted.

Jason Cook
05-10Q9-62G
Page 7 of 7

- 10/1/2020 – DOI Complaint received.
- 10/2/2020 – ECR Lucza submitted for authority and authority was granted.

We are required by California Insurance Regulations, Section 2695.7(b)(3), to advise you that if you believe this claim, or any part of this claim, has been wrongfully denied or rejected, you may have the matter reviewed by the California Department of Insurance, Claims Service Bureau, 300 South Spring Street, Los Angeles, California 90013, telephone 800 927 4357.
We are required by Insurance Code Section 790.034(b)(1) to provide you with the attached copy of Insurance Code Section 790.03.

In addition to Section 790.03 of the Insurance Code provided here, Fair Claims Settlement Practices Regulations govern how insurance claims must be processed in this state. These regulations are available at the Department of Insurance Internet site, www.insurance.ca.gov. You may also obtain a copy of these regulations free of charge from this insurer.

Pursuant to California law, you may obtain upon request copies of claim-related documents, as defined by Insurance Code Section 2071(a). These documents relate to the evaluation of damages of your claim and can include repair and replacement estimates and bids; appraisals, scopes of loss; drawings, plans, reports; and third party findings on the amount of loss.

No suit or action of this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 24 months after inception of the loss since the loss is related to a state of emergency, as defined in subdivision (b) of Section 8558 of the Government Code.

If you would like further explanation regarding the coverages of your policy or an update on the status of your claim, please contact me. My office hours are 7 a.m. to 7 p.m., Monday through Saturday.

Sincerely,

*Marsha Slaughter*

Marsha Slaughter
Claim Team Manager
309-994-5013
E-mail statefarmfireclaims@statefarm.com
State Farm General Insurance Company

Cc:      California Department of Insurance

EXHIBIT 7

 Gmail

The Judge <jaecee@gmail.com>

## 05-10Q9-62G
1 message

**Ludwig van Jaethoven** <jaecee@gmail.com>                                Sat, Oct 10, 2020 at 8:56 PM
To: Balazs Lucza <balazs.lucza.vabacz@statefarm.com>, robert.midgett.c4ko@statefarm.com, Kevin Bailey
<kevin.bailey.wc9r@statefarm.com>, marsha.slaughter.bl9m@statefarm.com, HOME CLMS-FIRECLAIMS
<statefarmfireclaims@statefarm.com>
Cc: "Chen, Ellen" <Ellen.Chen@insurance.ca.gov>

Hi Balazs,

I've added the following people to this email: Your supervisor, Marsha Slaughter; Robert Midgett of the Partial Loss
(Smoke Team); and Ellen Chen, Associate Insurance Compliance Officer assigned to our complaint #CSB-8274410 with
California Department of Insurance regarding State Farm's handling of our claim.

I have received our first payment in the mail and have attached a digital copy of your *ALE Statement & Summary of Loss*
for reference.  When issuing this payment on October 2nd, you claimed that a detailed breakdown would be included in
the mailing.  As mentioned in my response on October 3rd, it was apparent from the payment issued that these payments
were not complete.  What was mailed to us only has the most generic of details, making it impossible to identify which
items you've reimbursed for, and which you've simply chosen to ignore.  Please provide an itemized list of any and all
payments, including which coverage they fall under for this first payment as well as any future payments.  You mention on
page 9 of your mailer that there were payments you were unable to process and a willingness to review them further for
consideration.  It is not possible to begin this discussion and review without a full itemization in which I can compare with
my submitted expenses.  Additionally you've still not specified a preferred means for updating my supplied spreadsheet
and ensuring expenses and losses are correctly accounted for and neither duplicated nor inadvertently missed.

I will, however, address my many concerns with what has been provided at present time.

Per page 9 of your mailing, you've stated that during your inspection on September 6, 2020 "no damage that would
render your home uninhabitable was found or documented."  During your inspection you confirmed that you were not a
certified industrial hygienist.  I have inquired several times as to whether you have any IICRC or other certifications to say
our house is free of smoke and smoke byproduct, all of which have gone unanswered.  You are unqualified to determine
that our house was safe to inhabit.  Particulate matter from smoke contains thousands of compounds including VOCs
which are microscopic in size, and at under pm2.5 bypass respiratory defenses and can cause respiratory issues and
cancer.  We have brought in three separate IICRC certified, licensed smoke restoration specialists for assessment and
estimates for repair, all of whom have said that due to our houses close proximity to the fire and burned structures
restoration is necessary.  This is not habitable.  Your estimate acknowledging interior restoration being necessary for our
house, while significantly lower than any of our restoration specialists have estimated, is an admission to this fact.

As an aside, you have not clarified "beyond what your policy allows me to cover for", or provided policy to back up this
claim regarding our estimate with ServPro, and thus still do not have permission to share our Dwelling and Personal
Property cleaning estimate with ServPro at this time.

Back on track.  Per our policy, *FP-7955CA, page 4*

**COVERAGE C - LOSS OF USE**
1. **Additional Living Expense**. ==When a Loss Insured
causes the **residence premises** to become uninhabitable,
we will cover the necessary increase in cost you
incur to maintain your standard of living for up to 24
months. Our payment is limited to incurred costs for the
shortest of: (a) the time required to repair or replace the
premises==; (b) the time required for your household to
settle elsewhere; or (c) 24 months. This coverage is not
reduced by the expiration of this policy.

A Loss Insured (**Fire**) caused our **residence premises** to become uninhabitable.  Prohibited Use does not apply to our
claim.  ALE is owed until the point that our house has been restored to its pre-loss habitable condition.

As you're aware, we have contracted with ServPro to begin restoration work next week.  Once that work has been completed, ALE will no longer be owed.  I will be providing receipts up until the completion date for ALE reimbursement.

On Page 6 and 8 of your mailing, you begin discussing the loss of our refrigerator, mattress, and carpeting as not covered by the power loss or contamination.  On page 10, however, you provide the following statement:

**SECTION I AND SECTION II - CONDITIONS**
10. **Conformity to State Law**. When a policy provision is in
conflict with the applicable law of the State in which this
policy is issued, the law of the State will apply.

As you are an out-of-state adjuster, I have now several times informed you of California's use of Proximate Cause to determine the cause of a loss.

**California Insurance Code 530** states:
An insurer is liable for a loss of which a peril insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause.

State Farm, as you've shown, will conform with State Law.  **Fire** is the proximate cause of our loss and a covered peril.  Our policy's exceptions for power interruption, contamination, or otherwise do not apply, and these items will be covered and replaced appropriately under our **Personal Property** coverage.

Thanks

On Thu, Oct 8, 2020 at 4:00 PM Ludwig van Jaethoven <jaecee@gmail.com> wrote:
> Hi Balazs,
>
> Can you please clarify for me what you mean by "beyond what your policy allows me to cover for", and show me these parts in our policy?
>
> Thanks
>
>
>
> On Thu, Oct 8, 2020 at 3:57 PM Balazs Lucza <balazs.lucza.vabacz@statefarm.com> wrote:
>
>> Hi Jason,
>>
>>
>> I've talked to Nora Choe from ServPro since their estimate is beyond what your policy allows me to cover for. They would like to see the State Farm estimate and consider if they can adjust their pricing, but in order for me to share that information with them I would need your permission first. Do you give permission to share your Dwelling and Personal Property cleaning estimate with Ms. Choe?
>>
>>
>> Thank you,
>>
>> Balazs
>>
>>
>> **From:** Ludwig van Jaethoven [mailto:jaecee@gmail.com]
>> **Sent:** Monday, October 5, 2020 3:02 PM
>> **To:** Balazs Lucza <balazs.lucza.vabacz@statefarm.com>; Robert Midgett <robert.midgett.c4ko@statefarm.com>; Marsha Slaughter <marsha.slaughter.bl9m@statefarm.com>
>> **Cc:** HOME CLMS-FIRECLAIMS <statefarmfireclaims@statefarm.com>; Kevin Bailey <kevin.bailey.wc9r@statefarm.com>
>> **Subject:** [EXTERNAL] Re: 05-10Q9-62G

 Gmail

The Judge <jaecee@gmail.com>

## 05-10Q9-62G
1 message

**Ludwig van Jaethoven** <jaecee@gmail.com>                                    Thu, Oct 15, 2020 at 9:15 PM
To: HOME PA-ECS-INTERNET <home.pa-ecs-internet.319h00@statefarm.com>, HOME CLMS-FIRECLAIMS
<statefarmfireclaims@statefarm.com>, Kevin Bailey <kevin.bailey.wc9r@statefarm.com>,
marsha.slaughter.bl9m@statefarm.com, robert.midgett.c4ko@statefarm.com, "Chen, Ellen" <Ellen.Chen@insurance.ca.gov>

Hi Marsha,

I've added the following people to this email: My agent, Kevin Bailey, Robert Midgett of the Partial Loss (Smoke Team);
and Ellen Chen, Associate Insurance Compliance Officer assigned to our complaint #CSB-8274410 with California
Department of Insurance regarding State Farm's handling of our claim.

I'm not quite sure why this letter is dated October 5th when I've only just today received on October 15th.  I believe I have
addressed much of this letter upon receipt of Balazs' ALE Statement and Summary of Loss, issued October 2nd and
received on Saturday October 10th.  I will also point out that you also emailed me the morning of October 2nd, and not
the 3rd as you've stated.  I understand from your Out of Office response that you are and continue to be on vacation at
this time, and so my response refuting Balazs' Summary of Loss may not have met your review.  I've included your
response in regards to my Department of Insurance complaint, as well as Balazs' ALE Statement & Summary of Loss for
convenience.

Balazs is an independent contractor licensed out of Floridia, license #W542562
You are licensed out of North Carolina, license #1273433

One of the very few questions in which Balazs had directly answered for me was that he had taken the California Fair
Claims Settlement Practices Regulations Training as required by **CCR 2695.6 Training and Certification**.

> (3) where the licensee retains insurance adjusters as defined in California Insurance Code Section 14021, the
> licensee must provide training to the insurance adjusters regarding these regulations and annually certify, in a
> declaration executed under penalty of perjury, that such training is provided. Alternately, the insurance adjuster
> may annually certify in writing, under penalty of perjury, that he or she has read and understands these regulations
> and all amendments thereto or has successfully completed a training seminar which explains these regulations;

I bring this up because there is a consistent theme in which both you and Balazs act in bad faith, disregarding and failing
to acknowledge California Code of Regulations and California Insurance Code which I have repeatedly addressed in
writing.  Can you confirm that you have taken this training?

The remainder of my email will work on the assumption that you have completed the training.  If you have not, please
direct my claim and this response to a supervisor who has completed this training.

As you have initially mentioned in the response I received today, one of my main concerns is for restoration services to be
covered appropriately and restoring our house to its pre-loss condition.  The purpose of this restoration is to restore the
habitability of our home.  I have mentioned on multiple occasions that Balazs confirmed during his inspection on
September 9th, that he was not a certified industrial hygienist.  I have inquired several times as to whether Balazs has
any IICRC or other certifications to say our house was free of smoke and smoke by-product, all of which have gone
unanswered.  Particulate matter from smoke contains thousands of compounds including VOCs which are microscopic in
size, and at under pm2.5 bypass respiratory defenses and can cause respiratory issues and cancer.  When asked on
October 1st, prior to your acknowledgement of receipt of our DOI complaint, and prior to your response, I asked if State
Farm would provide a written guarantee that our home was safe to re-occupy.  There has been no such guarantee
provided by Balazs or in your response dated October 5th.  Particulate matter from smoke contains thousands of
compounds including VOCs which are microscopic in size, and at under pm2.5 bypass respiratory defenses and can
cause respiratory issues and cancer.  This is not habitable.  Balazs' revised estimate to include interior cleaning is an
admission to this fact.

Not only is this uninhabitable, Balazs actively attempted to dissuade me from having IICRC certified smoke restoration
specialists assess and provide estimates on the removal of particulate and restoration of our home.
Per his email on September 8th, "*As I mentioned it's unlikely that any experts will be covered under your policy so please*

*keep that in mind as well.*"

**CCR Section 2695.7. Standards for Prompt, Fair and Equitable Settlements**
(d) Every insurer shall conduct and diligently pursue a thorough, fair and objective investigation and shall not persist in seeking information not reasonably required for or material to the resolution of a claim dispute.

In very simple terms:

- Do you agree and acknowledge that Balazs does not possess CIH, IICRC, or other certifications which make him qualified to assess smoke and smoke by-product?
- Do you agree and acknowledge that Balazs advised against contacting an expert?
- Does this sound like State Farm has conducted and diligently pursued a thorough, fair and objective investigation in regards to the habitability of our home per **CCR 2695.7 (d)**?

In spite of Balazs' attempt to dissuade from contacting experts, I have brought in three separate IICRC certified, licensed smoke restoration specialists for assessment and estimates for repair, all of whom have said that due to our house's close proximity to the fire and burned structures restoration is necessary.

We contracted with ServPro on October 6th, the day after your letter was written.  On October 8th, Balazs confirmed contact with them, and requested permission to share his Dwellings and Personal Property cleaning estimate, due to their estimate being "*beyond what [our] policy allows [him] to cover for*".  When I asked for clarification of that statement and the parts of our policy mentioned, I received no response and therefore did not grant his request for permission.  ServPro completed their work on October 13th.  That is the day the qualification of "*Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises*" was met.  That is the day our coverage for ALE ended.

Please refer to the following policy provisions under my homeowners **FP-7955CA** policy:

**SECTION I COVERAGS**
**COVERAGE C - LOSS OF USE**
1. **Additional Living Expense**. When a Loss Insured causes the **residence premises** to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

Fair Rental Value which you have provided does not apply.  We are not renters.

Prohibited use which you have provided does not apply.  A Loss Insured (**Fire**) caused our **residence premises** to become uninhabitable.

You then begin to discuss Personal Property.

**SECTION I – LOSSES INSURED**
**COVERAGE B - PERSONAL PROPERTY**
We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I - LOSSES NOT INSURED**:
1. **Fire or lightning**.
7. **Smoke**, meaning sudden and accidental damage from smoke.
This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

I'm going to pause here for a moment and point out a section of State Farm Homeowners policy **FP-7955CA** which Balazs had provided in his Statement of Loss.

**SECTION I AND SECTION II - CONDITIONS**
10. **Conformity to State Law**. When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

Your response to our Department of Insurance Complaints did not include this statement.  It's on Page 22 of **FP-7955CA** for reference.

On October 1st, prior to your acknowledgement of our complaint and prior to your response dated October 5th, I explicitly pointed out California's use of Proximate Cause to determine the cause of a loss.

**California Insurance Code 530** states:
An insurer is liable for a loss of which a peril insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause.

**Fire** is the proximate cause of our loss and a covered peril.  In compliance with State Law, our refrigerator is a covered loss under **COVERAGE B - PERSONAL PROPERTY** because it is **Fire** damage.  In compliance with State Low, our mattress, pillows, carpets and other losses we become aware of now that we are back in our house are covered losses under **COVERAGE B - PERSONAL PROPERTY** because they are **Fire** damage.  As an aside, you and Balazs have both pointed to a coverage exception for contamination when **Smoke** is also a covered peril.

With this in mind, we are unable to accept this denial letter for our ALE coverage through October 13th, or Personal Property coverage as it does not meet the requirements of **California Code of Regulations 2695.7(b)(1)** for listing all bases for such rejection or denial and the factual and legal bases for each reason given for such rejection or denial which is then within the insurer's knowledge.  Your required inclusion of **CCR 2695.7(b)(3)** I believe to be the first acknowledgement made to date of California laws and regulations by State Farm regarding my claim.

**Section 2695.7. Standards for Prompt, Fair and Equitable Settlements**
(1) Where an insurer denies or rejects a first party claim, in whole or in part, it shall do so in writing and shall provide to the claimant a statement listing all bases for such rejection or denial and the factual and legal bases for each reason given for such rejection or denial which is then within the insurer's knowledge. Where an insurer's denial of a first party claim, in whole or in part, is based on a specific statute, applicable law or policy provision, condition or exclusion, the written denial shall include reference thereto and provide an explanation of the application of the statute, applicable law or provision, condition or exclusion to the claim. Every insurer that denies or rejects a third party claim, in whole or in part, or disputes liability or damages shall do so in writing.

Lastly, your letter ends with another abbreviated outline which I don't believe at this point requires refuting with what I have provided above, and what I have provided in my initial response to your previous letter and provided to the Department of Insurance in filing my complaint.  I will note that Balazs' letter on 9/18 denying coverage for our Airbnb and other ALE costs did not conform to **CCR 2695.7** and is directly responsible for my claim's escalation  Balazs' email on 9/24 (not 9/25 as you have listed) did not request clarification on any items but merely asked for our weekly averages in food eaten out, food eaten in, and mileage from which to determine the increase in costs incurred which are owed.  There have been no requests for clarification, nor has an itemized breakdown of submitted receipts and their incurred ALE reimbursements been provided to allow for reconciliation.  At the Department of Insurance's request, I will gladly provide a complete outline of communication to the best of my ability.

Thanks

On Thu, Oct 15, 2020 at 7:24 AM HOME PA-ECS-INTERNET <home.pa-ecs-internet.319h00@statefarm.com> wrote:

Hello,

Please see the attached letter in response to your recent complaint.

Should you have any questions, please review the contact information in the letter.

Thank you

**Charlotte M Potts**

**Public Affairs | Executive Customer Service Representative**

**State Farm Insurance®**

**Phone:  855-661-1349**

--
-Jae

---

**2 attachments**

 **Cook Response-Insured.pdf**
164K

 **State Farm [2020.10.01] ALE & Summary of Loss.pdf**
9874K

STATE OF CALIFORNIA                                                                          *Dave Jones, Insurance Commissioner*

**DEPARTMENT OF INSURANCE**
**Legal Division, Corporate Affairs Bureau**
45 Fremont Street, 24th Floor
San Francisco, CA 94105



# NOTICE

**TO**:         All Property and Casualty Insurance Companies Providing Homeowners and
              Commercial Property Insurance in the California Fire Areas and Other Interested
              Persons

**DATE:**       January 29, 2018

**SUBJECT:**    Coverage of Flood, Mud Slide and Earth Movement Claims Relating to Recent
              Fires

The California Department of Insurance (Department) is aware that homeowners' and certain
commercial property insurance policies frequently exclude losses caused by mudflow, debris
flow, mudslide, landslide, or other similar events.  However, under the "efficient proximate
cause" doctrine established by the Insurance Code and articulated by California courts, these
exclusions are not be enforceable if the facts establish that the wildfire (a covered peril) was the
efficient proximate cause of the subsequent flooding, mudflow, debris flow, mudslide, landslide,
or other similar events.

Insurance Code § 530 states:

> An insurer is liable for a loss of which a peril insured against was the proximate cause,
> although a peril not contemplated by the contract may have been a remote cause of the
> loss; but he is not liable for a loss of which the peril insured against was only a remote
> cause.

Insurance Code section 530 sets forth the efficient proximate cause doctrine, an interpretive rule
for first party insurance disputes.  The California Supreme Court and other California Appellate
Courts have stated that efficient proximate cause doctrine is the "preferred method for resolving
first party insurance disputes involving losses caused by multiple risks or perils, at least one of
which is covered by insurance and one of which is not." *Julian v. Hartford Underwriters Ins.
Co.*, 35 Cal.4th 747, 753 (2005).

Under the efficient proximate cause doctrine, "[W]hen a loss is caused by a combination of a
covered and specifically excluded risks, the loss is covered if the covered risk was the efficient
proximate cause of the loss, but the loss is not covered if the covered risk was only a remote
cause of the loss, or the excluded risk was the efficient proximate, or predominate cause." *Julian
v. Hartford Underwriters Ins. Co.*, *at 750* (citing *State Farm Fire & Casualty Co. v. Von Der
Lieth*, 54 Cal.3d 1123, 1131-1132 (1991).)  In the case of *Garvey v. State Farm Fire & Casualty
Co.*, 48 Cal.3d 395, 406 (1989), the California Supreme Court held that there is coverage only if
the covered concurrent cause is the efficient proximate cause or predominant cause for the

January 29, 2018
Page 2

loss. The mere fact that a cause is concurrent does not, in itself, provide coverage if the other concurrent cause is excluded. "Frequently property losses occur which involve more than one peril that might be considered legally significant. . . . The task becomes one of identifying the most important cause of the loss and attributing the loss to that cause." *Id*. at 406.

In *Howell v. State Farm Fire & Casualty Co.*, 218 Cal.App.3d 1446 (1990), the property owner made a claim for landslide damage to her property following heavy rains. The insurer denied the claim because the policy excluded coverage for earth movement and water damage. The property owner presented expert testimony that the landslide occurred due to a fire, which was covered under the policy and which destroyed vegetation on the slope the summer before the landslide. The Court of Appeal concluded that an insurer providing coverage under a property insurance policy may not contractually exclude coverage when an insured peril (such as fire) is the efficient proximate cause of a loss, regardless of other contributing causes. *Id*. at 1448. The Court found that because fire was the efficient proximate cause of the mudslide, the policy exclusion for damage caused by mudslide was not enforceable. *Id*. at 1452.

Based on preliminary information evaluated by the Department, there is a substantial basis to indicate that the Thomas fire was the efficient proximate cause of the flooding, mudflow, debris flow, mudslide, landslide, and other similar events in Santa Barbara County following the Thomas fire. If it is established that the Thomas fire or another peril covered by the applicable policy was the efficient proximate cause of the damage resulting from these mud slides and other similar events in Santa Barbara following the fire, such damage is covered by the policy regardless of any exclusion in the applicable policy. Once the insured shows that an event falls within the scope of basic coverage under the applicable policy, the burden is on the insurer to prove a claim is specifically excluded. *Garvey v. State Farm Fire & Casualty, supra, 406*.

Based upon the insurance code provision and established case law described above, insurers should not deny these claims before undertaking a diligent investigation regarding the cause of loss and after carefully considering the facts.

Questions regarding this notice should be directed to:

Lisbeth Landsman-Smith
Senior Staff Attorney
California Department of Insurance
Lisbeth.landsman@insurance.ca.gov
(916) 492-3561

EXHIBIT 8



State Farm General Insurance Company

November 10, 2020

JASON COOK
JENNIFER GOSK
240 REYNOLDS DR
BOULDER CREEK, CA 95006

State Farm Insurance Companies
Fire Claims
PO BOX 106169
Atlanta, GA 30348-6169
Fax 844 236 3646

RE:    Claim Number:  05-10Q9-62G
       Date of Loss:    August 18, 2020

Dear Mr. Cook and Ms. Gosk:

We appreciate the opportunity to handle your claim. Please allow this letter to serve as a status of your claim.

## SUMMARY OF CLAIM STATUS

### Coverage A – Dwelling

We have completed our evaluation of this portion of your claim and have issued payment(s) in the amount $2,736.96 to remediate smoke damage to your dwelling. Enclosed is a supplemental payment for your carpet.

### Coverage B - Personal Property

We have completed our evaluation of this portion of your claim and issued payments totaling $3,213.35 for your food loss and contents cleaning.

Enclosed is a supplemental payment in the amount of $957.61 for your contents and additional food loss items.

### Coverage C - Additional Living Expense

Enclosed is payment of $6,805.65 for additional living expenses. This covers the period from 8/18/20 to 10/12/20. An itemized breakdown is included for your review. If you have additional living expense receipts for costs incurred, please submit them for review.

The following summary of payments issued to date is provided for your reference:

**Coverage A**

State Farm Estimate                    $        10,386.96

JASON COOK
JENNIFER GOSK
05-10Q9-62G
Page 2
November 10, 2020

| | | |
|---|---|---|
| Total of Coverage A | $ | 10,386.96 |
| **Coverage B** | | |
| XactContents Payment Tracker | $ | 4,170.96 |
| Total of Coverage B | $ | 4,170.96 |
| **Coverage C** | | |
| Additional Living Expense Worksheet | $ | 9,393.56 |
| Total of Coverage C | $ | 9,393.56 |
| **Total of Coverage A, B, and C** | $ | 23,951.48 |
| Less deductible | $ | 3,000.00 |
| Total | $ | 20,951.48 |

You advised you are seeking coverage for the replacement of your refrigerator resulting from spoiled food which created a persistent odor.

The wildfire resulted in power outages, including at your home.  In turn, your refrigerator lost power.  The food products in the refrigerator then spoiled over time.  The Homeowner's Policy's Coverage B – Personal Property covers contents, such as the refrigerator, on a specified peril basis.  Food spoilage is not one of the specified perils under Coverage B – Personal Property.

Under the policy's Additional Coverages, however, there are two applicable coverages:  Power Interruption and Refrigerated Products.  We have paid you for the spoiled food products in the amount of $867.14 under the following additional coverage in the Homeowners Policy, Form FP-7955CA, as modified by Endorsement FE-3422:

SECTION I - ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions and conditions of this policy.

8. **Refrigerated Products**. Coverage B is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

JASON COOK
JENNIFER GOSK
05-10Q9-62G
Page 3
November 10, 2020

      a.     removal of a plug from an electrical outlet; or

      b.     turning off an electrical switch unless caused by a Loss Insured.

      This coverage does not increase the limit applying to the damaged property.

We denied the claim for your refrigerator because food spoilage, which caused the unit to retain the odor from the spoiled food, does not fall within the following additional coverage for power interruption in the Homeowners Policy, Form FP-7955CA, as modified by Endorsement FE-3422:

**SECTION I - ADDITIONAL COVERAGES**

The following Additional Coverages are subject to all the terms, provisions, exclusions and conditions of this policy.

    7.    **Power Interruption**. We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a Loss Insured occurring on the **residence premises**. The power lines off the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

Although the food spoilage directly damaged the refrigerator, the power interruption was not caused by a Loss Insured that occurred on the residence premises, as expressly required by the above policy provision.  Instead, the fire, which led to the power interruption, occurred away from and did not reach the residence premises.  In addition, the power lines off the residence premises did not remain energized (as required in the above provision) – the power lines were de-energized by the wildfire.  Therefore, the additional coverage for power interruption does not apply to this claim and your refrigerator is not covered for damage caused by the spoiled food.

As outlined in your State Farm estimate dated October 21, 2020 on page 1, the Structural Damage Claim Policy states the following:

If you select a contractor whose estimate is the same as or lower than our estimate, based on the same scope of damages, we will pay based upon their estimate. If your contractor's estimate is higher than ours, you should contact your claim representative prior to beginning repairs.

Your policy states in part:

**SECTION I – CONDITIONS**

JASON COOK
JENNIFER GOSK
05-10Q9-62G
Page 4
November 10, 2020

**2. Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed:

a. give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

d. as often as we reasonably require:

(1) exhibit the damaged property;

(2) provide us with records and documents we request and permit us to make copies;

(3) submit to and subscribe, while not in the presence of any other **insured:**

(a) statements; and
(b) examinations under oath; and

We are required by California Insurance Regulations, Section 2695.7(b)(3), to advise you that if you believe this claim, or any part of this claim, has been wrongfully denied or rejected, you may have the matter reviewed by the California Department of Insurance, Claims Service Bureau, 300 South Spring Street, Los Angeles, California 90013, telephone 800 927 4357.

The California Fair Claims Settlement Practices Regulations state that you must be notified of all time limits that may apply to your claim. Your policy contains the following provision concerning suits against State Farm:

**SECTION I – CONDITIONS**

6. **Suit Against Us**. No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

The one-year period referred to begins to run as of the date of this letter.

State Farm has completed its evaluation of this claim and believes that all covered damages have been paid. We consider this claim closed as of the date of this letter.

JASON COOK
JENNIFER GOSK
05-10Q9-62G
Page 5
November 10, 2020

Thank you for allowing us to assist you with your claim. If you have any questions, please call.

Sincerely,

Tanisha Pabon
Claim Specialist
State Farm Claims

(866) 787-8676 x. 11852

EXHIBIT 9



State Farm General Insurance Company

December 2, 2020

JASON COOK
JENNIFER GOSK
240 REYNOLDS DRIVE
BOULDER CREEK, CA 95006

State Farm Insurance Companies
Fire Claims
PO BOX 106169
Atlanta, GA 30348-6169
Fax 844 236 3646

RE:     Claim Number:   05-10Q9-62G
        Date of Loss:   August 18, 2020

Dear Mr. Cook and Ms. Gosk:

This responds to your November 17, 2020 email about the above claim.

You have asked whether Claim Team Manager Marsha Slaughter has completed the California training.  Ms. Slaughter has finished the required California training.  We do not agree that we provided "unfounded, illegitimate denials."

We maintain our claim decision regarding the refrigerator, as explained in our November 10, 2020 letter.  Under California law, the predominant cause rule applies to this property loss.  Under that rule, coverage does not exist if the covered risk was simply a remote cause of the loss, or if an excluded risk was the efficient proximate (meaning predominant) cause of the loss.  On the other hand, the fact that an excluded risk contributed to the loss would not preclude coverage if such a risk was a remote cause of the loss.  The efficient proximate cause of a loss is the predominant, or most important cause of a loss.  The predominant cause should not be misinterpreted as meaning the triggering cause.

On this claim, the CZU Lightning Complex fires may have been the first in a chain of events leading to damage to the refrigerator, but we do not agree that fire was the predominant cause.  Rather, the change of temperature resulting from the power interruption was the predominant (most important) cause which directly led to the food products spoiling and damaging the refrigerator over time after the power outage.  In this sequence, the wildfire was a remote, triggering cause, not the most important cause.  Because a covered, specified peril was not the predominant cause of the damage to the refrigerator, we stand by our November 10, 2020 denial of the refrigerator damage under Coverage B – Personal Property.

We are required by Fair Claims Settlement Practices Regulations section 2695.7(b)(3) to advise you that if you believe this claim, or any part of this claim, has been wrongfully denied or rejected, you may have the matter reviewed by the California Department of Insurance, Claims Service Bureau, 300 South Spring Street, Los Angeles, California 90013, telephone 800 927 4357.

JASON COOK
JENNIFER GOSK
05-10Q9-62G
Page 2
December 2, 2020

State Farm disagrees with your allegation of bad faith.  We believe we have handled this claim in keeping with the Homeowners Policy's terms and its implied covenant of good faith and fair dealing.

Your incurred expenses for the time period you were unable to reside in your dwelling have been compiled on the October 11, 2020, Additional Living Expense Summary Sheet.  If you have additional invoices or receipts to submit, please forward this information to my attention.

Please refer to the Summary of Loss, State Farm Estimate, and Payment Worksheet dated November 10, 2020, which provide you the requested itemization of your property loss.  We agree with your accounting of the payments issued to date:

| | |
|---|---|
| Coverage A-Dwelling | $ 7,386.96 |
| Coverage B-Personal Property | $ 4,170.96 |
| Coverage C-Loss of Use | $ 9,393.56 |
| Total | $20,951.48 |

If you have any questions or additional information or documentation to submit on this claim, please contact me.

Sincerely,

Tanisha Pabon
Claim Specialist
866 787 8676, ext. 11852
Email:  statefarmfireclaims@statefarm.com
State Farm General Insurance Company

EXHIBIT 10



State Farm General Insurance Company

December 16, 2020

JASON COOK
JENNIFER GOSK
240 REYNOLDS DR
BOULDER CREEK, CA 95006

State Farm Insurance Companies
Fire Claims
PO BOX 106169
Atlanta, GA 30348-6169
Fax 844 236 3646

RE:    Claim Number:  05-10Q9-62G
       Date of Loss:    August 18, 2020

Dear Mr. Cook and Ms. Gosk:

This letter responds to Mr. Cook's December 5, 2020 email and provides a status on the above claim. Please allow this letter to outline the status of your claim.

## SUMMARY OF CLAIM STATUS

### Coverage A – Dwelling

We have completed our evaluation of this portion of your claim and have issued payment(s) to date in the amount $7,386.96 for the covered damage to your home based on our State Farm Estimate.  Your $3,000.00 policy deductible was applied to this portion of your claim.

### Coverage B - Personal Property

We have completed our evaluation of this portion of your claim and have issued payment(s) to date in the amount $4,170.96 for the covered damage to your home based on our State Farm Estimate.

### Coverage C - Additional Living Expense

Enclosed is a supplemental payment in the amount of $2,372.46 for additional living expenses through October 13, 2020.  We have completed our evaluation of this portion of your claim and have issued payment(s) to date in the amount of $11,766.02.

Please see the enclosed Additional Living Expense Summary Sheet and Additional Living Expense Detailed Report for a breakdown of expenses. The following lodging expenses were not included as they overlap with other lodging receipts submitted:

| | |
|---|---|
| 8/20/20 | Petaluma stay overlaps with the Monterey Tides Hotel stay |
| 9/6/20 -  9/9/20 | Half Moon Bay stay overlaps with the Airbnb stay |

The following summary of payments issued to date is provided for your reference:

JASON COOK
JENNIFER GOSK
05-10Q9-62G
Page 2
December 14, 2020

### Coverage A

Total of Coverage A                              $     10,386.96

### Coverage B

Total of Coverage B                              $      4,170.96

### Coverage C

Total of Coverage C                              $     11,766.02

**Total of Coverage A, B, and C**                $     26,323.94

Less deductible                                  $      3,000.00

Total                                            $     23,323.94

Our position on California's predominant cause rule and how it applies to this loss are as stated in our December 2, 2020 letter. Again, the efficient proximate cause of a loss is the predominant or most important cause. Here, the predominant cause of the loss to the refrigerator was the power interruption which directly led to the food products spoiling and damaging the refrigerator over time after the power outage. This predominant cause of loss to the refrigerator is not a specified peril in the policy's Coverage B – Personal Property. Therefore, we stand by our November 10, 2020 denial of coverage for the refrigerator damage.

We are required by Fair Claims Settlement Practices Regulations section 2695.7(b)(3) to advise you that if you believe this claim, or any part of this claim, has been wrongfully denied or rejected, you may have the matter reviewed by the California Department of Insurance, Claims Service Bureau, 300 South Spring Street, Los Angeles, California 90013, telephone 800 927 4357.

We continue to disagree with your contentions of bad faith and believe that we have handled this claim in a manner that is consistent with the policy's terms and the implied covenant of good faith and fair dealing.

If you have any questions or additional information or documentation to submit on this claim, please contact me.

Sincerely,

Tanisha Pabon
Claim Specialist

JASON COOK
JENNIFER GOSK
05-10Q9-62G
Page 3
December 14, 2020


866 787 8676, ext. 11852
Email:  statefarmfireclaims@statefarm.com
State Farm General Insurance Company

EXHIBIT 11

 Gmail

The Judge <jaecee@gmail.com>

---

**05-10Q9-62G**

---

**HOME CLMS-FIRECLAIMS** <statefarmfireclaims@statefarm.com>
To: "JAECEE@GMAIL.COM" <JAECEE@gmail.com>

Fri, Jan 22, 2021 at 1:19 PM

Jason,

This email is in response to your 1/14/2021 email. The concerns you have reiterated in the email have been addressed in prior correspondence sent to you on 12/16/2020. If you have further questions or concerns please contact me at 480-293-8219 or via email if you prefer.

Thank you.

---

**Joey Cammiso**
**State Farm® Claim Specialist**
Direct Extension: (480) 293-8219
or call toll-free: (844) 458-4300 Ext. 4802938219
Monday – Friday 8:00 am to 4:30 Pm (AZ Mountain Time)
Email: statefarmfireclaims@statefarm.com and include **only** the claim number in the subject line.

**re³markable**™
Every Customer | Every Interaction | Every Day



**State Farm**

State Farm General Insurance Company

February 01, 2021

State Farm Insurance Companies
Fire Claims
PO BOX 106169
Atlanta, GA 30348-6169
Fax 844 236 3646

Jason Cook
Jennifer Gosk
240 Reynolds Dr
Boulder Creek, CA 95006

RE:  Claim Number:     05-10Q9-62G
      Date of Loss:       August 18, 2020
      Policy Number:     05-C4-P998-3

Dear Mr. Cook and Ms. Gosk:

This letter acknowledges your correspondence of January 22, 2021 requesting State Farm reconsider its determination regarding your claim.

I have completed the California Fair Claims Settlement Practices Regulations.

Enclosed you will find a payment in the amount of $157.67 for removing contents from refrigerator and disposing. Details of the allowance is outlined on the State Farm estimate.

Please forward a receipt from Half Moon Bay for the dates of your stay September 6, 2020, September 7, 2020 and September 8, 2020 to support your invoice #9.

Upon further review it appears the housing stay on September 6, 2020 of $125.00 was previously reimbursed to you as outlined on the Additional Living Expense Summary Sheet dated 12/9/2020.

Your request regarding Efficient Proximate Cause has been addressed previously. Please see our prior correspondence to you dated December 2, 2020 and December 16, 2020. Our position remains unchanged. As such, all policy provisions and conditions quoted in the correspondence of December 2, 2020 and December 16, 2020 still apply.

We are required by Fair Claims Settlement Practices Regulations section 2695.7(b)(3) to advise you that if you believe this claim, or any part of this claim, has been wrongfully denied or rejected, you may have the matter reviewed by the California Department of Insurance, Claims Service Bureau, 300 South Spring Street, Los Angeles, California 90013, telephone 800 927 4357.

The California Fair Claims Settlement Practices Regulations state that you must be notified of all-time limits that may apply to your claim. Your policy contains the following provision concerning suits against State Farm:

Jason Cook
Jennifer Gosk
36-15F2-09K
Page 2
February 1, 2021


The two-year period referenced in the "Suit Against Us" condition in FE 1386-State of
Emergency Amendatory Endorsement (California) first began running as of the date of loss on
August 18, 2020. The two-year period was tolled (suspended) as of the date State Farm was
first given notice of the claim on August 26, 2020 and during the time we initially investigated
and evaluated the claim.  The two year suit limitation period is again running as of the date of
this letter.

State Farm is not waiving, and is specifically reserving, all of its rights under the policy and the
law.

If you have any questions or need further assistance, please contact me.


Sincerely,


Becky Case
Claim Specialist
(480) 293-8270
Email: statefarmfireclaims@statefarm.com
State Farm General Insurance Company

Enclosure: 12/2/20 letter, 12/16/20 letter
             ALE summary sheet 12/9/20